## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

Robert L. Pitts, Chairman, Fulton County
Board of Commissioners, and Fulton County
Board of Registration and Elections,

                            Petitioners,

    v.

UNITED STATES OF AMERICA,

                          Respondent.

CIVIL ACTION:

1:26-MC-0177

## MEMORANDUM OF LAW IN SUPPORT OF PETITIONERS' EMERGENCY MOTION FOR RETURN OF PROPERTY PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 41(G)[UNDER SEAL]

1

## INTRODUCTION

Petitioner Robert L. "Robb" Pitts, Chairman of the Fulton County Board of Commissioners, and Petitioner Fulton County Board of Registration and Elections ("BRE"), seek redress for Respondent's seizure of approximately 656 boxes of original 2020 election records from Fulton County, Georgia. "A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return … in the district where the property was seized," and the "court *must* receive evidence on any factual issue necessary to decide the motion." Fed. R. Crim. P. 41(g) (emphasis added).

Courts look to four factors before exercising their equitable jurisdiction to return property, including: (1) whether Respondent displayed a callous disregard for the constitutional rights of the movant, (2) whether the movant has an individual interest in and need for the property he wants returned, (3) whether the movant would be irreparably injured by denying return of the property, and (4) whether the movant has no adequate remedy at law for the redress of his grievance. *Trump v. United States*, 22-13005, 2022 WL 4366684, at *4 (11th Cir. Sept. 21, 2022) (citing *Richey v. Smith*, 515 F.2d 1239, 1243–44 (5th Cir. 1975). Though no one factor is dispositive, here Petitioners can meet all the factors.

**Callous disregard of the Fourth Amendment.** Respondent's seizure of Fulton County's 2020 election records callously disregards multiple Fourth

1

Amendment rights.  First, Respondent's seizure of Fulton County's 2020 election records appears to be based upon claims that have been repeatedly investigated and rejected as baseless.  Claims that the 2020 election results were fraudulent or otherwise invalid have been exhaustively reviewed and, without exception, refuted. Eleven different post-election lawsuits, challenging various aspects of Georgia's election process, failed to demonstrate fraud.  The Georgia Secretary of State investigated and found no evidence of widespread fraud or irregularities. The U.S. Department of Justice and the Federal Bureau of Investigation previously examined claims of fraud and irregularities in Fulton County elections in 2020 and found no basis to proceed. Claims of Dominion Voting System's manipulations were similarly debunked and judicially adjudicated as meritless.  Given this history of prior scrutiny and public record evidence that the allegations likely to have supported the Warrant have been repeatedly examined and shown to be unfounded, it is appropriate for Respondent to provide Petitioners with access to the affidavit, along with any other material supporting the issuance of the Warrant, as part of the evidentiary review contemplated by Rule 41(g).

Second, the seizure of records callously disregards the Fourth Amendment because Respondent cannot prosecute violations of the statutes cited as the basis of the Warrant. Respondent based its Warrant on a potential violation of a records retention statute, 52 U.S.C. § 20701, and on a criminal penalties provision for voter

intimidation and voter fraud, 52 U.S.C. § 20511.  Section 20701 requires retention of records for 22 months. Section 20511 is subject to a five-year statute of limitations.  Petitioners are well beyond both the retention period and the limitations period for the cited statutes.  Thus, there is no basis for prosecutions under these statutes for claims related to 2020 election records.

Third, the seizure rises to the level of callous disregard for the Fourth Amendment because Respondent used the Warrant to circumvent pending civil judicial proceedings.  The Department of Justice ("DOJ") was already pursuing the same records through a civil action in this court and was assisting the Georgia State Elections Board in obtaining the same records in a state court case. Both proceedings remain pending, and the Superior Court judge, after denying a motion to quash a subpoena for 2020 election records, scheduled a hearing for February 9, 2026, to address the issue of costs for producing the records. Instead of allowing these civil matters to be fully adjudicated, Respondent's use of the criminal warrant process to take immediate possession of the same records that are the subject of these lawsuits has the effect of circumventing civil judicial proceedings.  This use of criminal process to bypass the limitations and costs of civil discovery should not be permitted by the Court.

**Callous disregard of state sovereignty.**  The seizure callously disregards state sovereignty in two ways. It is well-established that under the Constitution the

conduct of elections, including the maintenance of ballots and associated materials, is the province of the states. This seizure represents a gross intrusion upon that constitutional role. Moreover, the records in question were sealed in accordance with state law, and rather than adjudicate whether and when the records should be unsealed, Respondent used a criminal warrant to circumvent those processes.

**Callous disregard of the First Amendment.** The Warrant also perpetuates voter intimidation in violation of the Constitution, including First Amendment privacy rights. The Warrant was executed in a manner seemingly designed to intimidate; both the Director of National Intelligence, Tulsi Gabbard, and the FBI Deputy Director, Andrew Bailey, were on site for the search. The records seized included personal voter data and documents that could identify who voted for which candidate. Respondent's seizure, resulting in the federal government being in possession of sensitive voter data, was in callous disregard of such First Amendment considerations.

**Additional Rule 41(g) criteria.** The remaining factors under Rule 41(g) strongly favor return of the seized property. As statutory custodians, Petitioners have a clear interest in these original records. Federal retention irreparably harms Petitioners' sovereign functions and voters' privacy interests, with no adequate alternative remedy.

In sum, Respondent's conduct has deprived Petitioners of their constitutional rights. The resulting injury will continue if these records are not returned to their lawful custodian. Accordingly, the Court should consider this motion on an expedited basis, hold a hearing on the scope of the Warrant and Respondent's conduct, require Respondent to provide access to the underlying affidavit and any other necessary materials to decide this motion pursuant to Rule 41(g), order the return of the original records, and, in the interim, order Respondent to maintain but not review any copies of the materials until the Court has ruled on this motion.

## FACTUAL BACKGROUND

### I.    The Warrant and Seizure of the Fulton County 2020 Election Records

On January 28, 2026, the United States obtained a Search Warrant under seal from Magistrate Judge Salinas in this District. Ex. 1. Special Agent Evans submitted an affidavit under seal averring that he had "reason to believe" that "certain property, certain data, and certain information" were concealed in the Clerk's Office. *Id.* The Warrant alleges that all these records relate to violations of Title 52, United States Code, §§ 20701 and 20511 occurring after October 12, 2020. Later that day, FBI agents executed the Warrant.

The seized materials are original election records from the 2020 General Election in Fulton County that were held under seal by the Clerk of the Superior Court in accordance with Georgia law as the lawful custodian. *See* O.C.G.A. §§

5

21-2-73, 21-2-390, 21-2-500(a). Under Georgia law, those records are required to be delivered to and safeguarded by the Clerk in sealed containers, including used and voided ballots, stubs, numbered lists of voters, tally sheets, voting machine proof sheets, absentee ballots and envelopes, and related documentation. *Id.* The FBI's seizure thus removed from state custody the very records Georgia law directs to remain sealed with the Clerk.

As set out in detail in Petitioners' simultaneously-filed motion to unseal the affidavit submitted to obtain the search warrant, the Warrant was based on repeatedly debunked claims of voter fraud in Georgia and Fulton County. These allegations of fraud have been exhaustively investigated and consistently rejected by courts, election officials, and federal law enforcement authorities, and all of this information was available to the Respondent before it sought the Warrant.

## II.    Recent Efforts to Obtain Fulton County 2020 Election Related Materials

Three related legal proceedings set the stage for the Warrant and seizure of Fulton County's 2020 election records.

In September 2024, a member of the Fulton County BRE sued the County in Fulton County Superior Court seeking a declaration that her duty to certify election results was discretionary and that she was entitled to full access to election materials prior to voting for certification. *Adams v. Fulton Cnty.*, No. 24CV011584 (Ga.

Super. Ct., Fulton Cnty. Sept. 12, 2024).[1] The Court of Appeals affirmed the Superior Court's decision, *Adams v. Fulton Cnty.*, 2024 WL 4592443 (Ga. Super. Ct., Fulton Cnty. Oct. 14, 2024), that the duty to certify is mandatory but remanded the question of whether a BRE member has a right to full access to election materials. *Adams v. Fulton Cnty.*, 376 Ga. App. 288, 918 S.E.2d 402 (2025). The Superior Court's order to maintain the documents at issue in the *Adams* case under seal is the reason the 2020 election materials were still being stored in the Clerk's office despite the statutory retention period having long passed.

In November 2024, the Fulton County BRE filed a petition in Fulton County Superior Court to quash two subpoenas issued by the Georgia State Elections Board ("SEB") for 2020 election materials. *Allen v. State of Ga.*, Civ. A. No. 24CV014632 (Ga. Super. Ct., Fulton Cnty. Nov. 18, 2024) ("*Allen*"). On October 6, 2025, the SEB issued a new subpoena to the BRE for "all used and void ballots, stubs of all ballots, signature envelopes, and corresponding envelope digital files from the 2020 General Election in Fulton County." *See United States v. Alexander*, 1:25-cv-07084, ECF No.1 ¶ 17 (N.D. Ga. Dec. 11, 2025) (describing SEB's subpoena to the BRE) ("*Alexander*"). The BRE and Clerk responded, explaining that the records were under seal pursuant to Georgia Code section 21-2-500. *Id.* ¶ 20. On December 19,

---

[1] The Democratic National Committee and the Democratic Party of Georgia intervened in the action. *Adams v. Fulton Cnty.*, No. 24CV011584 (Ga. Super. Ct., Fulton Cnty. Sept. 23, 2024).

2025, Superior Court Judge Robert McBurney denied the motion to quash, ordering the BRE to provide the materials upon payment of production costs and scheduling an evidentiary hearing on those costs. Order Denying Quashal, *Allen v. State of Ga.*, Civ. A. No. 24CV014632 (Ga. Super. Ct., Fulton Cnty. Dec. 19, 2025).

The DOJ then sought the same 2020 Fulton County Election materials through demand letters and federal litigation. On October 30, 2025, DOJ sent a demand letter to the BRE demanding inspection of "all records in your possession responsive to the recent subpoena issued to your office by the State Election Board," citing 52 U.S.C. § 20701; *Alexander*, ECF No. 1 ¶ 16, 18. The BRE responded on November 14, explaining the requested records were held under seal by the County Clerk under O.C.G.A. § 21-2-500 and could not be produced absent a court order. *Id.* ¶¶ 21-22.

On November 21, 2025, DOJ wrote to the Clerk demanding the same materials on the same legal grounds, but did not explain how Georgia or Fulton County were violating federal law or how the requested records would evidence any such violations. *Id.* ¶ 23. On December 11, 2025, DOJ filed suit against the Clerk to compel production of the 2020 election materials, citing 52 U.S.C. § 20703.[2]. *Alexander* at ECF No. 1.

---

[2] On December 18, 2025, DOJ filed suit against Secretary Raffensperger in the Middle District of Georgia, seeking to compel the release of the unredacted voter files, including names, birth dates, addresses, driver's license numbers, and the last four digits of voters' Social Security numbers; the suit was dismissed for lack of subject matter jurisdiction. *United States v. Raffensperger,* 5:25-cv-00548 (M.D. Ga.

On January 28, 2026, while both the *Allen* case in state court and the *Alexander* case in federal court were pending—and while the state court had already authorized production of 2020 election materials to the SEB through an orderly process—DOJ obtained the Warrant at issue and physically removed the original sealed election records from the Clerk's lawful custody.

## LEGAL BACKGROUND

"The Constitution addresses two types of power over federal elections: first, the power to determine who is qualified to vote, and second, the power to regulate federal election procedures. In both spheres, the Constitution vests authority first in the States." *League Of United Latin American Citizens v. Executive Office of the President*, No. 25-0946 (CKK), 2026 WL 252420, at *5 (D.D.C. Jan. 30, 2026). The Elections Clause of the U.S. Constitution empowers the states to determine the "Times, Places and Manner" of congressional elections, subject to Congress' authority to "make or alter" state regulations. U.S. Const. art. I, § 4, cl. 1. Each level of state government has authority to enact a complete code for such elections, including rules concerning public notices, voter registration, voter protection, fraud

---

Jan. 23, 2026). The same day the Middle District of Georgia dismissed the suit, DOJ refiled in this District. *See U.S. v. Brad Raffensperger, et al.,* No. 1:26-cv-00485, ECF No. 1 (N.D. Ga. Jan. 23, 2026). DOJ has filed similar suits against 23 other states and the District of Columbia. *See* Press Release, U.S. Department of Justice, *Justice Department Sues Arizona and Connecticut for Failure to Produce Voter Rolls*, (Jan. 6, 2026), https://www.justice.gov/opa/pr/justice-department-sues-arizona-and-connecticut-failure-produce-voter-rolls.

prevention, vote counting, and determination of election results. *See Smiley v. Holm*, 285 U.S. 355, 366, 369 (1932).

Congress does not have general regulatory authority over state and local elections. Rather, Congress' authority is limited to preventing unconstitutional voting discrimination in a state or local election through its Article I powers and its authority under the Fourteenth and Fifteenth Amendments. For example, Congress passed Title III of the Civil Rights Act of 1960, Pub. L. No. 86-449, 74 Stat. 86 (1960), to deter voting-related racial discrimination, and the National Voter Registration Act of 1993 ("NVRA"), Pub. L. No. 103-31, 107 Stat. 77 (1993), which criminalizes voter intimidation and fraud.

In applying for the Warrant, Respondent relied on the election records retention provision within Title III of the Civil Rights Act, 52 U.S.C. § 20701. Title III was enacted directly in response to concerns of voter suppression during the Jim Crow era. Section 20701 imposes document retention requirements on elected officials "to secure a more effective protection of the right to vote." *State of Ala. ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 853 (M.D. Ala. 1960), *aff'd sub nom. Dinkens v. Att'y Gen. of U. S.*, 285 F.2d 430 (5th Cir. 1961). Specifically, it requires an election officer to retain "all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election" for 22 months. 52 U.S.C. § 20701; *id.* § 20706.

10

The Attorney General may make a "demand in writing" for requested records, but that demand must include "a statement of the basis and the purpose[.]" 52 U.S.C. § 20703. Such document(s) must "be made available for inspection, reproduction, and copying at the principal office of such custodian by the Attorney General or his representative." *Id.*

The other statute cited by Respondent in the Warrant is 52 U.S.C. § 20511, which is the criminal penalties provision of the NVRA for voter intimidation and fraud. This section imposes fines and a term of imprisonment of not more than five years for "knowingly and willfully" intimidating, threatening, or coercing any person, for voting, registering to vote, or exercising any other right under the Act. 52 U.S.C. § 20511(1). It imposes the same criminal penalties for knowingly and willfully depriving or defrauding the residents of a state of a fair and impartially conducted election process by "(A) the procurement or submission of voter registration applications that are known by the person to be materially false, fictitious, or fraudulent under the laws of the State in which the election is held; or (B) the procurement, casting, or tabulation of ballots that are known by the person to be materially false, fictitious, or fraudulent under the laws of the State in which the election is held[.]" *Id.* at § 20511(2)(A), (B). The general five-year statute of limitations for non-capital federal crimes applies to actions under this section. 18 U.S.C. § 3282(a).

11

Georgia passed its own law mandating records retention and its retention period exceeds that of Title III; the election superintendent must retain all primary and election documents on file for a period of at least 24 months. O.C.G.A. § 21-2-73. The election superintendent must deliver those documents in *sealed* containers to "the clerk of the superior court," or other designated county official, where they are to be held *under seal* for the duration of the 24-month period. O.G.C.A. § 21-2-500(a); § 21-2-390 (listing required contents of containers).

## LEGAL STANDARD

"A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return … in the district where the property was seized," and the "court *must* receive evidence on any factual issue necessary to decide the motion." Fed. R. Crim. P. 41(g) (emphasis added); *see also* Fed. R. Crim. P. 41(e) Advisory Committee's Note to 1989 Amendment ("In some circumstances . . . equitable considerations might justify an order requiring the government to return or destroy all copies of records that it has seized.").

When a Rule 41(g) motion is filed in the absence of a criminal proceeding, the motion is treated as a civil complaint in equity. *See United States v. Howell*, 425 F.3d 971, 974 (11th Cir. 2005) (citations omitted); *United States v. Chapman*, 559 F.2d 402, 406 (5th Cir. 1977); *In re, $67,470*, 901 F.2d 1540, 1545 (11th Cir. 1990).

In deciding whether to invoke its equitable jurisdiction regarding a motion for return of property, a court must consider four factors: (1) whether the government seized the property in "callous disregard for the constitutional rights" of the petitioner; (2) whether a petitioner has an individual interest in, and need for, the material sought to be returned; (3) whether the petitioner would be irreparably injured by denial of the return of the property; and (4) whether the petitioner has an adequate remedy at law. *In the Matter of $67,470.00*, 901 F.2d at 1545 (citing *Richey v. Smith*, 515 F.2d 1239, 1243–44 (5th Cir. 1975). "[T]he district court is required to balance [these] four discretionary factors to determine whether to allow the government to retain the property, order it returned or . . . craft a compromise solution that seeks to accommodate the interests of all parties." *United States v. Comprehensive Drug Testing, Inc*., 621 F.3d 1162, 1173 (9th Cir. 2010). No one factor is dispositive.

After invoking equitable jurisdiction under *Richey*, a court turns to the Rule 41(g) analysis. Rule 41 guarantees Fourth Amendment protection from unreasonable searches and seizures, and "reasonableness under all of the circumstances must be the test when a person seeks to obtain the return of property." Fed. R. Crim. P. 41(e) Advisory Committee's Note to 1989 Amendment. "If the United States has a need for the property in an investigation or prosecution, its retention of the property is generally reasonable. But, if the United States' legitimate interests can be satisfied

even if the property is returned, continued retention of the property would become unreasonable." *Id*.

For a Rule 41(g) motion made during an ongoing investigation or prosecution, the moving party bears the burden of proving (1) that the property's seizure was illegal and (2) that he is entitled to lawful possession of the property. *See In re Sealed Search Warrant*, No. 21-MJ-8207-BER, 2021 WL 9527724, at *1 (S.D. Fla. July 14, 2021), citing *United States v. Martinson*, 809 F.2d 1364, 1369 (9th Cir. 1987); *United States v. Chambers,* 192 F.3d 374, 377 (3d Cir. 1999).

## ARGUMENT

**I.    Respondent's Seizure Shows a "Callous Disregard" for Petitioners'
        Constitutional Rights and State Sovereignty.**

Respondent's seizure of Fulton County's 2020 election records callously disregards core constitutional principles and the State's sovereignty over elections. Respondent, relying on baseless, repeatedly-debunked voter fraud claims, relied upon a long-expired federal records-retention provision and a time-barred criminal statute to justify the physical removal of original sealed election records from their lawful state custodian. Further, the very same records are currently the subject of ongoing state and federal litigation to which Respondent is a party. It appears that Respondent became impatient with the pace of civil litigation and opted instead for a highly public execution of a criminal search warrant to seize the desired

14

documents. This conduct reflects callous disregard for (i) Fulton County's and voters' Fourth Amendment right to be free from unreasonable search and seizure; (ii) Georgia's constitutional and sovereign authority over its statutory framework governing the custody, security, and use of its election records; and (iii) voters' First Amendment right to vote free from intimidation and to have privacy in voting.

### A. Respondent's Seizure of Election Records from the Fulton County Clerk's Office Constitutes Callous Disregard for Petitioners' Fourth Amendment Rights.

The Fourth Amendment requires that warrants be supported by probable cause, confined to valid statutory predicates, particularized in scope, and respectful of ongoing judicial proceedings. The Warrant fails in all respects.

### 1. Respondent's Seizure of the 2020 Election Records Is Unreasonable Where the Facts Underlying Alleged Voter Fraud Have Been Thoroughly Rejected.

"[T]he fact that a neutral magistrate has issued a warrant authorizing [an] allegedly unconstitutional search or seizure does not end the inquiry into objective reasonableness." *Messerschmidt v. Millender*, 565 U.S. 535, 546–47 (2012). As is laid out in the simultaneously filed Motion to Unseal, by January 2026, multiple federal and state investigations, numerous court decisions, and a statewide hand recount confirmed that claims of systemic voter fraud in Fulton County in 2020 were false. Yet Respondent sought the Warrant as if those debunked allegations were credible. Although the underlying affidavit is sealed— Petitioners are simultaneously moving to unseal it— it likely recycled those discredited allegations

15

as if they had merit. Further, if Respondent obtained the Warrant on a knowingly or recklessly false or materially misleading factual basis, then there can be no probable cause to believe a crime has been committed. Thus, at the very least, Respondent's search and seizure of the records is not objectively reasonable. At most, the Warrant is invalid. Either way, Respondent has shown callous disregard for Petitioner's Fourth Amendment rights by continuing to pursue claims of voter fraud when such claims have been repeatedly disproven.

**2. Respondent's Search and Seizure of the Records Is Not Reasonable Where the Underlying Alleged Statutory Violations Are Not Prosecutable Crimes.**

The Warrant is predicated on violations of 52 U.S.C. §§ 20701 and 20511, but the facts show that neither statute reasonably supports the seizure of records six years after the election at issue.

Section 20701 is a record retention statute, not a roving search-and-seizure authority. It requires election officials to retain specified records for 22 months and, along with Section 20703, authorizes the Attorney General to demand that such records "be made available for inspection, reproduction, and copying at the principal office of such custodian." 52 U.S.C. §§ 20701, 20703. Neither Section 20701 nor any other federal statute authorizes the Attorney General, DOJ, or the FBI to remove original state election records from their lawful custodian years after the retention period has lapsed.

16

Section 20511 is a criminal penalties provision directed at knowing and willful intimidation, coercion, or fraud in the registration or voting process. But by 2026, any such offenses tied to the 2020 election were beyond the general federal five-year statute of limitations. 18 U.S.C. § 3282(a). Respondent has not identified new, timely conduct to which Section 20511 could apply, and the extensive public record establishes that any conceivable theory of criminal fraud has been rejected.

"Passage of time could affect reasonableness . . . . An arrest might be thought unreasonable after the statute of limitations for the offense has lapsed." *United States v. Martin,* 399 F.3d 879, 881 (7th Cir. 2005) (Easterbrook, J.). Relying on an expired retention statute and a time-barred criminal provision to justify an intrusive search and seizure, without tying the seized materials to any offense for which an individual may be prosecuted, illustrates Respondent's disregard for the Fourth Amendment.

### 3. The Warrant Circumvents Pending Judicial Proceedings.

Further, Respondent's sweeping seizure constitutes an impermissible use of criminal process to bypass the limitations of civil discovery. The federal government was already pursuing the same records through a civil action in this court in *Alexander*, and the SEB was seeking the same records in Fulton County Superior Court in *Allen*. Rather than allowing either court to resolve those disputes through the normal process, which would mean Petitioners maintaining control over the original records, DOJ obtained a sealed warrant to seize outright records that neither

court had authorized them to take, effectively nullifying both state court control over sealed election records entrusted to the Clerk and this Court's ability to adjudicate DOJ's claims under Section 20703.

Although parallel civil litigation does not automatically invalidate a search warrant seeking overlapping evidence, in the circumstances of this case, using the criminal process to improperly leapfrog and moot active civil litigation is an end-run around judicial supervision that reflects callous disregard for the procedural safeguards against unlawful search and seizure. *Accord. United States v. Sells Eng', Inc.*, 463 U.S. 418, 432 (1983) (finding criminal investigative powers are not to be used to fulfill the requirements of civil discovery). Here, the timing of the Warrant and its pursuit of evidence identical to records sought in the civil cases reveal Respondent's abuse of the criminal process.

## B. Respondent's Seizure of the Records Is in Callous Disregard for State Sovereignty and Local Election Authority.

The Elections Clause assigns to the States the primary responsibility to determine the "Times, Places and Manner of holding Elections" for federal office. U.S. CONST. Art. I, § 4, cl. 1. Georgia has implemented that authority through a comprehensive statutory scheme that vests custody, sealing, and retention of election records in state and county officials and, ultimately, in the Clerk of the Superior Court. O.C.G.A. §§ 21-2-73, 21-2-390, 21-2-500(a).

The Warrant disregards that allocation of authority. First, Respondent's seizure and removal of election records from the County Clerk's office, where they were to remain under mandate of Georgia law, strips the BRE—the lawful custodian of such records as determined by Georgia law—of possession of and access to the original election records. Second, it overrides the state law process by which the SEB was to obtain access to the records under the watchful eye of a state court judge. Third, it transforms a federal statute designed to "secure a more effective protection of the right to vote" into a vehicle for displacement of state election processes in violation of Congressional intent and basic principles of federalism. *See State of Ala. ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 853 (M.D. Ala. 1960), *aff'd sub nom. Dinkens v. Att'y Gen. of U.S.*, 285 F.2d 430 (5th Cir. 1961).

DOJ's seizure of original records infringes upon Petitioners' ability to safeguard election integrity, maintain accurate records, and reassure voters that their ballots will not be manipulated or misused. This infringement constitutes a callous disregard for Georgia's sovereignty over its elections.

## C. Respondent's Seizure Is in Callous Disregard for First Amendment Rights

The First Amendment protects the right to vote free from intimidation. *Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886) (The right to vote is "a fundamental political right, because [it is] preservative of all rights."). The seizure of all 2020 election records in a highly public and intimidating show of federal force, with the

conspicuous onsite presence of the Director of National Intelligence and the Deputy

Director of the FBI, directly threatens that interest. As another federal court recently

explained in dismissing a similar mass demand for voter data:

> State run elections mean that voters recognize their neighbors who staff polling stations, trust their Secretaries of State—whom they voted for— to keep their personally identifying information safe, and believe that they will not be targeted because of what they look like or who they vote for. The DOJ's request for [voters'] sensitive information … stands to have a chilling effect on American citizens like political minority groups and working-class immigrants who may consider not registering to vote or skip casting a ballot because they are worried about how their information will be used.

*United States v. Weber*, No. 2:25-CV-09149, 2026 WL 118807, at *2 (C.D. Cal.

Jan. 15, 2026).

The same concerns apply with even greater force here. Knowing that the

federal government can physically seize and rummage through election records, long

after the election has been certified, will predictably chill voter participation and

undermine voters' confidence in the security and secrecy of their ballots. By ignoring

these implications, Respondent acted with callous disregard for Fulton County

voters' First Amendment rights. *See NAACP v. State of Ala. ex rel. Patterson,* 357

U.S. 449, 458–60, 462 (1958) (holding that Association could assert the First

Amendment rights of its members to protect those members from disclosure of

private information, and that its nexus with them was sufficient to permit that it act

as their representative). Voters have an expectation of privacy when they vote. The

baseless seizure of election records, some of which will reveal personal voter information and actual votes, is at cross purposes with that expectation.

## II.    Petitioners Satisfy the Remaining *Richey* Factors

As to the second *Richey* factor, Petitioners have an interest in and need for the return of the *original* 2020 election records. Petitioners are the legal custodians of these records, which are essential for administrative transparency, ongoing audits, and compliance with pending litigation. Georgia law requires secure maintenance of the records, which verifies the chain of custody and guarantees the physical availability of the original documents. The Warrant authorized the seizure of *all* physical ballots from the 2020 General Election in Fulton County, tabulator tapes for *every* voting machine, *all* ballot images produced during the original ballot count, recount, and other ballot images created from the ballot scanning from the 2020 General Election, and *all* voter rolls from the 2020 General Election from absentee, early voting, in person and any other voter rolls. (Ex. 1.); *see, e.g.*, *Harbor Healthcare Sys., L.P. v. United States*, 5 F.4th 593, 600 (5th Cir. 2021) (finding that petitioner's ability to specify privileged documents in Respondent's possession, as opposed to making vague allegations, was sufficient to satisfy this factor).

The seizure of original records—rather than making copies or accessing the documents "at the principal office of [the lawful] custodian"—strips Fulton County of its ability to secure its own election history. 52 U.S.C. § 20703. This is not a mere

grievance over possession; there is a profound interest in the County's possession of the materials to safeguard voter information and comply with statutory mandates.

The third factor—irreparable injury—also weighs in favor of the Court exercising its equitable jurisdiction. In assessing irreparable injury, courts "focus on the harmful effects the loss of the property wreaks on the movant." *United States v. Search of L. Off., Residence, & Storage Unit Alan Brown,* 341 F.3d 404, 415 (5th Cir. 2003). Again, Petitioners are the legal custodians of state election records. Security of those records are essential for administrative transparency, potential audits, and the fulfillment of public records requests—all of which instill public faith in the integrity of Fulton County's elections and the security of voter information. Election integrity relies on the chain of custody and the physical availability of original documents. The harm is occurring in the present: every day the records are held, Petitioners are prevented from performing their duties. This continuous interference creates a "harmful effect" that a post-trial return of property cannot cure. *Search of L. Off.,* 341 F.3d at 415; *see also Harbor Healthcare Sys.*, 5 F.4th at 600 ("ongoing intrusion" of "privacy constitutes an irreparable injury" that continues "as long as the government retains" the protected documents).

Finally, the fourth factor—the absence of an adequate remedy at law—is satisfied because the usual options, such as a Rule 12 motion to suppress, are unavailable to non-party custodians. Respondent's removal of these original records

22

from the state exceeds the limits of Section 20703, which restricts federal oversight to "inspection, reproduction, and copying" at the custodian's premises. Indeed, a court recently called DOJ's efforts to obtain voter records "unprecedented and illegal," *United States v. Oregon*, No. 6:25-cv-01666-MTK (D. Or. Jan. 26, 2026) (oral ruling granting motion to dismiss),[3] in a case that did not involve the extreme tactics used by the government here.

## III.    There Is Little Reason to Have Confidence That the Affidavit Establishes Probable Cause

It is difficult to imagine how the affidavit supports probable cause given (i) the required retention period has expired and any criminal penalty would be time barred with regard to the 2020 election; (ii) the record lacks evidence of ongoing or newly discovered criminal activity that would justify revisiting the 2020 election in Fulton County; and (iii) the Warrant's sweeping authorization to seize every record without any attempt to delineate allegedly tainted records from unquestionably valid ones constitutes a "general, exploratory rummaging" in violation of the Fourth Amendment. *United States v. Haimowitz,* 706 F.2d 1549, 1558 (11th Cir. 1983). Given the lengthy history of widely debunked voter fraud theories, there is little reason to have confidence that the affidavit establishes probable cause. Respondent's own investigative history and the public record negate the very fraud theories on

---

[3] Melissa Quinn, *Judge tosses Justice Department lawsuit seeking Oregon voter rolls*, CBS (Jan. 27, 2026), https://www.cbsnews.com/news/judge-tosses-justice-department-lawsuit-seeking-oregon-voter-rolls/.

which probable cause appears to rest. Thus, Petitioners reserve the right to further challenge the affidavit supporting the Warrant pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). For that reason, Petitioners seek to unseal the affidavit supporting the Warrant by a simultaneously-filed separate motion. That motion sets forth the existing and substantial record casting doubt upon the predicate for the search warrant.

## **CONCLUSION**

For the reasons stated herein, Petitioners request that the Court (1) order Respondent to return all original seized materials; (2) until this matter is resolved, order Respondent to maintain, but not review, any copies of the seized materials until this matter is resolved; (3) require Respondent to provide access to the underlying Affidavit and all other "evidence on any factual issue necessary to decide the motion," *see* Rule 41(g); (4) conduct a hearing; and (5) order any other relief the Court deems appropriate.

Dated: February 4, 2026

Respectfully submitted,
/s/ *Y. Soo Jo*
Y. Soo Jo
Georgia Bar No. 385817
OFFICE OF THE FULTON
COUNTY ATTORNEY
141 Pryor St. SW, Suite 4038
Atlanta, GA 30303
404-612-0246

24

soo.jo@fultoncountyga.gov

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that this memorandum of law has been prepared in Times New

Roman 14 pt font pursuant to LR 5.1(B).

<u>/s/ *Y. Soo Jo*</u>
Y. Soo Jo
Georgia Bar No. 385817
OFFICE OF THE FULTON
COUNTY ATTORNEY
141 Pryor St. SW, Suite 4038
Atlanta, GA 30303
404-612-0246
soo.jo@fultoncountyga.gov

1