## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

ROBERT L. "ROBB" PITTS, et al.,

Petitioners,

v.

UNITED STATES OF AMERICA,

Respondent.

CIVIL ACTION NO.
1:26-CV-00809-JPB

## JOURNALIST JUSTIN GLAWE'S RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE

Journalist Justin Glawe hereby notifies this Court that his motion to intervene in this matter and to unseal and obtain access to court records is not moot. Mr. Glawe originally filed this motion on February 6, 2026. Dkt. 6. After the Court unsealed the docket in this matter, Dkt. 9, and after the government filed redacted copies of the affidavits used to obtain the search warrant executed on January 28, 2026, Dkt. 22, this Court ordered Mr. Glawe to show cause why his original motion seeking access to court records should not be denied as moot, Dkt. 24.

Mr. Glawe's motion seeks access to a set of records related to the warrant executed on January 28, 2026, at the Fulton County Election Hub and Operations Center. Though the affidavits supporting the warrant applications have now been

made public, a number of other records requested in Mr. Glawe's motion remain

sealed or otherwise unavailable to the public. Specifically, Mr. Glawe seeks access

to the docket in the underlying cases (Nos. 1:26-MC-0158 and 1:26-MC-0177[1]),

the warrant return, any motions to seal the underlying cases, and any other judicial

records related to the warrant, including communications between the government

and the magistrate judge regarding the application and issuance of the warrant.

Because Mr. Glawe continues to seek non-public court records, his motion is not

moot. *See Knox v. Serv. Employees*, 567 U.S. 298, 307–08 (2012) ("A case

becomes moot only when it is impossible for a court to grant any effectual relief

whatever to the prevailing party[; a]s long as the parties have a concrete interest,

however small, in the outcome of the litigation, the case is not moot." (citation

modified)); *Schwindler v. Bryson*, 1:11-CV-1276-TCB, 2016 WL 6821140, at *3

(N.D. Ga. Oct. 26, 2016) (case not moot where questions remained over plaintiff's

access to files).

---

[1]    Mr. Glawe's original motion only listed Case No. 1:26-MC-0158. The government's disclosure of the affidavits made clear that another case number is relevant here, Case No. 1:26-MC-0177.

I.      **The remainder of the records Mr. Glawe moved to unseal should be unsealed.**

In addition to Mr. Glawe's previously filed motion, he also provides additional support below for the remaining relief he requested, in light of the recently disclosed warrant affidavits.

A.      **The affidavits do not moot Mr. Glawe's motion and only underscore the need to unseal all remaining records.**

In his original motion (Dkt. 6), Mr. Glawe moved to intervene in this matter and to unseal and obtain access to court records related to the search warrant.[2] While the government has now filed redacted copies of affidavits used to obtain the search warrant (Dkt. 22), Mr. Glawe's motion was not predicated solely on supporting affidavits. Mr. Glawe sought—and continues to seek—an order unsealing *all* judicial records related to the warrant, including motions to seal, communications between the government and the magistrate judge who signed the warrant (or her chambers), and the dockets in the underlying warrant cases.

Indeed, the unsealed affidavits raise more questions than they answer. The allegations in support of probable cause were entirely based on publicly available material from individuals who have been very public about their claims. Indeed, media have been able to easily deduce the identities of the redacted witnesses

---

[2]      Both Mr. Glawe's initial motion and the motion to access records filed by the other media movants (Dkt. 7) remain sealed on PACER. Mr. Glawe respectfully requests that those motions be unsealed, as well.

because those witnesses have been so public in recent years in sharing the information contained in the warrant.[3] No potential criminal targets were named, nor were confidential informants involved. It is thus unclear why the affidavits would need to be sealed in the first place.

The affidavits submitted in Case No. 1:26-MC-0158-CMS and Case No. 1:26-MC-0177-CMS are materially identical. Written by FBI Special Agent Hugh Raymond Evans, they rely on the same statutes as the warrant—52 U.S.C. § 20701 and 52 U.S.C. § 20511(2), Dkt. 22-1 at 6–7—and are premised on claims about the 2020 election that have already been thoroughly investigated by state law enforcement.

According to Evans, the FBI's "investigation originated from a referral sent by Kurt Olsen," the President's former campaign lawyer who was appointed to a temporary position in the administration to unearth evidence of fraud in the 2020 election. Dkt. 22-1 at 6.[4] The affidavit lays out a list of supposed "deficiencies and defects" with that election—among them, missing ballot images, double-scanned

---

[3]    *E.g.*, Gilat Melamed, *Breaking down the witnesses in FBI affidavit for search warrant used in Fulton elections hub raid*, 11Alive (Feb. 11, 2026), https://www.11alive.com/article/news/local/witnesses-fbi-affidavit-search-warrant-fulton-elections-hub-raid/85-8b7fa125-fb2e-4f33-8958-c761cfba09c4.

[4]    *See* John Sakellariadis, *Trump's 'Stop the Steal' lawyer probing 2020 election fraud has access to sensitive US intel*, Politico (Feb. 9, 2026), https://www.politico.com/news/2026/02/09/kurt-olsen-2020-election-intelligence-00771580.

ballots, discrepancies from a hand-count audit, and "pristine" absentee ballots.

Dkt. 22-1 at 7. The affidavit redacts the names of the witnesses who lodged those

claims. But their identities are easily traceable to individuals who have been vocal

in their criticisms of the 2020 election, all of which have been covered in the

media.[5] The affidavit, in other words, merely recounts publicly available claims

from public-facing individuals. And the Georgia Secretary of State's Office

already investigated each claim and found no intentional wrongdoing, as the

affidavit itself acknowledges. *See* Dkt. 22-1 at 9, 13, 19, 21.

Yet until last week, the affidavits—which purport to justify an

unprecedented search and seizure of local election records by federal officials—

were sealed in their entirety, alongside every other judicial record related to the

warrant. The public is entitled to understand the government's case for doing so, its

reason for seeking to seal that information, and the process by which the warrant

was issued. The dockets in the original search warrant case numbers,

communications with the Court about the warrant and its issuance, and all other

court records concerning the warrant would aid the public in furthering its

understanding of the events here. Those materials should be made public.

---

[5]    *See, e.g.*, Charles Minshew, et al., *Read the annotated FBI affidavit used to seize Fulton ballots*, AJC Politics, https://www.ajc.com/sp/annotated-the-fbis-affidavit-in-support-of-fulton-county-search/.

**B.      The requested records are court records and are presumptively public.**

As explained more fully in Mr. Glawe's initial motion, court records are presumptively public under both the common law right of access and the First Amendment. The records requested herein are all court records to which these rights apply.

With respect to the dockets in the underlying warrant cases, the Eleventh Circuit has held that a docket sheet is a court record and that sealed dockets violate the press's and public's rights of access to court records. In *Valenti*, members of the press sought a writ of mandamus requiring the Middle District of Florida "not to continue using both a public and a sealed docket in criminal proceedings." *United States v. Valenti*, 987 F.2d 708, 711 (11th Cir. 1993). The district court had been making annotations of closed pre-trial proceedings (such as in camera bench conferences) only on a sealed docket, not on the public docket. *Id.* The Eleventh Circuit held that the Middle District's sealed docket entries "completely hid from public view the occurrence of closed pretrial bench conferences and the filing of *in camera* pretrial motions" and therefore the "maintenance of a dual-docketing system is an unconstitutional infringement on the public and press's qualified right of access to criminal proceedings." *Id.* at 715.

*Valenti* recognized that public dockets are essential for "meaningful access" to criminal proceedings. *Id.* Indeed, dockets "memorialize[]" a case. *In re Leopold*

6

*to Unseal Certain Elec. Surveillance Applications & Orders*, 964 F.3d 1121, 1129 (D.C. Cir. 2020). They "catalogue all the proceedings and information taken before a court" in an index "of case developments" that shed light on the parties' actions and the judge's determinations. *United States v. Ochoa-Vasquez*, 428 F.3d 1015, 1030 n.15 (11th Cir. 2005). That the press and the public have a "right of access" to those catalogued matters is well settled. *Valenti*, 987 F.2d at 715; *In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 355 (11th Cir. 1987); *see also Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). And "[i]t would make little sense to provide public access to court documents but not to the indices that record them and thus make them accessible." *Leopold*, 964 F.3d at 1129.

Just like other proceedings, "[o]penness" of the underlying dockets "enhances . . . the appearance of fairness so essential to public confidence in the system," *Press-Enter. Co. v. Superior Court of Cal., Riverside Cnty.*, 464 U.S. 501, 508 (1984), and affords the public "an opportunity both for understanding the system in general and its workings in [this] particular case," *Richmond Newspapers, Inc. v. Va.*, 448 U.S. 555, 572 (1980). That function, in turn, "assumes particular importance when the court is considering sealing a proceeding or judicial record." *Ochoa-Vasquez*, 428 F.3d at 1030 n.15.

In all events, dockets "are public records." *In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d 569, 575 (8th Cir. 1988); *see*

7

*Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 91 (2d Cir. 2004) ("We therefore

hold that docket sheets enjoy a presumption of openness and that the public and the

media possess a qualified First Amendment right to inspect them."). Thus, the

docket sheets in both underlying warrant cases are subject to the public's right of

access and should be disclosed.

Likewise, communications with the Court concerning the warrant

application and its issuance are also court records. While most case law about the

right of access concerns records filed with the clerk, the universe of "court

records" is broader than just what appears on the docket. *See Comm'r, Ala. Dep't

of Corr. v. Advance Local Media, LLC*, 918 F.3d 1161, 1167 (11th Cir. 2019) ("We

have never held, however, that filing is *required* in order to turn a document into a

judicial record—especially when that document may help a court to resolve the

merits of an action."). "[W]hether something is a judicial record depends on the

role it plays in the adjudicatory process." *Cable News Network, Inc. v. Fed. Bureau

of Investigation*, 984 F.3d 114, 118 (D.C. Cir. 2021). As the Eleventh Circuit has

held, the presumption of access attaches to "materials that invoke judicial

resolution of the merits." *F.T.C. v. AbbVie Products LLC*, 713 F.3d 54, 63 (11th

Cir. 2013) (quoting *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d

1304, 1313 (11th Cir. 2001)). Moreover, a court's orders, or documents reflecting

the court's decision-making process, are judicial records—indeed they may be the

most important records to be made public, as they reflect the court's exercise of its power. *In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 355 (11th Cir. 1987) (the public "enjoy[s] the right of access to pleadings, docket entries, orders, affidavits or depositions duly filed" (citation modified)); *see also Am. Bd. of Internal Med. v. Salas Rushford*, 14-CV-6428 (KSH) (CLW), 2025 WL 957698, at *4 (D.N.J. Mar. 31, 2025) ("Materials filed in connection with summary judgment proceedings qualify, []as do the Court's orders and opinions.").

Thus, the public's right of access extends to any communications between the government and the district court that either submitted information to "help the court to resolve the merits" of the warrant request or reflects any judicial decision-making. The fact that such communications may have happened via email should not remove them from public view. Email communications between the court and a party are the equivalent of judicial proceedings, which would have taken place in courtrooms before the advent of modern technology. Such email communications are judicial records if they meet the legal test laid out above.

Finally, any other documents submitted to the Court, whether concerning the warrant application or its sealing, are also judicial records because they seek resolution from the Court of the merits issues in the underlying matter.

Here, where the government "has stated that it does not oppose the unsealing of the search warrant affidavit ***and any other papers associated with the warrant***

subject to the redaction of the names of nongovernmental witnesses," Dkt. 9 at 2 (emphasis added), it would make little sense to provide access to the warrant affidavits but not the docket sheets that catalogue them, other submissions concerning them, or substantive communications with the court about them.

**C.     The government cannot justify the sealing of those records.**

In his motion (Dkt. 6 at 17–23), Mr. Glawe explained how the relevant factors strongly favor unsealing all judicial records related to the warrant. Those arguments apply with equal force to the underlying affidavits as to the other documents that remain sealed or otherwise unavailable to the public. Mr. Glawe respectfully incorporates his arguments from his initial motion and notes that the release of the affidavits only reinforces the conclusion that the government cannot carry its burden to overcome the public's right of access to those documents.

For example, the public's interest in information about the procedures the government used in obtaining the warrant is especially acute now that the affidavits have been released. The affidavits, like the warrant, rely on criminal statutes that appear time barred, parrot well-trod allegations from outspoken election skeptics that the media has thoroughly covered and that Georgia's election authorities have already investigated, and do not disclose any exculpatory information about the credibility of the allegations. If the government insisted on sealing that publicly available information, then citizens ought to know why.

Communications with the Court and the underlying dockets will allow Mr. Glawe, as a journalist, to better understand the underlying processes and then inform the public about them.

Releasing the requested information would not impair court functions or the government's investigation. Mr. Glawe is only seeking docket sheets, court filings, and written communications about the warrant that are adjudicatory in nature and, hence, tantamount to a court ruling. The government has already acceded to unsealing "any other papers associated with the warrant" subject to limited redactions. Dkt. 9 at 2. So the government cannot, at the same time, maintain that releasing the requested records (or the dockets listing them) would cause harm—let alone harm enough to overcome the government's burden.

## II.    CONCLUSION

For all these reasons, and as more fully explained in Mr. Glawe's original motion, Mr. Glawe respectfully requests that he be permitted to intervene in this matter and that the remaining search warrant materials be promptly unsealed.


[signatures on following page]

Respectfully submitted, this 17th day of February, 2026.

/s/ *Meredith C. Kincaid*
CROSS KINCAID BASKAM LLC
Meredith C. Kincaid
Georgia Bar No. 148549
315 W. Ponce de Leon Ave., Ste 715
Decatur, Georgia 30030
(404) 948-3022
meredith@crosskincaid.com

/s/ *Sarah Brewerton-Palmer*
Sarah Brewerton-Palmer
Georgia Bar No. 589898
Erin Morrissey Victoria
Georgia Bar No. 285342
Alan M. Long
Georgia Bar No. 367326
CAPLAN COBB LLC
75 14th Street NE, Suite 2700
Atlanta, Georgia 30309
(404) 596-5600
spalmer@caplancobb.com
evictoria@caplancobb.com
along@caplancobb.com

*Counsel for Justin Glawe*

12

## CERTIFICATE OF COMPLIANCE

The undersigned counsel hereby certifies that this pleading complies with

the Local Rules of this Court, including Local Rules 5.1.C and 7.1.D (N.D. Ga.) in

that it is double-spaced and composed in 14-point Times New Roman font.

This 17th day of February, 2026.

/s/ Meredith C. Kincaid
Meredith C. Kincaid
Georgia Bar No. 148549

*Counsel for Justin Glawe*

13