# Exhibit A

## *The Affidavit's Illusory Allegations*

| PRISTINE BALLOTS | | |
|---|---|---|
| *4 CORNERS AFFIDAVIT ALLEGATION* | *4 CORNERS AFFIDAVIT CONCESSION DEFEATING PROBABLE CAUSE* | FRANKS *OMISSION* |
| "**Witness 3** said there is no reason to have a pristine ballot with no folds." Aff. ¶ 53. | **Witness 4**, the Director of Elections for the SoS in 2020, "explained there would be pristine absentee ballots in every election. These ballots would be generated by the Vote Review Panel every time they adjudicated a damaged ballot. The new pristine ballot would be the ballot created and used to count that individuals vote." Aff. ¶ 67. | Pristine ballots are a benign byproduct of overseas and military voting. *See* Ryan Macias Declaration, Ex. A ¶ 23. Because military and overseas voters usually print their ballots on normal paper, which tabulator machines cannot scan, election workers must transcribe those votes onto new (typically unfolded) ballot stock. |
| "**Witness 8** recalled receiving one batch of ballots that contained 110 ballots [and] said she noticed quickly that those ballots seemed different. Of the 110 ballots, 107 had the exact same votes for each candidate on the ballot. These ballots were also pristine in that they had not been folded." Aff. ¶ 58.<br><br>"**Witness 8** stated she also received a stack of about 60 ballots that were labeled as having come from a senior living center. [She] believed these ballots should have been folded as well but were not." Aff. ¶ 59. | "**Witness 4** did not think it feasible that someone could tamper with absentee ballots due to how many people are in the room. He said it would take a tremendous amount of organization and secrecy. He said it may be possible for someone to quickly introduce one ballot, but to do anything on a large scale would be barely possible." Aff. ¶ 64.<br><br>**Witness 6**, an SoS investigator, "did not know how someone would get ahold of a ballot because there were not extra ballots sitting around . . . there were provisional ballots available on election day but those all had to be accounted for." Aff. ¶ 69. | The SoS investigated complaints specifically related to "pristine ballots" and found them "wholly without support." *See* Macias Decl. ¶ 20. The Affiant makes no mention of the official SoS report concluding that "[a]fter interviewing all identified witnesses and reviewing identified batches of ballots, investigators could not substantiate the allegations of 'pristine' ballots being counted during the risk-limiting audit." Macias Decl. ¶ 18; SoS Report of Investigation Case No. SEB2020-203 at 16.6. |
| TIMING OF RECOUNT REPORTING | | |
| *4 CORNERS AFFIDAVIT ALLEGATION* | *4 CORNERS AFFIDAVIT CONCESSION DEFEATING PROBABLE CAUSE* | FRANKS *OMISSION* |
| "On the day of the deadline to report the Recount results, Fulton County reported a recount totaling 511,343 ballots, 17,434 ballots fewer than original[ly] counted. The following day, Fulton County then reported a total of 527,925 ballots counted." Aff. ¶ 9. | | Fulton County never "reported" a total of "17,434 ballots fewer than original[ly] counted." The 511,343 number cited in the affidavit was merely Fulton County's running internal tally as of December 2, 2020—a date on which it was understood that thousands of ballots remained uncounted due to scanner difficulties. *See* Macias Decl. ¶ 29. Nothing about this sequence of events was inconsistent or contradictory. |

1

## TABULATOR TAPES

| 4 CORNERS AFFIDAVIT ALLEGATION | 4 CORNERS AFFIDAVIT CONCESSION DEFEATING PROBABLE CAUSE | FRANKS OMISSION |
|---|---|---|
| "**Witness 3** said ultimately, the tabulator tapes should match the number of physical ballots. The tabulator tape is what is used as the 'holy grail' for the final count." Aff. ¶ 41. | "**Witness 6** stated that . . . the tabulator tapes from the original count are not compared to the reports from the recount. **Witness 6** stated that the ballots are what mattered." Aff. ¶ 48.<br><br>"During the Fulton County Risk Limiting Audit, which was a hand count, **Witness 6** believes that all ballots were accounted for." Aff. ¶ 49. | According to a report published by the Secretary of State, "it is simply incorrect" to assume that "because tabulator tapes have not been produced then the paper ballots themselves are unaccounted for." 4/9/24 Report at 8. Tabulator tapes "are not part of the process by which official results are reported . . . [t]hey are merely additional documentation of the ballots cast on the precinct scanner." *Id.* |
| Clay Parikh believes that some tabulator tapes were missing and that others showed evidence of "an opportunity for the tabulation to be tampered with." Aff. ¶¶ 45–46 (emphasis added). Parikh speculates that "someone . . . manipulated" tabulator time reports because "the poll closing time and report printed times on several closing tabulator tapes were close enough in time." *Id.* ¶ 45. | The Affidavit does not attempt to explain why it would be suspicious or indicative of manipulation if the poll closing time and report printed time on tabulator tapes were "close enough in time." Nor does the Affidavit connect the dots between Parikh's various theories or allege that any of his theories, if true, would establish probable cause that someone committed a crime. | No court has ever found that tabulator tapes are covered records under 52 U.S.C. § 20701. |

## DUPLICATED BALLOTS

| 4 CORNERS AFFIDAVIT ALLEGATION | 4 CORNERS AFFIDAVIT CONCESSION DEFEATING PROBABLE CAUSE | FRANKS OMISSION |
|---|---|---|
| "**Witness 5** . . . reviewed and analyzed original ballot images and recount ballot images. . . . **Witness 5** concluded there were duplicate ballots included in both the Original Count and the Recount . . . Based on his review, concluded that what he observed could be intentional . . . " Aff. ¶ 29. | "**Witness 5** stated he downloaded the data online from 'ZebraDuck' and believed it was from an Open Records Request from Fulton County but was not positive as he was not a part of acquiring the data [and] received the data second hand." Aff. ¶ 29.<br><br>"**Witness 6**, a former investigator at the Secretary of State's Office[,] said that the complaint of duplicate ballots was investigated by tallying ballots by hand for the Presidential race. . . . The investigators concluded it was not intentional misconduct." Aff. ¶ 36. | |

2

## MISSING BALLOT IMAGES

| *4 CORNERS AFFIDAVIT ALLEGATION* | *4 CORNERS AFFIDAVIT CONCESSION DEFEATING PROBABLE CAUSE* | FRANKS *OMISSION* |
|---|---|---|
| In "reviewing ballot images [from the 2020 presidential election] after a May 7, 2024, Georgia State Election Board meeting[,] . . . [**Witness 2**] noticed the Secure Hash algorithm or SHA files were missing. . . . **Witness 2** stated the missing SHA files were a red flag to her that someone had manipulated the data. She believed the removal of the SHA files was an intentional act by someone." Aff. ¶¶ 20-21.<br><br>**Witness 2** "observed at least one file with date modified of January 11, 2024, along with others modified prior to January 11, 2024." Aff. ¶ 22. | 52 U.S.C. § 20701, the misdemeanor records retention statue that the Affidavit invokes, requires the preservation of records for only 22 months after the date of an election. The presidential election at issue occurred on November 3, 2020. Even assuming that ballot images are covered records under the statue (which they are not), the modification or destruction of these records on January 11, 2024—or any date after September 3, 2022—would not be a violation of Section 20701. Any modification or destruction of records after September 3, 2020 date was entirely permissible under the statute. | No court has ever found that ballot images are covered records under 52 U.S.C. § 20701. |
| "**Witness 1** reviewed images of the released absentee voter ballot images. He discovered that the number of ballot images from the Recount did not reconcile with the number of ballots cast." Aff. ¶ 13. **Witness 1** alleged "there were 17,852 missing ballot images from the reported results on the Georgia Secretary of State's website" Aff. ¶14. | **Witness 4**, who was the Director of Elections for the Georgia Secretary of State in 2020, "said the images are just duplicates. It would be more concerning if there was discrepancies between physical ballots and voter count. The concern is less about the images and more about the ballots and voter count." Aff. ¶ 26.<br>**Witness 4** "stated a possible explanation for missing images was that they were stored on a memory card and it was not uploaded correctly or became corrupt, that would account for the missing images." Aff. ¶ 27. | |
| The FBRE "admitted it has not preserved the majority of ballot images from in-person voting for the November 3, 2020, Original Count. This is another impediment to ruling out non-criminal explanations for the activities during the election." Aff. ¶ 28. | | In 2020, there was no provision of Georgia law that required the preservation of ballot images. |