# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| Robert L. Pitts, Chairman, Fulton County Board of Commissioners, Fulton County Board of Registration and Elections, Fulton County, Georgia, and Che Alexander, Clerk of Court, *Petitioners*, v. United States of America, *Respondent*. | Case No. 1:26-CV-00809 |

# UNITED STATES OF AMERICA'S
# REPLY IN SUPPORT OF MOTION TO VACATE EVIDENTIARY HEARING AND QUASH SUBPOENA

Petitioners' attempt to disrupt an ongoing federal criminal investigation has fallen flat. Their last-ditch joinder of the Clerk does not move the needle, and their overheated response only confirms that their Rule 41(g) motion is defective as a matter of law and an evidentiary hearing is unnecessary. If Petitioners' gambit is successful, the Court should expect a flood of immediate collateral attacks on search warrants issued across the District, all masquerading as Rule 41(g) motions nitpicking (unsuccessfully) even the most even-handed search warrant affidavits. Eleventh Circuit precedent bars exactly what Petitioners seek.

Further, Petitioners bemoan that they have not been provided a copy of the seized materials—but they omit that the United States has repeatedly offered, in writing, to discuss providing the Clerk an electronic copy in exchange for dismissing this case. Petitioners' refusal to engage that offer proves their goal is not to obtain copies of seized materials—but to interfere in the United States's investigation. The Court should vacate the evidentiary hearing, quash the subpoena, proceed with oral argument if the Court would find it helpful, and dismiss this case for lack of jurisdiction.

## ARGUMENT

### I.    The Undisputed Facts Confirm That Petitioners' Rule 41(g) Motion Fails—And Thus No Evidentiary Hearing Is Necessary.

Petitioners appear to suggest that a court must set an evidentiary hearing whenever a Rule 41(g) movant asks for it. Doc. # 40 ("Pets.' Opp.") at 1 (describing

a hearing as "required"). Not so. Rule 41(g) requires only that a court "*receive evidence* on any factual issue *necessary to decide the motion*." Fed. R. Crim P. 41(g) (emphasis added). Where the parties have had "the opportunity to submit evidence" and "the material facts [a]re not in dispute," a court is "not required to hold an evidentiary hearing before ruling on [the] motion." *United States v. Foster*, 635 F. App'x 818, 823 (11th Cir. 2015). Here, the Court has the detailed and even-handed affidavits submitted by the United States. Petitioners have submitted an "expert" declaration that is inadmissible and irrelevant. As explained below, there are no material factual disputes that need to be resolved for the Court to deny Petitioners' motion and dismiss this case for lack of jurisdiction.

*No Aggrieved Party With A Possessory Interest*. The Clerk's belated joinder does not get Petitioners past the threshold, because even if she has a possessory interest, the Clerk is still not "[a] person aggrieved" by the seizure of the records. Fed. R. Crim. P. 41(g). To the contrary, the Clerk has actively sought to divest or destroy the records. *See* Doc. # 32 ("US Opp.") 35-36. Even Petitioners have admitted that a court order is the only reason the Clerk still had the records. Doc. # 1-1 at 7. So, despite joining the (apparently reluctant) Clerk, Petitioners cannot carry their heavy "burden of establishing . . . jurisdiction." *Trump v. United States*, 54 F.4th 689, 697 (11th Cir. 2022).

2

As previously explained, the other three Petitioners lack a possessory interest as a matter of law. Tellingly, Petitioners now contend that no such interest is required. Doc. # 39 ("Pets.' Reply") at 4. The Eleventh Circuit could not have been clearer: a Rule 41(g) movant "must show that he had a possessory interest in the property seized by the government." *United States v. Howell*, 425 F.3d 971, 974 (11th Cir. 2005). The non-Clerk Petitioners flout that clear rule because they cannot show such an interest. They have neither "physical control" nor "the right to immediate physical control . . . as against all others." Restatement (Second) of Torts § 216 & cmt. d. (1965). Rather, Georgia law requires *the Clerk* to maintain the records under seal, precluding the non-Clerk Petitioners from having such physical control. The fact that a County office or officer can hold the records "if designated by the clerk," Pets.' Reply 5 (quoting O.C.G.A. § 21-2-500(a)), is irrelevant where the Clerk did not make such a designation before the seizure.

No Petitioner has a possessory interest and is aggrieved by the seizure of the records. That should be the end of the matter.

***No Fourth Amendment Rights***. Petitioners also lack cognizable Fourth Amendment rights as a matter of law, and no testimony could bear on that, either. Petitioners complain about the lack of caselaw on this issue, Pets.' Reply 8, but there is an obvious explanation: it is unprecedented for local government entities

3

and politicians acting in their official capacities to assert (let alone successfully assert) Fourth Amendment rights.

To be clear, there *is* authority precluding Petitioners' Fourth Amendment rights. For starters, the text of the Fourth Amendment refers to "the people." U.S. Const. amend. IV. The Supreme Court has authoritatively construed the phrase "the people" in the Bill of Rights as referring "to individual rights" that are necessarily "exercised individually." *District of Columbia v. Heller*, 554 U.S. 570, 579-581 (2008) (distinguishing other provisions that "arguably refer to 'the people' acting collectively as "deal[ing] with the exercise or reservation of powers, not rights"); *cf. South Carolina v. Katzenbach*, 383 U.S. 301, 323 (1966) ("person" in the Fifth Amendment "cannot . . . encompass the States"). Consistent with that understanding, "Fourth Amendment rights are personal and may not be vicariously asserted." *Lenz v. Winburn*, 51 F.3d 1540, 1549 (11th Cir. 1995).

Petitioners misunderstand the individual nature of Fourth Amendment rights. They argue that private corporations enjoy such rights. Pets' Reply 8-9. But that is because, unlike a government entity, "[a] corporation is . . . but an association of individuals under an assumed name and with a distinct legal entity." *Hale v. Henkel*, 201 U.S. 43, 76 (1906). A county is not an association of individuals with their own Fourth Amendment rights. In deeming each county a "body corporate" that can "sue or be sued," Georgia law does not (and could not)

alter the meaning of the Fourth Amendment to embrace all Georgia counties. *Contra* Pets.' Reply 9 (citing O.C.G.A. § 36-1-3). To be sure, local officials may, in their *individual capacities*, assert Fourth Amendment rights in, *e.g.*, the "private property" they bring to the workplace. *O'Connor v. Ortega*, 480 U.S. 709, 715 (1987) (plurality opinion). But they may not, in their *official capacities*, assert Fourth Amendment rights in official government records. *See* Rule 41(g) Opp. 15 n.3.[1] At a minimum, because such rights are not clearly established, they could not have been callously disregarded.

At one point, Petitioners get so turned around that they open fire on their own position, criticizing the United States for obtaining "a warrant to seize Fulton County's records in the first place." Pets.' Reply 8. It is obvious that a warrant helps ensure that seized materials could be used in potential proceedings, which would not necessarily involve Petitioners. And it makes no sense to argue a Rule 41(g) violation where the United States went above and beyond. Of course, if the United States had not obtained a warrant beforehand, Petitioners would be attacking that, too. Petitioners' "'heads I win, tails you lose' approach cannot be correct." *FEC v. Wisc. Right to Life, Inc.*, 551 U.S. 449, 471 (2007).

---

[1] This analysis applies equally to the Clerk in her official capacity.

*No Error (And Certainly No Callous Disregard) In Reliance On Magistrate's Probable Cause Finding*. "Whether a search warrant affidavit provides sufficient facts to establish probable cause . . . is a legal question," *United States v. Robinson*, 62 F.3d 1325, 1331 (11th Cir. 1995), so it cannot be a basis for an evidentiary hearing. To the extent Petitioners assert that a hearing would address purported and unidentified "internal inconsistencies" in the affidavit, it is unclear why testimony would be relevant. Pets.' Opp. 13.

That is especially true here, where any inquiry into Judge Salinas's finding would be subject to both the ordinary deference that applies to such a determination and the extraordinarily high bar set by Rule 41(g)'s callous disregard standard articulated in *Trump*. US Opp. 15-18.[2] Petitioners try to distinguish *Trump* on the facts, Pets.' Reply 10, but that decision set forth the test for analyzing any assertion of "equitable jurisdiction over suits flowing from the seizure of property," *Trump*, 54 F.4th at 697. Petitioners cannot ignore the Eleventh Circuit's authoritative refusal to "requir[e] federal courts to oversee routine

---

[2] The United States has never argued that issuance of the warrant strictly "forecloses any" review. Pets.' Opp. 5. Rather, the United States has emphasized the exceedingly deferential nature of such review based on general Fourth Amendment principles, Rule 41(g), and the need to avoid opening federal courts to premature litigation over every search warrant. US Opp. 15-18. Here, that review requires denying Petitioners' motion as a matter of law.

criminal investigations beyond their constitutionally ascribed role of approving a search warrant based on a showing or probable cause." *Id.* at 701.

Rather than try to meet their burden, Petitioners duck it. First, they invent a new, *sui generis* multiplication theory—claiming that the existence of "civil litigation," "state court proceedings and state subpoenas," records that purportedly "belonged to an entity exercising a constitutional function delegated to it by . . . Georgia," and the warrant's lack of "provision for a return of originals, a copy, or any consideration of Georgia's statutory scheme"—somehow combine to "collectively demonstrate . . . callous disregard." Pets.' Reply 11-12. Not a single one of those demonstrates callous disregard (or even implicates the Fourth Amendment)—and Petitioners have no caselaw holding otherwise. The Supreme Court has also rejected this type of "combination claim," where a party claims "a constitutional non-violation plus a constitutional non-violation may equal a constitutional violation." *FCC v. Consumers' Research*, 606 U.S. 656, 696-697 (2025).

Second, Petitioners argue that "they have a sovereign duty that the usual private search warrant targets do not." Pets.' Reply 12. But Petitioners (who do not have Fourth Amendment rights at all) cannot seriously claim *greater* protection than "the people." U.S. Const. amend. IV. And the same test applies "no matter who the government is investigating." *Trump*, 54 F.4th at 701.

Third, Petitioners disregard the governing standard by claiming that principles from the good-faith and qualified-immunity contexts are irrelevant. Pets.' Reply 14-16. To avoid unnecessary and inefficient interference with "the executive branch's criminal enforcement authority," "equitable jurisdiction exists only in response to the most callous disregard of constitutional rights." *Trump*, 54 F.4th at 697-698. It thus makes sense to look to Fourth Amendment caselaw to determine what qualifies as callous disregard, and it is entirely appropriate to consider the good-faith exception (asking whether an officer "ha[d] no reasonable grounds for believing that the warrant was properly issued," *United States v. Leon*, 468 U.S. 897, 923 (1984)) and qualified immunity principles (asking whether there was "arguable probable cause," *Case v. Eslinger*, 555 F.3d 1317, 1327 (11th Cir. 2009)).

When Petitioners finally address Judge Salinas's probable cause finding, their arguments fail under any standard. They start by arguing that failing to preserve ballot images would not violate 52 U.S.C. § 20701. Pets.' Reply 16. That is wrong, because such images are plainly "records" that "relat[e] to any . . . act requisite to voting." 52 U.S.C. § 20701; *see, e.g.*, *McIntyre v. Morgan*, 624 F. Supp. 658, 664 (S.D. Ind. 1985) ("[T]his statute encompasses, among other things, voting registration records, poll lists, applications for absentee ballots, ballot envelopes, tally sheets, computer programs used to tabulate votes, as well as the ballots

themselves.").[3] In any event, Petitioners would need to show that the United States's reading of the statute (as accepted by Judge Salinas) is *callously* wrong, and they certainly cannot do that.

Petitioners' argument also misses the point. Even if ballot images themselves did not qualify, the failure to retain them would be evidence that ballots were not preserved, and Petitioners cannot dispute that ballots must be preserved under § 20701. Petitioners would have the Court believe that every portion of a search warrant is *callously unconstitutional* unless it single-handedly establishes every element of a crime. That is obviously not the law.[4]

On that point, Petitioners double down on their argument that probable cause must rest on evidence of *mens rea*, even if there is otherwise probable cause for the conduct elements of an offense. *See* Pets.' Reply 17-19. Petitioners lambast the United States for "cit[ing] no authority," then proceed to recount all the authority that the United States cited and distinguish it based on irrelevant facts, all while *themselves* citing zero authority supporting their blanket rule. *See id.* at 17-18 (citing only *United States v. Brouillette*, 478 F.2d 1171, 1176 (5th Cir. 1973), which

---

[3] Petitioners seem to think § 20701 covers only records that are, themselves, *pre*requisites to voting—as opposed to records that *relate* to *requisites* to voting. Pets.' Reply 16.

[4] Notably, Petitioners do not raise any similar argument attacking the applicability of § 20511.

addressed an affidavit that "fail[ed] in any respect to show underlying facts which tend to establish . . . a jurisdictional prerequisite for the federal offense"). Petitioners also have no meaningful response to the point that the conduct alleged in the affidavit creates an inference of willfulness, even if "the affiant himself" did not spell that inference out in writing. *Id.* at 20; see US Opp. 19. Petitioners' "hypertechnical" approach is not only legally unsound, *United States v.* Miller, 24 F.3d 1357, 1361 (11th Cir. 1994) (requiring "a realistic and commonsense approach"), but also divorced from the reality of criminal investigations, where *men rea* is often proven at a later stage.

After all that, Petitioners no longer engage with any of the evidence in the affidavit to argue against probable cause. They attach a chart rehashing the same arguments as before, but do not address any of the United States's responses—presumably because they have nothing to say. Their faulty "divide-and-conquer approach," *District of Columbia v. Wesby*, 583 U.S. 48, 62 (2018) (requiring a "totality of the circumstances" analysis), also ignores the mutually reinforcing nature of the evidence in the affidavit. For example, Petitioners' arguments that ballot images and tabulator tape data are not counted, Pets.' Reply Ex. A at 2-3, ignores that such records exist in the first place to enable cross-checking results that could be impacted by duplicate or pristine ballots introduced later in the process. Similarly, Witness 5's statement that the Recount included new ballots and test ballots that

10

did not appear in the original count, complements Witness 11's statement that she viewed test ballots that were unsecured. Aff. ¶¶ 33, 71.

Even as to each isolated category, Petitioners cannot undermine Judge Salinas's probable cause finding. Among other reasons, the affidavit contains evidence for each category that is both independently sufficient for probable cause and not meaningfully addressed by Petitioners:

-Missing ballot images: Confirmed by multiple witnesses; witness statements about missing Secure Hash Algorithm files and image files that were modified long after the election. *See* Aff. ¶¶ 14, 20, 22, 23.

-Duplicate ballots: Undisputed and confirmed by Secretary of State investigation (albeit with a State finding of no intentional misconduct). *See* Aff. ¶¶ 33, 34, 36.

-Pristine ballots: Corroborated witness statements about boxes with identical pristine ballots and a stack of pristine ballots from a nursing home; witness statement that substituting pristine ballots for genuine ballots would not result in mismatch between number of ballots and number of voters; witness statement regarding unsealed boxes and unsecured ballots; requirement that substitutes for damaged ballots be marked as such. *See* Aff. ¶¶ 57-63, 65.

-Tabulator tapes: Witness statements that tabulators were missing from some machines, one tabulator machine was used to close out 15 machines from 12 locations (despite Georgia rules requiring tabulator tapes to be printed from each machine at poll closing), protective counters were identical on five tabulator tapes, and in some instances the reported number of ballots exceeded the protective counter (odometer) number. *See* Aff. ¶¶ 42, 45, 46.

-Risk Limiting Audit batch tallies: 36 errors within batch tallies, which included duplicated or misidentified batch entries *and* batch entries reflecting *100% vote for one candidate*. Aff. ¶ 14 n.4; *see also id.* ¶ 9(c) (inaccurate tallies confirmed by State investigation).

Petitioners' attacks on isolated parts of the affidavit are also without merit, but even just the above pieces of evidence—independently and collectively—easily establish probable cause.

*No Overbreadth.* Petitioners make a new argument that the warrant "was overbroad." Pets.' Reply 12; *see also id.* at 15. This argument is forfeited. "In general, a court should not consider arguments raised for the first time in a reply brief." *Reliance Ins. Co. of Illinois, Inc. v. Richfield Hospitality Servs., Inc.*, 92 F. Supp. 2d 1329, 1332 (N.D. Ga. 2000); *accord Fogade v. ENB Revocable Tr.*, 263 F.3d 1274, 1296 n.19 (11th Cir. 2001) ("[A]rguments made for the first time in a reply brief are not properly before the Court."). Regardless, given the allegations in the affidavit concerning the physical condition of ballots and reflecting undisputed chain-of-custody issues, the United States's need for "retention of the originals," Pets.' Reply 15, is clear, *see also infra* p. 17. And to the extent Petitioners claim harm based on "Petitioners' need for access to even a copy," Pets.' Reply 12, the United States has previously and repeatedly informed Petitioners that the United States would consider providing electronic copies if Petitioners voluntarily dismissed this action. Petitioners have not engaged with that offer.

*No Basis For* **Franks** *Hearing*. Petitioners argue that a hearing is needed to assess whether the affiant intentionally or recklessly materially misled the magistrate. Pets.' Opp. 7-8. But Petitioners have not made the extraordinary

showing of an "offer of proof" establishing that any specifically identified "portion of the warrant affidavit" reflects "deliberate falsehood or reckless disregard for the truth" by "the affiant" (which, in the Rule 41(g) context, would also need to reflect *callous disregard*), let alone established that, but for such a statement or omission, there would not be "sufficient content … to support a finding of probable cause." *Franks v. Delaware*, 438 U.S. 154, 171-172 (1978); *accord United States v. Barsoum*, 763 F.3d 1321, 1329 (11th Cir. 2014) (explaining that the movant must "make a substantial *preliminary* showing of deliberate falsity and omission," and rejecting the argument "that only a *Franks* hearing could have shown" as much).

A party seeking a *Franks* hearing must show with "evidence" that the agent "had the requisite intent to mislead." *United States v. Colkey*, 899 F.2d 297, 301 (4th Cir. 1990). And when the movant relies on purported omissions, courts must guard against "open[ing] officers to endless conjecture about investigative leads, fragments of information, or other matter that might, if included, have redounded to [a] defendant's benefit." *Id.* After all, *Franks* does not "require[] an affiant to include all potentially exculpatory evidence in the affidavit," which would "import the rule of *Brady v. Maryland*, 373 U.S. 83, 1963," into a materially different inquiry, *Colkey*, 899 F.2d at 302.

Once again, Petitioners do not come close to making a *Franks* showing. In fact, they do not even *purport* to raise *any* misstatements or omissions with respect

13

to *multiple* categories of evidence that independently and collectively establish probable cause. Specifically, Petitioners do not raise any *Franks* arguments about missing images, duplicate ballots, or batch tallies (including batches tallied 100% for one candidate) in the Risk Limiting Audit.[5] With those categories of evidence unaddressed by Petitioners, there is no way that the inclusion of any other purported omission would have defeated probable cause.

Beyond that, the *Franks* arguments that Petitioners do raise are exceedingly weak. Consider their threadbare argument with respect to tabulator tapes. Petitioners say the affidavit contains a misleading "assumption"—"that because tabulator tapes have not been produced then the paper ballots themselves are unaccounted for." Doc. # 30 ("Pets.' Br.") at 24. It appears that Petitioners simply copied a response to certain "Complainants' assumption" addressed by the Secretary of State's April 9, 2024 report. *See* Doc. 30-1 Ex. 4 at 9. But that "assumption" is nowhere in the affidavit, which acknowledges Witness 6's statement that tabulator tapes "are not used during the recount" and "the ballots are what mattered," but includes Witness Parikh's statement that tabulator tapes can nevertheless "help[] ensure the integrity of the tabulation" by serving as a

---

[5] In their chart, Petitioners now purport to raise omissions with respect to missing images. Pets.' Reply Ex. A at 3. But those "omissions" are just legal arguments about whether retaining ballots was required. That is presumably why Petitioners' motion did not contain a *Franks* section for ballot images.

record for each tabulator machine. Aff. ¶¶ 46, 48. The affidavit contains evidence that, despite Georgia rules requiring tabulator tapes to be printed from each machine at poll closing (and signed by three persons), *id.* ¶ 42 (citing Ga. Comp. R. & Regs. 183-1-12-.12), a relatively small number of tabulator machines were used to print memory card data from other machines, which impaired the integrity of the (unsigned) tabulator records and any cross-check verification that might occur (among other apparent data anomalies), *see id.* ¶ 45. Regardless of whether ballots are accounted for, the reason tabulator tapes are valuable (and presumably why Georgia law requires strict and decentralized tracking) is because they can aid verification in an investigation of potential false voting and/or tabulating.

The other purported omissions are equally illusory and immaterial. Petitioners cannot use *Franks* to impeach "nongovernmental informant[s]." *See Franks*, 438 U.S. at 171. And they continue to harp on persons who did not provide any of the concrete evidence in the affidavit. *See* Pets.' Reply 22.

All that is left are pristine ballots. But Petitioners point to no proof showing that the agent *intentionally* or *recklessly* (let alone *callously*) omitted information about military and overseas voting. Pets.' Reply 22. All they offer is a declarant's bare statement that such voting occurs and does not require folded ballots. *See* Doc. # 30-1 ("Macias Decl.") ¶¶ 19-20 (simply asserting declarant's knowledge). And military and overseas voting could not explain the various specific witness

statements about stacks and boxes of pristine ballots with identical votes or from a senior living center. *Id.* ¶¶ 59, 61. Petitioners also say the Secretary of State already investigated those statements and "could not substantiate" the allegations. But a failure to substantiate allegations corroborated by another witness cannot, by itself, defeat probable cause as to this issue (let alone generally). And Petitioners ignore that the affidavit acknowledged the Secretary of State's finding of no intentional misconduct. *Id.* ¶ 82.

**No Other Factual Issues Pertinent To "Callous Disregard."** Petitioners' secondary "callous disregard" arguments rely on a variety of ill-fitting doctrines and irrelevant circumstances (statutes of limitation, *Younger* abstention, general local control over elections, other litigation) that plainly cannot give rise to "callous disregard" of any constitutional rights as a matter of law—and that therefore do not give rise to any material factual disputes that could warrant a hearing.

**No Genuine Factual Disputes Relating To Remaining Equitable Factors.** Although Petitioners do not have *any* cognizable interest in the records, any conceivable interest and need for the records is at least significantly minimized in these circumstances. As noted, Petitioners have stated that the only reason the Clerk still had the records was due to a court order, and the Clerk has expressly asked a court to allow the Clerk to divest or destroy them. *See* U.S. Opp. 35-36 & n.7; Doc. #1-1 at 7. Nothing about Petitioners' proposed evidentiary hearing bears

on, let alone could overcome, those concessions, which also negate any claimed irreparable harm.

Instead of pointing to any ongoing important activity that Petitioners were conducting with these records at the time of the seizure, they raise a host of irrelevant and unpersuasive political points. For instance, they claim "a responsibility to separate fact from fiction" and "rebut[] unfounded attacks." Pets.' Reply 28. That is a curious and self-defeating rationale, given that they flout binding Eleventh Circuit and Supreme Court caselaw at every turn, and also miserably fail to show a callous disregard of rights. Further, if—as Petitioners claim—only "the original, unadulterated records can provide . . . proof that [citizens] can trust the election process," *id.* at 28, that only confirms the United States's interest in retaining the original records, away from a Clerk that has stated she wishes to destroy them. Pets.' Reply 15. In insisting they need the records, Petitioners never explain how specifically they would use them (and they elsewhere emphasize the records are subject to Georgia laws and court orders that would limit such use).

Petitioners' failures to show any substantial need for the records and any irreparable harm are independently dispositive. The Eleventh Circuit has "emphasized again and again that equitable jurisdiction exists only in response to the most callous disregard of constitutional rights, *and even then only if other factors*

*make it clear that judicial oversight is absolutely necessary.*" *Trump*, 54 F.4th at 698 (emphasis added); *see also Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S. 531, 542 (1987) ("well-established principles governing the award of equitable relief in federal courts" require a showing of "irreparable injury").

## II.    An Evidentiary Hearing Would Interfere in an Ongoing Federal Criminal Investigation.

Petitioners have purported to limit their requested hearing such that it would not interfere with an ongoing investigation. But given all the defects discussed above, no hearing is warranted, period.

Regardless, the limits Petitioners propose are illusory. Petitioners still wish to determine "the scope" of purportedly "material omissions" and the agent's "state of mind" with respect to them. Ex. A at 1 (revised *Touhy* request). There are no intentional or reckless misstatements or omissions to analyze. And Petitioners' desired inquiry would necessarily implicate "testimony that would be protected by . . . privilege." *Id.*

Petitioners' argument that the United States' non-opposition to unsealing portions of the affidavit somehow supports holding an evidentiary hearing, Pets.' Opp. 13 n.6, does not add up. Agreeing to unseal materials "incorporated or integrated into a district court's adjudicatory proceedings" under First Amendment principles, *Comm'r, Alabama Dep't of Corr. v. Advance Loc. Media, LLC*, 918 F.3d 1161, 1168 (11th Cir. 2019), cannot be parlayed under a procedural rule

18

(Rule 41) into the questioning of a federal agent about an ongoing criminal investigation.

### III.    The Court Should Quash Petitioners' Subpoena.

Because no hearing is proper for all the reasons stated already, the Court should quash Petitioners' subpoena. The government has denied Petitioners' amended *Touhy* request.

## CONCLUSION

For the foregoing reasons, the Court should modify its scheduling order by vacating the evidentiary hearing scheduled for February 27, 2026, and the Court could instead hold oral argument if the Court would find it helpful.  The Court should quash Petitioners' subpoena for the testimony of Special Agent Evans.

Respectfully submitted,

STANLEY E. WOODWARD, JR.
*Associate Attorney General*

/s/ THOMAS C. ALBUS
THOMAS C. ALBUS
*Special Attorney to the Attorney General*
*and United States Attorney for the*
*Eastern District of Missouri*
Missouri Bar No. 46224
Thomas Eagleton U.S. Courthouse
111 S. 10th Street, 20th Floor
St. Louis, MO 63102
(314) 539-2200

A. TYSEN DUVA
*Assistant Attorney General – Criminal*
*Division*

R. TRENT MCCOTTER
*Associate Deputy Attorney General*

MICHAEL WEISBUCH
*Senior Counsel to the Associate Attorney*
*General*

PETER L. COOCH
*Trial Attorney/Senior Counsel, Criminal*
*Division*

**Certificate of Compliance**

I hereby certify, pursuant to Local Rules 5.1 and 7.1D, that the foregoing brief has been prepared using Book Antiqua, 13 point font.

/s/ THOMAS C. ALBUS
THOMAS C. ALBUS
*Special Attorney to the Attorney General and United States Attorney for the Eastern District of Missouri*