**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

ROBERT L. "ROBB" PITTS, CHAIRMAN, FULTON COUNTY BOARD OF COMMISSIONERS; FULTON COUNTY BOARD OF REGISTRATION AND ELECTIONS; FULTON COUNTY, GEORGIA; and CHE ALEXANDER, CLERK OF COURT,

Petitioners,

v.

UNITED STATES OF AMERICA,
Respondent.

Civil Action No.
1:26-CV-00809-JPB

## PETITIONERS' SUPPLEMENTAL BRIEF IN OPPOSITION TO RESPONDENT'S MOTION TO QUASH

On March 16, 2026, the Court ordered the parties to submit supplemental briefing regarding Respondent's Motion to Quash. Mar. 16, 2026 Order. The Court asked the parties to "focus on the arbitrary and capricious standard in light of Respondent's denial of Petitioners' amended *Touhy* request." *Id.* As explained below, under applicable law and federal rules, Respondent's denial of the amended *Touhy* request was "arbitrary and capricious." Special Agent Evans's testimony is central to this motion. His affidavit—which misstated and omitted key facts that if accurately disclosed would have undermined any pretense of probable cause—provides the sole support for the warrant at issue. Respondent has already put Special Agent Evans's testimony in the public domain, seeking to seal only the names of a

1

few witnesses. To the extent legitimate privileges limit appropriate subjects of his testimony, Petitioners have made clear they do not seek it and question-by-question limits could be imposed. But despite the centrality of Evans's affidavit and omissions, and despite the public disclosure of his testimony therein, Respondent seeks to deny Petitioners *any ability* to question Evans. It is of course a litigation advantage to present and rely on a witness while barring all examination by the adverse party, and Respondent has offered no reasoned justification for it. That kind of raw opportunism, as well as Respondent's shifting purported justifications for denying the request, is the height of arbitrary and capricious decision-making.

As a threshold matter, however, as explained below, the "arbitrary and capricious" standard does not govern this dispute, and Respondent cannot meet its burden to quash a properly issued subpoena for testimony where the United States is a party in a civil action. Here, Petitioners do not seek investigative reports, memoranda, or other physical evidence. They merely seek testimony from an agent who has already testified in the form of an affidavit used to seize Fulton County's original election records.

*First*, Respondent's motion wrongly conflates procedural regulations (referred to as *Touhy* regulations) that establish a process for obtaining evidence with a substantive right to withhold testimony. But *Touhy* regulations provide neither substantive rights nor an independent basis for withholding testimony—especially

2

where Respondent is a party to the litigation. Notably, Respondent does not allege that Petitioners failed to comply with DOJ's procedural requirements. Instead, it suggests that procedural *Touhy* regulations grant Respondent a substantive right to bypass a valid civil subpoena. Because the regulations create no such right to withhold Evans's testimony, they cannot provide a basis to quash the subpoena.

*Second*, Respondent's prior conduct and blanket refusal to allow any testimony from Evans ignores certain *Touhy* regulations and directly contradicts others. Respondent cannot rely on a regulation to support quashal while simultaneously violating that same regulation. This conduct is an additional basis for denying the motion to quash.

*Third*, even through the lens of "arbitrary and capricious" review, Respondent has no legally defensible basis for withholding Evans's testimony. Respondent asserts that Evans's testimony would impair an ongoing criminal investigation, but Respondent's conduct and concessions undermine that assertion. A great deal of information about the alleged "ongoing investigation" is now public, in large part because Respondent did not object to unsealing the search warrant affidavit. Respondent cannot now claim that testimony about misstatements and omissions regarding that same affidavit are subject to greater protection. Moreover, Respondent has taken shifting position on the issue of testimony and refused to even engage with Petitioners about any reasonable limitations to Evans's testimony. In

3

short, Respondent's refusal to permit Evans's testimony is facially arbitrary, capricious, and inconsistent with established law. For those additional reasons, the motion to quash should be denied.

*Lastly*, Respondent's motion is, at best, grounds for addressing privilege concerns on a question-by-question basis—not outright quashal. Courts routinely address such disclosure issues individually as they arise. The amended *Touhy* request is careful to disavow any interest in seeking privileged information and seeks testimony limited to the very affidavit that Respondent relied upon to seize Fulton County's records. But rather than identifying specific issues or seeking to reasonably limit the subpoena's scope, Respondent seeks to quash the entirety of Evans's testimony. To the extent that there is any "privileged" information at issue, the Court can address those issues as they arise at a hearing. Moving to quash the subpoena, rather than applying that more measured approach during a hearing, is transparently arbitrary and capricious conduct that seeks to substitute Respondent's judgment for the Court's.

## I.    BACKGROUND

On January 28, 2026, FBI Special Agent Hugh Evans obtained a search warrant under seal for the seizure of Petitioner Fulton County's original 2020 election records. When Petitioners (and Intervenors) filed motions to unseal the search warrant and its supporting affidavit, Respondent did not object. *See* Feb. 7,

2026 Order (Doc. 9) at 2 ("Respondent has stated that it does not oppose the unsealing of the search warrant affidavit and any other papers associated with the warrant . . . ."). A few days later, the search warrant affidavit was unsealed and docketed. Affidavit (Doc. 22-2). Shortly thereafter, Petitioners filed an amended motion for relief under Federal Rule of Criminal Procedure 41(g). Am. Mot. (Doc. 30). That motion is the basis for the civil action now before the Court.[1]

### A.    An Evidentiary Hearing Is Required to Resolve Petitioners' Rule 41(g) Motion.

Petitioners' Amended Motion demonstrated that Evans's affidavit triggered the evidentiary hearing called for by Rule 41(g). *See* Fed. R. Crim. P. 41(g) (requiring courts to "receive evidence on any factual issue necessary to decide the motion"); *United States v. Melquiades*, 394 F. App'x 578, 583 (11th Cir. 2010) ("[O]nce a Rule 41(g) movant alleges facts sufficient to sustain his claims, . . . the district court *must collect some evidence* to resolve material factual issues.") (emphasis added) (footnote omitted); *United States v. Potes Ramirez*, 360 F.3d 1310,

---

[1] Because there is no criminal proceeding in this matter, Petitioners' Rule 41(g) claim is an independent civil case, which is governed by the Federal Rules of Civil Procedure. *See Harbor Healthcare Sys., L.P. v. United States*, 5 F.4th 593, 596, 598 n.2 (5th Cir. 2021); *see also* Fed. R. Civ. P. 1 (the Rules "govern the procedure in all civil actions and proceedings in the United States district courts . . . ."). Respondent agrees. *See* Respondent's Opp'n (Doc. 32) at 10 ("In the absence of a criminal proceeding, a Rule 41(g) motion is treated 'as a civil action in equity.'") (quoting *United States v. Howell*, 425 F.3d 971, 974 (11th Cir. 2005)).

1314 (11th Cir. 2001) ("[T]he district court was incorrect to deny [the Rule 41] motion without requiring the government to submit at least some evidence . . . .").

Petitioners' motion also triggered an evidentiary hearing resulting from the affidavit's material omissions and other deficiencies that satisfied the *Franks* standard for violations of the Fourth Amendment. *See Franks v. Delaware*, 438 U.S. 154 (1978); *see also Madiwale v. Savaiko*, 117 F.3d 1321, 1326–27 (11th Cir. 1997) ("[A] warrant affidavit violates the Fourth Amendment when it contains omissions made intentionally or with a reckless disregard for the accuracy of the affidavit.") (internal quotation marks and citation omitted).

When Petitioners, at Respondent's request, followed the *Touhy* procedure to subpoena Special Agent Evans for the evidentiary hearing, Respondent apparently misinterpreted the request as overbroad and an attempt to seek privileged information. To assure Respondent that was not the case, Petitioners revised their request to make clear no such breadth or invasion of any privilege would occur. However, given the allegations in the motions, only the agent affiant could address why a warrant was sought (after applicable statutes of limitations had lapsed), how (if at all) the agent verified the information in the affidavit, why the agent relied on those he interviewed (without identifying their bias or credibility), and why he made the decisions to omit or characterize information as he did – all of which would inform the magistrate reviewing the request.

6

Moreover, Respondent had no objection to the release of the affidavit, knowing what the agent had decided to include and exclude, it put forth a one-sided, critically incomplete narrative of the allegation of any wrongdoing in the 2020 election.  It follows that Respondent would like that affidavit to be the only record on which the Court would consider the pending motion, but Petitioners' submissions demonstrate numerous factual issues that the Court should evaluate.  That can only occur with the hearing the Court scheduled.

Accordingly, before the Court is a well-supported request for an evidentiary hearing and a proper subpoena for only information that would bear on that proceeding.

### B.    Respondent's Shifting Position on Evans's Testimony Lacks Coherence and Credibility.

Respondent's intent is clear: it does not want Evans's material misstatements and omissions on display at an evidentiary hearing. So with increasing resistance, Respondent now seeks to walk back prior statements and relies on an evolving list of excuses for refusing to make Evans available. Here is the factual background that led to the amended *Touhy* request:

Over a month ago, Petitioners notified Respondent that they expected Evans to testify at the evidentiary hearing and asked whether Respondent would make him available. *See* Ex. A, Emails Between K. Ghali and T. Albus. Respondent replied, "*I can't imagine that will be an issue* and will give you a firm answer as soon as I

can[.]" *Id.* (emphasis added). But two days later, there was no "firm answer." Instead, Respondent "passed along [Petitioners'] request" to other DOJ attorneys. *See* Ex. B, Emails Between K. Ghali and T. McCotter.

Following the introduction of additional counsel, Petitioners reiterated their request, asking whether counsel insisted on formal service of a *Touhy* request. *See id.* ("Given that [Evans] is a key witness, please also let us know whether you believe that a formal Touhy request is required."). Although Respondent said it would "discuss internally," it demanded a *Touhy* request shortly after Petitioners filed their amended 41(g) motion. *See id.* Petitioners obliged and sent a *Touhy* notice to Respondent the same day. *See* Feb. 17, 2026 Touhy Request (Doc. 33-1) ("First Notice").

After Petitioners filed their amended 41(g) motion and provided the First Notice, Respondent began erecting more barriers to prevent Evans's testimony. For example, Respondent did not ask for a subpoena originally, but several days later, according to its "Touhy expert," a subpoena was "necessary to trigger Touhy review." Ex. C, Emails Between K. Ghali and T. McCotter. And even though Respondent requested the subpoena, counsel initially declined to accept service on Evans's behalf. *See id.* ("To be clear, this submission doesn't count as us accepting service . . . rather, it is needed to initiate the Touhy review."). Respondent later accepted service of the subpoena.

Then, without further discussion of Evans's testimony, Respondent moved to quash the subpoena and, several hours later, sent a letter to Petitioners purporting to "decline" to authorize Evans's testimony. *See* Ex. D, Feb. 20, 2026 Letter from T. Albus to K. Ghali ("First Refusal"). Yet both Respondent's motion and its letter premise opposition to the subpoena on Respondent's view of the merits of Petitioners' 41(g) motion. *See* Doc. 33 at 9 (request to quash subpoena "[b]ecause no evidentiary hearing is necessary"); First Refusal at 2 (claiming that request for testimony is "foreclosed by precedent" for reasons given in Respondent's briefs). But conflating those issues functionally substitutes Respondent's judgment for the Courts. Relying on cherry-picked and mischaracterized quotations from the First Notice, Respondent also claimed that Evans could not testify because his testimony "would reveal information compiled for investigative purposes, and would interfere with ongoing law enforcement proceedings." Doc. 33 at 11; First Refusal at 2.

Despite Respondent's initial failure to confer, Petitioners offered to discuss any reasonable limitations on Evans's testimony. Respondent declined, claiming that the local rules do not require consultation except for discovery motions." Petitioners tried again and asked Respondent to "confirm whether there are any topics on which [Respondent] would authorize SA Evans to testify." Respondent still refused to discuss.

In fact, rather than engaging with Petitioners, Respondent asserted a new position that "[a]ny questions/topics that [P]etitioners would want to ask SA Evans would be about or related to the ongoing criminal investigation, and that line of inquiry is entirely improper . . . ." Respondent also asserted that no conferral was necessary because "the *Touhy* process itself qualifies as conferral."

To leave no question that Petitioners did not seek privileged information, they sent Respondent a revised *Touhy* request. Feb. 23, 2026 Revised Touhy Notice (Doc. 40-1) ("Revised Notice"). The Revised Notice narrowed and clarified the testimony sought. *See id.* It also expressly confirmed that "Petitioners do not seek and will not request any testimony that would be protected by the relevant substantive law concerning privilege under 28 C.F.R. § 16.26(a)(2), or any privileged information that falls under 28 C.F.R. § 16.26(b)(5)." *Id.*

Respondent replied with another categorical refusal to provide any testimony from Evans. *See* Ex. E, Feb. 24, 2026 Letter from T. Albus to K. Ghali. In fact, Respondent claimed that it would be *entirely* impermissible to question Evans about "'pertinent facts' either included or allegedly omitted from his affidavits" because it would "involve and reveal information about an ongoing criminal investigation." *Id.* (citing 28 C.F.R. § 16.26(b)(5)). Since then, Respondent has maintained its unprecedented position that the *Touhy* regulations create a safe harbor for Evans, no matter what he told the magistrate judge and no matter what he concealed.

## II.   Argument

Under any standard, Respondent's motion fails. First, Respondent's motion to quash is governed by Federal Rule of Civil Procedure 45, and because Respondent failed to identify any basis for quashal under that Rule, the motion should be denied. Second, Respondent failed to comply with applicable *Touhy* regulations, and its refusal to produce Evans's testimony is arbitrary and capricious. For those additional, independent reasons, the motion to quash should be denied.

### A.   Respondent's Motion Fails to Satisfy, or Even Argue, that the Subpoena Should Be Quashed Under Applicable Standards.

Respondent's motion to quash relies exclusively on two sources of authority: *U.S. ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951) and DOJ's *Touhy* regulations, codified at 28 C.F.R. § 16.21 *et seq. See* Mot. to Vacate and Quash at 9–11. But neither source provides a basis for Respondent to unilaterally withhold Evans's complete testimony.

Petitioners served Respondent with a valid subpoena for Evans's testimony pursuant to Federal Rule of Civil Procedure 45. *See* Ex. F, Evans Subpoena.[2] That Rule provides specific circumstances under which courts should quash a subpoena.

---

[2] Petitioners contemporaneously provided an additional copy of the First Request, and Respondent accepted service on behalf of Evans on February 19, 2026.

*See* Fed. R. Civ. P. 45(d)(3).[3] But Respondent asserts no argument regarding any of those standards.[4] Because Respondent identifies no proper basis for quashing the Evans Subpoena, this Court should deny the motion to quash. *See Watts v. S.E.C.*, 482 F.3d 501, 508 (D.C. Cir. 2007) ("[A]n agency's *Touhy* regulations do not relieve district courts of the responsibility to analyze privilege or undue burden assertions under Rule 45.") (Kavanaugh, J.).

For starters, the Supreme Court's holding in *Touhy* was limited; the Court held only that a subordinate federal employee could not be held in contempt for complying with regulations issued by the head of a department that restrict the production of government evidence. *Touhy*, 340 U.S. at 466–68. Notably, the Court expressly declined to address "whether or on what conditions or subject to what disadvantages to the Government" the Attorney General "may refuse to produce government papers under his charge." *Id*. at 469; *see also id*. at 467 ("We find it

---

[3] Fed. R. Civ. P. 45(d)(3)(A) ("[T]he court . . . must quash or modify a subpoena that: (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden.").

[4] Petitioners note that Respondent vaguely claims that it "would likely assert various privileges to any questioning," Respondent's Opp'n at 25, and that an evidentiary hearing would "likely require the Court to rule on . . . privilege disputes . . . ." Mot. to Vacate and Quash at 8. But allusions to the possibility of privilege disputes do not meet the standard of showing that privilege applies. *Cf. United Physician Grp., LLC v. Leche*, 742 F. Supp. 3d 1251, 1256 (N.D. Ga. 2024) ("The burden of demonstrating that a privilege applies to any communication is on the proponent of the privilege.").

unnecessary, however to consider the ultimate reach of the authority of the Attorney General to refuse to produce at a court's order the government papers in his possession, for the case as we understand it raises no question as to the power to the Attorney General himself to make such a refusal."); *id.* at 471–72 (Frankfurter, J., concurring) (noting narrowness of the Court's holding, and that "[t]here is not a hint" in the precedent on which the *Touhy* decision relied "that the Government can shut off an appropriate judicial demand for such papers."). In other words, the holding in *Touhy* merely permitted federal agencies to continue managing their own procedural processes for document production, and it created no substantive basis for an agency—and certainly not a supervisor—to withhold evidence.[5]

In addition, the particular *Touhy* regulations that Respondent relies upon, 28 C.F.R. § 16.21 *et seq.*, do not permit Respondent to unilaterally decide to withhold

---

[5] Petitioners note that counsel for Respondent in this action includes the Assistant Attorney General of DOJ's Criminal Division. *See Staff Profile: Assistant Attorney General*, Department of Justice Criminal Division, https://www.justice.gov/criminal/staff-profile/assistant-attorney-general-tysen-duva (last accessed Mar. 18, 2026). Pursuant to DOJ's *Touhy* regulations, it appears that counsel for Respondent is authorized to furnish Evans's testimony even if any of Section 16.26(b) factors exist. *See* 28 C.F.R. § 16.23(a) (if "any of the factors specified in § 16.26(b) exists," disclosure requires "the express prior approval by the Assistant Attorney General in charge of the division responsible for the case or proceeding . . . .").

relevant evidence in a proceeding where Respondent is a party.[6] Those regulations—promulgated pursuant to 5 U.S.C. § 301, also known as the "Housekeeping Statute,"—are purely procedural and create no substantive rights. In fact, "[f]ederal courts have recognized that neither the Housekeeping Statute nor *Touhy* authorizes a federal agency to withhold documents or testimony from a federal court in litigation in which the United States is a party." *Galarza v. Szalczyk*, No. CIV.A. 10-6815, 2011 WL 1045119, at \*3 (E.D. Pa. Mar. 21, 2011); *see also NLRB v. Capitol Fish Co.*, 294 F.2d 868, 875 (5th Cir. 1961) (Housekeeping Statute "cannot be construed to establish authority in the executive departments to determine whether certain papers and records are privileged."). Moreover, the Supreme Court has recognized the significance of an amendment to the Housekeeping Statute that denied the creation of any substantive right or privilege under the statute or affiliated regulations. *See Chrysler Corp. v. Brown*, 441 U.S. 281, 310 (1979) ("The 1958 amendment to § 301 was the product of congressional concern that agencies were invoking § 301 as a source of authority to withhold information from the public." The amendment "added the last sentence to § 301, which specifically states that this section 'does not authorize withholding information from the public.'").

---

[6] Notably, this case is distinguishable from *Moore v. Armour Pharmaceutical Co.*, 927 F.2d 1194 (11th Cir. 1991) in part because here, the United States is a party to the litigation. In contrast, *Moore* addressed an agency's decision to withhold evidence where the agency was not a party to the litigation. *See id.*

DOJ's position would create an irreconcilable conflict of interest that the *Touhy* framework was never designed to accommodate. When the United States is both the party opposing the motion and the entity deciding whether its own agent may be examined, the *Touhy* process ceases to function as a neutral administrative determination. It becomes a litigation tactic. The Court should view the denial with skepticism precisely because Respondent has a direct adversarial interest in preventing Evans's testimony — not to protect legitimate institutional interests, but to avoid cross-examination on the adequacy of the affidavit that is the subject of the pending motion. *See Bank Line v. United States*, 163 F.2d 133, 138 (2d Cir. 1947) ("It has been the policy of the American as well as of the English courts to treat the government when appearing as a litigant like any private individual. Any other practice would strike at the personal responsibility of governmental agencies which is at the base of our institutions.").

Given these considerations, it is unsurprising that courts have held that *Touhy* does not apply at all in cases where, like here, the government is a party. *See, e,g,* *F.T.C. v. Timeshare Mega Media & Mktg. Grp., Inc.*, No. 10-62000-CIV, 2011 WL 6102676, at *3 (S.D. Fla. Dec. 7, 2011) (Rosenbaum, J.) ("[W]ith near unanimity, courts have concluded that *Touhy* regulations do not apply when the United States is a party to the litigation.") (listing cases) (internal quotation marks and citations omitted); *Res. Invs., Inc. v. United States,* 93 Fed. Cl. 373, 380 (2010) ("[C]ourts

considering the issue have concluded that, when the United States is a party to the litigation, the reach of disclosure-limiting *Touhy* regulations ends at the courthouse doors."); *State of La. v. Sparks*, 978 F.2d 226, 234 (5th Cir. 1992) (*Touhy* regulations apply "when the United States is not a party to a legal action.")

Respondent has made no effort, much less a sufficient showing, that Evans's testimony would not fall under the broad purposes of civil discovery and Rule 45; nor has Respondent identified any independent basis for quashing the subpoena. Accordingly, the Court should deny the motion to quash.

    **B.**    **Respondent's Failure to Comply With *Touhy* Regulations Dooms Its Motion.**

Respondent's motion to quash fails for the additional reason that its categorical refusal to produce any testimony from Evans does not comply with Respondent's own *Touhy* regulations.

First, the Department's regulations create a presumption of disclosure where the United States is a party to the proceeding. 28 C.F.R. § 16.23. The blanket denial of Petitioners' narrowed request inverts that presumption without explanation. The *Touhy* regulations draw a critical distinction between proceedings in which the United States is a party and those in which it is not. Section 16.21 creates a "[g]eneral prohibition" on disclosure in proceedings "in which the United States is not a party." 28 C.F.R. § 16.21. By contrast, Section 16.23(a) provides "[g]eneral disclosure

16

authority" in proceedings "in which the United States is a party." 28 C.F.R. § 16.23(a).

Second, Respondent refused to engage in any negotiation process that the regulations expressly contemplate. Section 16.24(c) provides, "It is Department policy that the responsible official *shall* . . . authorize testimony by a present or former employee of the Department . . . without further authorization from Department officials whenever possible." (emphasis added). Although that Section directs officials to consider whether disclosure is "inconsistent with the considerations specified in § 16.26," officials seeking to limit disclosure shall do so "through negotiation," and then motions "if necessary." *Id.* Respondent has turned this regulation on its head, refusing to confer or engage in any negotiations, and instead issuing a categorical refusal.

Moreover, the Court must exercise its independent judgment about what the regulations require, *i.e.*, the threshold question of Respondent's obligations under the "will authorize" language in Section 16.26(c) is a question of law for the Court. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 413 (2024) ("[W]hen a particular statute delegates authority to an agency consistent with constitutional limits, courts must respect the delegation, while ensuring that the agency acts within it."). Respondent's reading of its own regulations—under which any connection to an ongoing investigation triggers virtually unlimited discretion to withhold

17

testimony, even about a publicly filed document in a proceeding where the United States is a party—effectively reads the mandatory disclosure provisions out of the regulatory scheme. The Court need not accept that reading. Sections 16.23(a) and 16.26(c) establish a presumption of disclosure where the United States is a party and impose a mandatory obligation to authorize testimony where the Section 16.26(b) factors are not present.

Third, Petitioners' amended request specifically disclaimed any interest in privileged information under 28 C.F.R. §§ 16.26(a)(2) and (b)(5), and the testimony Petitioners seek concerns matters already disclosed on the public docket of this case. Thus, Section 16.26(c) compels—rather than prohibits—disclosure here. *See* 28 C.F.R. § 16.26(c) (where requested testimony does "not involv[e] considerations specified in" 28 C.F.R. § 16.26(a)-(b), the Department "*will authorize* the disclosure.") (emphasis added). The Justice Manual provides similar direction: "As a general policy, the Department favors cooperation in state and federal cases in which the testimony of one of its employees is sought," and "[a]uthorization in one form or another is usually granted if appropriate under the rules of procedure governing the case." Justice Manual § 1-6.240.

### C.    Respondent's Categorical Refusal to Provide Any Testimony from Evans Is Arbitrary and Capricious.

Respondent's motion to quash also fails because even if it complied with the regulations, its decision is arbitrary and capricious.[7]

First, DOJ applied the wrong analytical framework. The 16.26(a) factors require the agency to assess whether disclosure is appropriate under applicable procedural and privilege rules—not to make its own determination about whether the requesting party will prevail on the merits. But here, Respondent has done just that and substituted its merits arguments for consideration under Section 16.26. By denying the request on the same purported grounds that Petitioners lack standing, cannot show callous disregard, and cannot meet the *Franks* standard, Respondent infringes on the Court's role in adjudicating those issues. That is not a permissible basis for quashal or a *Touhy* denial—it is an attempt to moot a pending judicial proceeding through an administrative side-door. Moreover, the Justice Manual specifically disclaims any additional privilege or rights under the *Touhy* regulations. *See* Justice Manual § 1-6.100 ("[T]he regulations are not intended to create new privileges or to supersede existing discovery rules."); *id.* § 1-6.400 ("[R]egulations

---

[7] Petitioners maintain that Respondent's motion to quash is properly reviewed under Rule 45, as explained above, rather than the "arbitrary and capricious" standard of review applied to actions brought for review of decisions under the Administrative Procedure Act. *See Watts*, 482 F.3d at 508–10 (holding that SEC's objection to subpoena was properly styled as a Rule 45 motion, rather than a petition for APA review).

neither create new privileges nor supersede discovery obligations that exist under the Federal Rules of Civil Procedure.").

Second, the § 16.26(b)(5) determination is conclusory and fails to engage with the actual scope of the revised demand. The revised request specifically disclaimed any intent to elicit privileged material and limited questioning to the four corners of the affidavit, which is a public document. Respondent offers no explanation of how questioning about statements and omissions in a *publicly filed affidavit* would reveal investigatory techniques or interfere with enforcement proceedings. *See Guevara v. Republica Del Peru*, No. 04-23223-CIV, 2008 WL 11333862, at *2 (S.D. Fla. Aug. 28, 2008) ("[R]efusing to provide the limited testimony requested is arbitrary since the FBI made these public statements and is now refusing to provide testimony regarding those same public statements without a substantiated basis. The undersigned finds the FBI's boilerplate assertion unavailing under these circumstances and without further factual or evidentiary support . . . ."). The denial simply asserts the conclusion that Evans's testimony is entirely disallowed without substantively addressing the revised *Touhy* notice or the substantial public disclosure of related information. That is conclusion without analysis, which is the hallmark of arbitrary action. *See Motor Vehicle Manufacturers Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 30 (1983) (agency decision is

20

arbitrary and capricious where it fails to "examine the relevant data and articulate a satisfactory explanation for its action.").

Third, Respondent's refusal is arbitrary and capricious because it fails to explain the validity of any "ongoing law enforcement investigation" where there is no prosecutable offense at issue. As explained in Petitioners' amended motion, the statute of limitations has already lapsed for the potential offenses in the warrant affidavit. *See* Am. Mot. at 27–29. Although Respondent insists that Evans's testimony would impair an ongoing investigation; *see, e.g.*, Motion to Quash at 11; it cites no authority suggesting that an "ongoing investigation" allows Respondent to avoid producing documents, even where no prosecution is permissible under law. In fact, Respondent demonstrates its arbitrary and capricious position in its response to the statute of limitations issue. *See* Respondent's Opp'n (Doc. 32) at 31 ("So what?"). Because Respondent has not and cannot provide a valid basis for its purportedly ongoing investigation, its refusal to allow testimony related to that investigation is arbitrary and capricious.

**D.     Because Petitioners Are Entitled to a *Franks* Hearing, Respondent Cannot Refuse to Allow Testimony from Special Agent Evans.**

Evans's testimony is necessary for the additional and independent reason that Petitioners are entitled to a *Franks* hearing.  At a *Franks* hearing, the party challenging the affidavit "must have the opportunity for full cross-examination." *United States v. McMurtrey*, 704 F.3d 502, 509 (7th Cir. 2013) (citing *United States*

21

*v. Harris*, 464 F.3d 733, 739 (7th Cir. 2006)) ("The opportunity to cross-examine an officer who has intentionally or recklessly made false statements to procure a search warrant is an important aspect of a *Franks* hearing."). As the Supreme Court emphasized in *Franks*, "it would be an unthinkable imposition upon [the magistrate judge's] authority if a warrant affidavit, revealed after the fact to contain a deliberately or reckless false statement, were to stand beyond impeachment." *Franks*, 438 U.S. at 165.

Petitioners have easily made the preliminary showing necessary for a *Franks* hearing by pointing to the Affidavit's numerous omissions of material fact. Without citing case law, Respondent asserts that "[i]n reviewing for 'callous disregard,' any *Franks* violation would need to be indisputable." Respondent's Opp'n at 24. But no court has ever articulated such a standard. And though Respondent claims that "holding an evidentiary hearing would [ ] turn the *Franks* and 'callous disregard' standard on their heads," a party seeking a *Franks* hearing "face[s] a burden of production only: proof by a preponderance of the evidence is not required until the *Franks* hearing itself." *United States v. Maxwell*, 143 F.4th 844, 854–55 (7th Cir. 2025) (citation omitted).

Moreover, to secure a *Franks* hearing, a party "need not overcome the court's speculation regarding an innocent explanation for the falsity or omission. While reasonable explanations for the omission of the information might well exist, the

22

defendant need not disprove them before the *Franks* hearing itself." *United States v. Glover*, 755 F.3d 811, 820 (7th Cir. 2014). Instead, Petitioners' only obligation is to make a "substantial preliminary showing" that, accounting for the Affidavit's reckless omissions, there was no showing of probable cause. *Madiwale*, 117 F.3d at 1327.  This is a situation where "given the bare bones nature of the probable cause finding from the four corners of the affidavit, the veracity of the affidavit [was] crucial to whether the judge would have found probable cause if presented with accurate and complete facts . . ." *United States v. Hueston*, No. 1:21-CR-37-HAB, 2021 WL 5231734, at *4 (N.D. Ind. Nov. 10, 2021).

Though "neither negligent mistakes nor immaterial omissions implicate *Franks*," *United States v. Goldstein*, 989 F.3d 1178, 1197 (11th Cir. 2021), a party need not show by direct evidence that the affiant makes an omission recklessly. Rather, "when the facts omitted from the affidavit are clearly critical to a finding of probable cause the fact of recklessness may be inferred from proof of the omission itself." *United States v. Martin*, 615 F.2d 318, 329 (5th Cir. 1980); *see United States v. Williams*, 737 F.2d 594, 602 (7th Cir. 1984) ("Because states of mind must be proved circumstantially, a fact finder may infer reckless disregard from circumstances evincing obvious reasons to doubt the veracity of the allegations.").

Here, the Affiant's recklessness may be inferred from his material omissions about the well-documented, innocuous explanations for the occurrences he portrays

23

as potentially nefarious, as well as the biases of those upon whom he relies. Respondent does not dispute that it omitted: the fact that pristine absentee ballots are a typical and benign byproduct of overseas and military voting; the fact that the Secretary of State specifically investigated pristine ballot allegations and found them to be entirely meritless; the fact that a scanner error during the recount (and not some unexplained discovery of late-arriving ballots) prevented Fulton County from reporting vote tallies to the Secretary of State on December 2, 2020; the fact that Kurt Olsen was sanctioned by multiple courts for lies about elections; and the fact that Witness 7, whom the *Atlanta Journal Constitution* has identified as Kevin Moncla, was reportedly referred to the FBI in 2023 for sending threatening emails to members of the SEB and an aide to Secretary of State Brad Raffensperger. Respondent's only answer is that these omissions were each, in isolation, immaterial. In attempting to downplay the significance of these omissions rather than refuting them, Respondent seemingly fails to grasp that probable cause is a totality-of-the-circumstances inquiry, and that the cumulative impact of these omissions fatally undercuts a probable cause determination that was already hanging on by a thread.

Because Petitioners have made a "substantial preliminary showing" that the affidavit recklessly omitted material facts, *Franks*, 438 U.S. at 170, Petitioners "must have the opportunity for full cross-examination," *McMurtrey*, 704 F.3d at 509, including cross-examination of Evans.

## III.    Conclusion

For the foregoing reasons, the Court should deny Respondent's motion to vacate evidentiary hearing and quash subpoena, and Petitioners respectfully request that the Court proceed with setting this matter for an evidentiary hearing at which Evans may be called on March 27, 2026.


Respectfully submitted, this 18th day of March, 2026.

*/s/ Y. Soo Jo*

Y. Soo Jo
Georgia Bar No. 385817
OFFICE OF THE FULTON
COUNTY ATTORNEY
141 Pryor St. SW, Suite 4038
Atlanta, Georgia 30309
Tel.: (404) 612-0246
soo.jo@fultoncountyga.gov

*/s/ Kamal Ghali*

Kamal Ghali
Georgia Bar No. 805055
Michael C. Duffey
Georgia Bar No. 710738
CHAIKEN GHALI LLP
One Atlantic Center
1201 W. Peachtree St. NW, Suite 2300
Atlanta, Georgia 30309
Tel.: (404) 795-5005
kghali@chaikenghali.com
mduffey@chaikenghali.com

*/s/ Abbe David Lowell*

Abbe David Lowell*
John Bolen*
LOWELL & ASSOCIATES, PLLC
1250 H Street NW
Washington, D.C. 20005
Tel.: (202)-964-6110
alowellpublicoutreach@
lowellandassociates.com
jbolen@lowellandassociates.com

*/s/ Stephen Jonas*

Stephen Jonas*
Norman Eisen*
DEMOCRACY DEFENDERS FUND
600 Pennsylvania Avenue SE
Suite 1580, Washington, D.C. 20003
Tel.: (202) 594-9958
steve@democracydefenders.org
norman@democracydefenders.org

25

*Counsel for Petitioners Robert L. Pitts, Chairman, Fulton County Board of Commissioners; Fulton County Board of Registration and Elections, Fulton County, Georgia; and Che Alexander, Clerk of Court*

*\*Admitted pro hac vice*

## CERTIFICATE OF SERVICE

I hereby certify that on this day, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will automatically serve all counsel of record.

This 18th day of March, 2026.

/s/ *Michael C. Duffey*
Michael C. Duffey