# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

|  |  |
|---|---|
| Robert L. Pitts, Chairman, Fulton County Board of Commissioners, Fulton County Board of Registration and Elections, and Fulton County, Georgia, <br><br> *Petitioners*, <br><br> v. <br><br> United States of America, <br><br> *Respondent*. | Case No. 1:26-CV-00809 |

## UNITED STATES OF AMERICA'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO QUASH SUBPOENA

## INTRODUCTION

Under the Eleventh Circuit's binding precedent, this Court must uphold the United States's denial of Petitioners' amended *Touhy* request unless that denial was "so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Miccosukee Tribe of Indians of Fla. v. United States*, 566 F.3d 1257, 1269 (11th Cir. 2009) (describing the arbitrary-and-capricious standard).

Petitioners cannot come close to satisfying that standard. *First*, their Rule 41(g) motion suffers from numerous fatal defects that render improper any further proceedings, and Petitioners cannot cite a single case—ever—that has allowed such a premature *Franks*-style hearing under the guise of Rule 41(g). Petitioners are wrong that this collapses the *Touhy* inquiry into the Court's decision on the Rule 41(g) motion itself. Under the arbitrary-and-capricious standard, even if the Court might disagree with the United States on the merits of Petitioners' Rule 41(g) motion, that still is not enough to overrule the *Touhy* denial. Given the caselaw and logic on its side, the United States's *Touhy* rationale was certainly not "so implausible" that every reasonable party would disagree with it. *Id.* That is all that matters.

*Second*, Petitioners' amended *Touhy* request seeks a federal law enforcement agent's testimony on matters that are privileged as part of an ongoing criminal investigation. Petitioners cannot write themselves out of that quandary by simply

1

disclaiming any interest in privileged matters. The very nature of their inquiry is to ask about why the agent made certain decisions regarding an ongoing investigation. There is no basis to require that privileged testimony, especially pre-indictment. Indeed, *Franks* hearings occur after indictment precisely because such privilege (and separation-of-powers) problems are lessened at that stage. And again, even if the Court disagrees with the United States's assessment of privilege here, that determination was certainly not "so implausible" that every reasonable party would disagree with it. *Id.*

*Third*, under *Touhy*, the United States can consider the cumulative effect of not just this particular request but others that may follow it. The United States would suffer serious harm if the recipients of judicially authorized search warrants promptly filed facially defective Rule 41(g) motions and then insisted on examining the agents currently conducting the ongoing criminal investigation. Allowing Petitioners' request would provide a roadmap for litigants to improperly disrupt and peek into ongoing criminal investigations. FBI agents cannot be drawn away from their important work every time the recipient of a search warrant disagrees with it—which will be quite often. That is exactly the sort of "agency expertise" that is dispositive in any arbitrary-and-capricious analysis. *Id.*

Any one of these numerous bases was sufficient to deny Petitioners' *Touhy* request. Even if the Court might disagree with any of those grounds, none of them (let alone all of them) were arbitrary and capricious.

The United States respects this Court's attempts to facilitate a compromise. In that spirit, the United States is providing Petitioners a digital copy of the records scanned by the FBI, even though Petitioners are clearly not entitled to any relief. But Petitioners' latest salvo confirms that the time has come to put a stop to these unprecedented proceedings once and for all. The Court should quash the subpoena, vacate the evidentiary hearing, and dismiss this case for lack of equitable jurisdiction.

## BACKGROUND

Petitioners first raised *Touhy* in communications between counsel. On February 16, 2026, Petitioners sent counsel for the United States an email reiterating that they sought Special Agent Evans's testimony and asking whether the United States "believe[d] that a formal Touhy request [wa]s required." Pets.' Supp. Br. Ex. B. The following day, the United States answered that a *Touhy* request was required. *Id.* On February 18, 2026, Petitioners sent counsel for the United States a *Touhy* letter indicating that Petitioners sought Special Agent Evans's testimony in order to "understand the investigation" and, among other things, test his statement "that he has not included in the affidavit every detail of

3

the investigations or of parts of the conversations and statements he described in the affidavit." Ex. C. The United States denied the request two days later. Pets.' Supp. Br. Ex. D.

On February 23, 2026, Petitioners sent the United States a revised *Touhy* request demanding the testimony of Special Agent Evans at an evidentiary hearing. Ex. A at 1. Petitioners claimed that Special Agent Evans's testimony was "necessary to resolve disputed issues of material fact with respect to the validity of the search warrant at issue." *Id.* Specifically, they claimed that his testimony was "necessary for the Court to determine the scope of material omissions and erroneous statements, Special Agent Evans's state of mind with respect to those erroneous statements and omissions, and whether the Affidavit establishes probable cause in light of those erroneous statements and omissions." *Id.*

Petitioners also stated that they did "not seek and will not request" any privileged testimony, but they did not elaborate or attempt to reconcile that disclaimer with their preceding statements about the categories of testimony they sought. *See id.* Rather, Petitioners simply imposed an *ipse dixit* exception to try and circumvent the obvious defects with their request.

The next day, the United States issued a detailed decision denying Petitioners' revised *Touhy* request and declining to authorize Special Agent Evans to testify. Ex. B at 3. As the United States explained, any disclosures to Petitioners

4

in this matter are governed by the Department of Justice's *Touhy* regulations. *Id.* at 1 (citing 28 C.F.R. § 16.21-.29). Those regulations require the Department to consider, among other factors, "(1) Whether such disclosure is appropriate under the rules of procedure governing the case or matter in which the demand arose, and (2) Whether such disclosure is appropriate under the relevant substantive law concerning privilege." *Id.* (quoting 28 C.F.R. § 16.26(a)). The regulations also prohibit "reveal[ing] or furnish[ing] any . . . testimony or information when, in the attorney's judgment," any of numerous specified factors exist. *Id.* at 2 (quoting 28 C.F.R. § 16.23(a)). Those factors include when "[d]isclosure would reveal a confidential source or informant, unless the investigative agency and the source or informant have no objection," and when "[d]isclosure would reveal investigatory records compiled for law enforcement purposes, and would interfere with enforcement proceedings or disclose investigative techniques and procedures the effectiveness of which would thereby be impaired." *Id.* (quoting 28 C.F.R. § 16.26(b)).

The United States concluded that all these considerations compelled denial of Petitioners' request. As an initial matter, testimony is not appropriate under the rules governing this case because Petitioners' renewed Rule 41(g) motion is fatally defective as a matter of law for multiple independent reasons (which were incorporated by reference into the revised *Touhy* denial), and Special Agent

Evans's testimony could not change that. Ex. B at 1. Additionally, Petitioners' *Touhy* request "would violate the relevant substantive law regarding privilege." *Id.* at 2. Petitioners' desire to probe "pertinent facts" about any statements in and omissions from the affidavit would necessarily "reveal[] information about the ongoing criminal investigation that is the subject of the affidavit." *Id.* Ultimately, Petitioners appeared to be seeking information that would disclose details of the investigation, the effectiveness of which would be impaired thereby. *See id.* That rendered Petitioners' "*ipse dixit* claim" purporting to respect any applicable privileges "illogical and unpersuasive." *Id.* "Because allowing the requested testimony is unauthorized under precedent and other caselaw, would reveal information compiled for investigative purposes, and would interfere with ongoing law enforcement proceedings," the United States declined to authorize the testimony. *Id.* at 3.

## STANDARD OF REVIEW

The Eleventh Circuit considers an agency's denial of a *Touhy* request to be final agency action that, under the Administrative Procedure Act ("APA"), a "district court could only overturn . . . if such action was 'arbitrary, capricious, an abuse of discretion, or otherwise . . . contrary to law.'" *Moore v. Armour Pharm. Co.*, 927 F.2d 1194, 1197 (11th Cir. 1991). "The party challenging the denial bears the burden of showing that the denial was arbitrary and capricious, and must make a

strong showing that the testimony is necessary." *Brown v. United States Dep't of Veterans Affs.*, No. 17-CV-1181, 2017 WL 3620253, at *5 (N.D. Ala. Aug. 23, 2017) (collecting cases).

The arbitrary and capricious standard, in turn, "is exceedingly deferential." *Miccosukee Tribe*, 566 F.3d at 1264. A court is "not authorized to substitute [its] judgment for the agency's as long as its conclusions are rational." *Id.* Rather, absent a "clear error of judgment," a court will not override a *Touhy* denial. *Westchester Gen. Hosp., Inc. v. Dep't of Health & Human Servs.*, 443 F. App'x 407, 410 (11th Cir. 2011) (quoting *Fund for Animals, Inc. v. Rice*, 85 F.3d 535, 541 (11th Cir. 1996)).

Petitioners devote much of their supplemental brief to a contrary argument—that Rule 45 of the Federal Rules of Civil Procedure, rather than the APA, controls this Court's review of the *Touhy* denial. Pets.' Supp. Br. 11-16. That argument is foreclosed by precedent, which—as noted above—has applied the APA, not Rule 45, to *Touhy* denials. *Moore*, 927 F.2d at 1197. Although "[t]here is currently a circuit split" on the issue, "[i]n the Eleventh Circuit Court of Appeals, the question is not whether federal discovery under Fed. R. Civ. P. . . . 45 would result in a different conclusion than that reached by the federal agency." *Colonial Bancgroup, Inc. v. PricewaterhouseCoopers LLP*, No. 16-cv-653, 2016 WL 5339734, at *2 & n.5 (N.D. Ga. June 15, 2016). Rather, courts "apply[] [the] APA to review of the agency's refusal to authorize testimony." *Id.*

Petitioners claim that the APA does not apply where the United States is a party, and that Rule 45 is therefore the correct standard. But no Eleventh Circuit case supports that claim. And it is impossible to reconcile with the Eleventh Circuit's holding that *Touhy* denials are subject to APA review, rather than Rule 45 review. Petitioners do not think the APA standard should apply in cases where the United States "has a direct adversarial interest," Pets.' Supp. Br. 15, but there is a direct adversarial interest in *every* case involving APA review of agency action, 5 U.S.C. § 702 (providing for "judicial review" of an "agency action"). Accordingly, there is no reason the applicable standard would change depending on whether the United States is a party.

Even if the arbitrary-and-capricious standard did not apply to civil litigation against the United States as a general matter, this action under Rule 41(g) (of the Federal Rules of *Criminal* Procedure) is not an ordinary civil case subject to the ordinary rules of civil procedure. Petitioners did not file a complaint and are not entitled to discovery under Rule 26. *See* Fed. R. Civ. P. 4(b), (c), 26. This is not a case where the United States has been sued under a statutory cause of action and is trying to dodge legitimate discovery anticipated by Congress when it enacted the cause of action. Nor is this a case where the agency "affirmatively acted to inject [itself] into the pending litigation." *FTC v. Timeshare Mega Media and Mktg. Grp.*, No. 10-62000-CIV, 2011 WL 6102676, at *3 n.3 (S.D. Fla. Dec. 7, 2011). Quite

8

the opposite—the United States has repeatedly protested being dragged into this absurd collateral attack on an ongoing criminal investigation.

Even if Rule 45 applied, Petitioners' arguments still fail. Rule 45 lists bases to quash a subpoena, including "undue burden" and "disclosure of privileged or other protected matter." Fed. R. Civ. P. 45(d)(3)(A)(iii), (iv). The Department's *Touhy* regulations reflect the very sort of privilege or protection referenced in Rule 45. 28 C.F.R. §§ 16.23(a), 16.26(a), (b). And the reasons stated in Rule 45 (i) overlap with reasons that courts have considered when performing arbitrary-and-capricious review, and (ii) match the United States's consistent position that Petitioners' request improperly seeks privileged information, and would unduly burden an ongoing criminal investigation, including because there are no genuine disputes of material fact to resolve.

## ARGUMENT

The United States's detailed denial of Petitioners' *Touhy* request was reasonable. It rested on (i) the lack of basis for *any* testimony given the many dispositive problems with Petitioners' motion, *see* Ex. B at 1; (ii) the privileged nature of the overbroad testimony that Petitioners seek, *see id.* at 2; and (iii) the inherent negative effects that allowing such testimony would have on the United States's important work investigating criminal conduct, *see id.*

9

Even if the Court disagrees with any (or even all) of those grounds, that still is insufficient to overrule the *Touhy* denial, which nonetheless rests on reasonable conclusions.

## I.    THE "RULES OF PROCEDURE GOVERNING THE CASE" CONFIRM THAT PETITIONERS' RULE 41(G) MOTION FAILS—AND THUS NO TESTIMONY IS WARRANTED.

The Department of Justice's *Touhy* regulations state that a denial may be based on the "rules of procedure governing the case or matter in which the demand arose." 28 C.F.R. § 16.26(a).

In denying Petitioners' *Touhy* request, the United States stated:

> As explained in the Department's response to Petitioners 'renewed Rule 41(g) motion and the United States's motion to vacate the evidentiary hearing . . . SA Evans's testimony is not appropriate under the rules governing the case. First, Petitioners lack Fourth Amendment rights. Second, there has been no callous disregard of rights, so the district court lacks jurisdiction. Third, even setting aside those defects, Petitioners do not remotely satisfy the governing standard for questioning an agent about an affidavit in a *Franks*-style hearing. Any one of these bases is sufficient to deny your request.

Ex. B at 1. Petitioners assert that analysis is irrelevant because the Department's *Touhy* regulations "require the agency to discuss whether disclosure is appropriate under applicable procedural and privilege rules." Pets.' Supp. Br. 19. But this entire case purports to be brought pursuant to Rule 41(g) of the Federal Rules of Criminal *Procedure*—and thus the nonviability of Petitioners' Rule 41(g) claim is squarely within the Department's regulations. Because Petitioners' Rule 41(g)

10

motion fails as a matter of law, and no procedural principle contemplates irrelevant testimony, the United States correctly reasoned that there is no basis for an evidentiary hearing requiring Special Agent Evans's testimony.

The United States has previously explained the many ways in which Petitioners' Rule 41(g) motion is defective as a matter of law, such that there is no genuine issue of material fact requiring a hearing. The United States will not rehash those arguments at length. But a few big-picture points bear emphasizing.

*First*, Petitioners have the heavy "burden of establishing . . . jurisdiction." *Trump v. United States*, 54 F.4th 689, 697 (11th Cir. 2022). To the extent they have not asserted legal or factual arguments on dispositive points, they cannot carry their burden.

*Second*, the only Petitioner with a possessory interest in the records—the Clerk of the Fulton County Superior Court—has told courts that she does not want the records, and Petitioners have admitted that she would not have retained the records but for court orders requiring her to do so. *See* Doc. # 32 ("US Opp.") 35-36; Doc. # 1-1 at 7. This means there is no "person aggrieved" by the seizure who could seek "return [of] the property." Fed. R. Crim. P. 41(g).

*Third*, that *also* means Petitioners could not possibly carry their burden of establishing irreparable harm. Petitioners offer only vague, circular arguments about wanting to rebut public narratives about the seizure itself. *See* Doc. # 39 at

11

28-29. They thus fail to assert any cognizable irreparable harm as a matter of law, and that failure is dispositive. *See Trump*, 54 F.4th at 698 (equitable factors must "make it clear that judicial oversight is absolutely necessary").

*Fourth*, Petitioners cannot possibly show "the most callous disregard of [their] constitutional rights." *Trump*, 54 F.4th at 698. They do not have such rights in the first place; at a minimum, there is substantial doubt on that question, and the United States cannot have callously disregarded rights that do not clearly exist. *See* U.S. Opp. 14-15; Doc. #44 at 3-5.

Even if those rights did clearly exist, Petitioners could not show callous disregard. The United States submitted an even-handed affidavit and *twice* sought a judicial warrant, which was granted both times. The Magistrate Judge carefully reviewed the materials, as shown by her correspondence with the United States. And the affidavit easily established probable cause. Any claim that this represents a callous disregard of rights is frankly absurd. The United States went through the most onerous of routes to obtain these materials.

*Fifth*, Petitioners' demand for an exceedingly premature *Franks*-style hearing in which Special Agent Evans testifies implicates at least *three* levels of deference to the United States: (i) the "presumption of validity with respect to the affidavit," *Franks v. Delaware*, 438 U.S. 154, 171 (1978); the "callous disregard" standard, *Trump*, 54 F.4th at 698; and the arbitrary-and-capricious standard, *Moore*,

12

927 F.2d at 1197. Yet their demand is entirely unsupported, and they do not address numerous categories of evidence establishing probable cause even under their own theory. *See* Doc. # 44 at 12-14. Petitioners dispute that the callous disregard standard impacts the *Franks* analysis. Pets.' Supp. Br. 22. But that standard is a jurisdictional limitation on this entire proceeding. By its terms, the standard at least ratchets up *Franks*'s requirement that a movant demonstrate a *reckless or intentional* material omission to a requirement that the movant demonstrate a *callous* one.[1] Petitioners' reliance on "innocuous explanations," Pets.' Supp. Br. 23, simply cannot defeat probable cause, *Washington v. Howard*, 25 F.4th 891, 902 (11th Cir. 2022) ("[P]robable cause does not require officers to rule out a suspect's innocent explanation for suspicious facts." (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 61 (2018)).

\* \* \*

Petitioners claim that the United States's reliance on the defects in their Rule 41(g) motion improperly collapses the *Touhy* inquiry into the Court's Rule 41(g)

---

[1] Petitioners' argument that their "only obligation" under *Franks* "is to make a 'substantial preliminary showing' that, accounting for the Affidavit's reckless omissions, there was no showing of probable cause," Pets.' Supp. Br. 23, misstates the law. Materiality is just one of several requirements to justify a *Franks* hearing. *Franks*, 438 U.S. at 171-172. A movant must also make an offer of proof that shows, among other things, that any misstatement or omission was not "negligence or innocent mistake," but rather "deliberate falsity or reckless disregard." *Id.* at 171. Or, in the Rule 41(g) context, callous.

13

inquiry. That is wrong. The Court's inquiry under *Touhy* is whether the United States's proffered rational was "so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Miccosukee Tribe*, 566 F.3d at 1269. In other words, even if the Court disagreed with the United States's view that Petitioners' Rule 41(g) motion is meritless for numerous reasons, that view is still plausible and rational—and thus must be upheld.

## II.    THE "SUBSTANTIVE LAW CONCERNING PRIVILEGE" CONFIRMS PETITIONERS' AMENDED *TOUHY* REQUEST WAS IMPROPER

### A.    Petitioners' Amended Request Sought Investigatory And Law-Enforcement-Privileged Information

The Department's *Touhy* regulations also authorize denial where disclosure would not be "appropriate under the relevant substantive law concerning privilege," 28 C.F.R. § 16.26(a), and the regulations *require* denial where "[d]isclosure would reveal investigatory records compiled for law enforcement purposes," or "would interfere with enforcement proceedings or disclose investigative techniques and procedures the effectiveness of which would thereby be impaired," *id.* § 16.26(b). The *Touhy* denial here invoked all of these bases. Ex. B at 2. That determination was not "so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Miccosukee Tribe*, 566 F.3d at 1269.

The United States's denial must be evaluated in light of the language of the request itself—not Petitioners' post-hoc gloss on their request. *See* Pets.' Supp. Br. 6. After all, arbitrary-and-capricious review (and common sense) require examining "the agency decision based on the record" before the agency at the time it made the decision. *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985). The actual request stated that testimony was "necessary for the Court to determine the scope of material omissions and erroneous statements, Special Agent Evans's state of mind with respect to those erroneous statements and omissions, and whether the Affidavit establishes probable cause in light of those erroneous statements and omissions." Ex. A at 1.

It was not arbitrary and capricious to conclude that Petitioners' request sought investigatory and law-enforcement-privileged information. Start with Petitioners' request for testimony about "the scope of material omissions and erroneous statements." Ex. A at 1. Petitioners were required to specifically identify and establish the scope of any purported material omissions and misstatements, as supported by an offer of proof, to seek a hearing in the first place. *See Franks*, 438 U.S. at 171 ("There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof."). Petitioners cannot use an evidentiary hearing to fish for new supposed misstatements or omissions under the guise of exploring the "scope" of the

15

illusory ones they have asserted. "An affiant cannot be expected to include in an affidavit every piece of information gathered in the course of an investigation." *United States v. Colkley*, 899 F.2d 297, 300 (4th Cir. 1990). Agents often omit information from an affidavit not just because the information is immaterial to a probable cause finding, but also because disclosing it would reveal sensitive investigatory information or strategy. Allowing a probe of any such decisions "potentially opens officers to endless conjecture about investigative leads." *Id.* at 301. That is why a movant must show both "the requisite intent to mislead" and "materiality" as to specifically identified misstatements and omissions to get a hearing. *Id.* Yet Petitioners want to use the hearing itself as a freewheeling inquiry about what information the government has obtained as part of its investigation.

Next, Petitioners' desire to inquire into Special Agent Evans's "state of mind" is equally improper. Ex. A at 1. As noted, Petitioners were required to make an offer of proof showing not only that there has been a material misstatement or omission, but that such material misstatement or omission constituted a "deliberate falsehood . . . or reckless disregard for the truth." *Franks*, 328 U.S. at 171. Indeed, in the Rule 41(g) context, Petitioners needed to make an even stronger offer of proof—showing that any such misstatement or omission reflected callous disregard. *Trump*, 54 F.4th at 697. Petitioners cannot rectify their failure to establish those prerequisites for a hearing through the hearing itself. Regardless, Petitioners

16

do not even limit their proposed "state of mind" inquiry to whether Special Agent Evans acted recklessly, intentionally, or callously with respect to any purported material misstatement or omission. Instead, they seek to explore Special Agent Evans's "state of mind with respect to" the purported misstatements and omissions generally. That framing is manifestly overbroad.

Finally, it does not make sense to require testimony on "whether the Affidavit establishe[d] probable cause" absent any purported material misstatements or omissions. Ex. A at 1. Once again, Petitioners were required (but failed) to show materiality to get a hearing in the first place. *See Franks*, 438 U.S. at 171-172 ("[I]f, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding or probable cause, *no hearing is required*." (emphasis added)). Petitioners' desire for "testimony" about legal issues like materiality reveals their true intent to turn any hearing into a freewheeling sideshow.

These requests are not only legally improper, but would also necessarily require the disclosure of privileged information that would impair an ongoing investigation. Probing unidentified information that Special Agent Evans chose not to include in the affidavit, his mental processes, and (apparently) his views about materiality and probable cause would require him to provide both objective and subjective information about the ongoing investigation. Not even a limited

17

*Franks*-style hearing is proper here, but any *Franks* hearing could occur only after an indictment, when concerns about interfering with an ongoing investigation are generally reduced.

Petitioners argue that the United States's denial on this basis was "conclusory." Pets.' Supp. Br. 20. But the United States's denial letter (which was far lengthier and more detailed than a standard *Touhy* denial) could respond only to what Petitioners said in their *Touhy* request. That vague request and unexplained disclaimer about privileged information left the United States to assert that whatever unclear testimony Petitioners were seeking would be irrelevant, privileged, or both.

Again, under the operative legal standard, even if the Court might disagree with that conclusion, it was certainly not so implausible as to be arbitrary and capricious.

### B.    Petitioners' Post-Hoc Revisions To Their *Touhy* Request Cannot Undermine The United States's Reasoned Denial

Petitioners' supplemental brief includes new detail about the topics on which Petitioners seek testimony. This detail was not before the Department when it denied Petitioners' request—and only confirms the United States's concerns.

If there were previously any doubt that Petitioners are on the hunt for sensitive investigatory information, Petitioners now state that Special Agent Evans must testify about "why a warrant was sought (after applicable statute of

18

limitations had lapsed)." Pets.' Supp. Br. 6; *see also id.* at 21 (arguing statute of limitations render denial of *Touhy* request arbitrary and capricious). That is manifestly irrelevant to any material legal issue in these proceedings. Indeed, even under Petitioners' view, the statute of limitations argument is a legal issue to which Special Agent Evans's views are irrelevant. Doc. # 30 at 27-29; *see also* U.S. Opp. at 31-32 (explaining why limitations arguments are meritless).

Similarly, Petitioners wish to ask Special Agent Evans how he "verified information in the affidavit" and "why he relied on those he interviewed (without identifying their bias or credibility)." Pets.' Br. 6. In other words, they expressly seek details about the investigation that (again) are untethered from any disputed legal issue. Special Agent Evans's additional investigatory findings are both irrelevant and privileged. As noted, Petitioners have not even identified any genuine "bias or credibility" issues. And, once again, a law enforcement officer is not required to testify about "why he made the decisions to omit or characterize information as he did," Pets.' Supp. Br. 6, absent an offer of proof demonstrating that specific omissions or statements were callously and materially misleading. Petitioners' attempt to amend their *Touhy* request (again) in their supplemental brief confirms what the United States has been saying all along.

19

### C.    The United States Complied With The Department's *Touhy* Regulations

After asserting that the Department's *Touhy* regulations are irrelevant, *see* Pets.' Supp. Br. 11-16, Petitioners fault the United States for purportedly "not comply[ing]" with those regulations, *id.* at 16. They are mistaken.

Petitioners point to the fact that Section 16.21 contains a "[g]eneral prohibition" on disclosure when the United States is not a party, and that Section 16.23(a) provides "[g]eneral disclosure authority" in proceedings "in which the United States is a party." Pets.' Supp. Br. 16. But Petitioners never dispute that the United States's *Touhy* denial cited the proper regulations. Rather, Petitioners simply do not like the United States's conclusions, but that does not even arguably amount to defiance of the regulations themselves. And those regulations make clear that the United States can and must deny requests seeking the type of information that Petitioners' amended request did here. As discussed above, the *Touhy* regulations include express prohibitions on disclosure and factors weighing against disclosure that apply here. *See* p. 14, *supra*; 28 C.F.R. §§ 16.23(a), 16.26(a), (b). Even if there were some unwritten presumption in favor of disclosure, that presumption would be subject to the sort of privilege, burden, and materiality concerns that are expressly in the regulations and which the United States has invoked all along.

20

Along the same lines, nothing in the *Touhy* regulations requires the United States to "negotiate" when those concerns compel denial—let alone suggests that a perceived failure to negotiate would be arbitrary and capricious. Pets.' Supp. Br. 17 (citing 28 C.F.R. § 16.24). As an initial matter, the parties went back and forth at length. What Petitioners really mean is that they are disappointed the United States did not fall for Petitioners' facile attempt to carve out privileged material from their request. But that does not amount to a failure to negotiate. The answer here was clear. Petitioners just do not like the answer.

And again, there is no obligation to negotiate in the first place. Petitioners rely on a regulation that applies only when "a matter is referred . . . under § 16.23 of this part, to an Assistant Attorney General, the Director of the EOUSA, or their designees." 28 C.F.R. § 16.24(a). That is not the case here, so the provision is inapposite. In any event, the same regulation makes clear that such an "official . . . *may* authorize the appearance and testimony" of a Department employee only if such disclosure "is appropriate under the factors specified in § 16.26(a)" and "[n]one of the factors specified in § 16.26(b) exist." 28 C.F.R. § 16.24(b)(2)-(3). Only if the official finds those requirements satisfied and authorizes testimony should the official "seek to limit the demand" through negotiation and motions practice.

21

*Id.* § 16.24(c).[2] Because here the Department determined that no authorization was proper in the first place, there was nothing to negotiate about. Nor would it be workable if parties were permitted to sue to force the Department to negotiate about proposed testimony.

Finally, as explained above, Petitioners' unexplained disclaimer that they were not seeking privileged information—belied by the substance of their request and the arguments in their supplemental brief—does not require disclosure under the *Touhy* regulations. *See* Pets.' Supp. Br. 18. In laying out the factors that the United States must consider, the regulations do not require the United States to accept a *Touhy* requester's own conclusory (mis)characterization of the testimony it seeks.

## III.   THE CUMULATIVE EFFECT OF REQUESTS LIKE PETITIONERS' WOULD BE EXCEEDINGLY DAMAGING TO THE DEPARTMENT

In the context of *Touhy* requests, the United States is entitled to consider "the cumulative impact of allowing [Petitioners'] request," *i.e.*, how approving such requests would impact its prosecutorial and investigative functions generally.

---

[2] Similarly, if the official decides to authorize testimony, the official is generally instructed to do so "without further authorization from Department officials wherever possible." 28 C.F.R. § 16.24(c). Obviously, that instruction does not require officials to authorize *all* requested testimony without such further authorization as a general matter. *Contra* Pets.' Supp. Br. 17.

*Moore*, 927 F.2d at 1198. That also strongly weighs in favor of upholding the denial here.

The United States reasonably determined that Petitioners' request was an "improper attempt[] to gain information about the ongoing criminal investigation" and that this would cause cascading negative effects because these sorts of *Franks*-style hearings should occur (if at all) after an indictment, when there is little concern about affecting ongoing criminal investigations. Ex. B at 2. That sort of "agency expertise" is dispositive in any arbitrary-and-capricious analysis. *Miccosukee Tribe*, 566 F.3d at 1269.

"[A]n onslaught of subpoenas served on the [DOJ] requesting testimony by [law enforcement officers] . . . would seem to be inevitable if [Special Agent Evans] was compelled to testify without agent authorization." *Moore*, 927 F.2d at 1198. Virtually everyone who receives a search warrant could start demanding premature *Franks*-style hearings, then arguing that *Touhy* regulations and arbitrary-capricious review do not apply, then demanding to examine law enforcement agents while hoping to learn about an investigation and slow the government down. If Petitioners are able to pull off such a trick even after a magistrate judge (twice) issued a warrant after reviewing an even-handed affidavit, there will be no case where such an argument cannot be made—and thus

23

no case where attorneys could not seek to put the agent on the stand at the very beginning of an ongoing criminal investigation.

Petitioners' desire to probe Special Agent Evans's thoughts about an ongoing criminal investigation "simply cannot compare to the government's interest in maximizing the use of its limited resources" in conducting—and protecting the integrity of—that investigation and criminal investigations more generally. *Moore*, 927 F.2d at 1197-98.

Petitioners may claim this case is different because it is high profile. But the Eleventh Circuit has squarely held that the same rules apply "no matter who the government is investigating." *Trump*, 54 F.4th at 701.

## IV.   PETITIONERS CANNOT PARLAY THE PARTIAL UNSEALING OF THE AFFIDAVIT INTO LIVE TESTIMONY

Petitioners' brief contains one final conjuring trick, attempting to parlay the partial unsealing of the search-warrant affidavit into live testimony from the agent who signed it. Pets.' Supp. Br. 7; *see also id.* at 1 (arguing that the affidavit is "in the public domain"). This also fails.

*First*, there are potential First Amendment and common law right of access concerns with sealing matters that are already on a court's docket. *See* Doc. # 7-2 at 6 (media companies' memo in support of motion to intervene and unseal affidavit based on "[b]oth the First Amendment and the common law"); Doc. # 38 (United States opposition to Justin Glawe's motion to intervene explaining limits

24

on right of access). There is no First Amendment or other right to question Special Agent Evans, however. Accordingly, a lack of objection to partially unsealing an affidavit that was already on the docket in this case is not—and cannot be—some concession or acknowledgment by the United States that the underlying subject of that affidavit is now fair game for an evidentiary hearing. Adopting Petitioners' position would perversely incentivize the United States to oppose any and all attempts to unseal even existing case filings.

*Second*, Petitioners repeatedly characterize the affidavit as "testimony" to suggest that Special Agent Evans has already testified in these proceedings and thus Petitioners should have an opportunity to "question" him. Pets.' Supp. Br. 1-2; *see also id.* at 11 (referring to hearing as needed for "complete testimony"). This counterintuitive use of the word "testimony" flies in the face of well-settled principles of criminal procedure. Specifically, it flips the "presumption of validity with respect to the affidavit supporting the search warrant," and the corresponding stringent showing necessary to obtain a *Franks*-style hearing, on their heads. *Franks*, 438 U.S. at 171. Petitioners' position implies that a law enforcement agent who submits a sworn affidavit to a magistrate judge should *always* have to testify about the investigation underlying a search warrant in a

25

collateral proceeding. One thing is clear about Petitioners' filings: they certainly do not hide their desire for an intrusive hearing.[3]

Finally, Petitioners falsely accuse counsel for the United States of "shifting position[s] on Evans's testimony." Pets.' Supp. Br. 7. As an initial matter, the decision before the court is the detailed, written denial of Petitioners' *Touhy* request, not emails between counsel. In any event, Petitioners' own exhibits demonstrate that the United States expressly and repeatedly stated that it would need to make a final determination about Special Agent Evans's testimony. *See* Pets.' Supp. Br. Exs. A, B, C. The United States did so—in extraordinarily prompt fashion, given that most *Touhy* decisions take weeks or months. Petitioners don't like the answer they received, but it is a sign of desperation that they feel the need to mischaracterize events that are in black and white, attached to their own brief.

---

[3] Similarly, Petitioners appear to believe that the text of Rule 41(g) mandates an evidentiary hearing in every instance. Pets.' Supp. Br. 5-6. But Rule 41(g) does not require any hearing, let alone a federal law enforcement agent's testimony about an ongoing investigation, on Petitioners' say so. To the contrary, Rule 41(g) requires only that the Court "receive evidence"—and only as to "any factual issue necessary to decide the motion." Fed. R. Civ. P. 41(g). Where the parties have had "the opportunity to submit evidence" and "the material facts [a]re not in dispute," a court is "not required to hold an evidentiary hearing." *United States v. Foster*, 635 F. App'x 818, 823 (11th Cir. 2015).

## CONCLUSION

The United States's denial of Petitioners' *Touhy* request was not arbitrary and capricious. The Court should quash Petitioners' subpoena for the testimony of Special Agent Evans, vacate the hearing set in this case, and dismiss this case for lack of jurisdiction.

Respectfully submitted,

STANLEY E. WOODWARD, JR.
*Associate Attorney General*

/s/ THOMAS C. ALBUS
THOMAS C. ALBUS
*Special Attorney to the Attorney General
and United States Attorney for the
Eastern District of Missouri*
Missouri Bar No. 46224
Thomas Eagleton U.S. Courthouse
111 S. 10th Street, 20th Floor
St. Louis, MO 63102
(314) 539-2200

A. TYSEN DUVA
*Assistant Attorney General – Criminal
Division*

R. TRENT MCCOTTER
*Associate Deputy Attorney General*

MICHAEL WEISBUCH
*Senior Counsel to the Associate Attorney
General*

PETER L. COOCH
*Trial Attorney/Senior Counsel, Criminal
Division*

## Certificate of Compliance

I hereby certify, pursuant to Local Rules 5.1 and 7.1D, that the foregoing brief has been prepared using Book Antiqua, 13 point font.

/s/ THOMAS C. ALBUS
THOMAS C. ALBUS
*Special Attorney to the Attorney General and United States Attorney for the Eastern District of Missouri*

28