**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

ROBERT L. "ROBB" PITTS, CHAIRMAN,
FULTON COUNTY BOARD OF
COMMISSIONERS; FULTON COUNTY
BOARD OF REGISTRATION AND
ELECTIONS; FULTON COUNTY,
GEORGIA; AND CHE' ALEXANDER
CLERK OF SUPERIOR COURT,
         Petitioners,

v.

UNITED STATES OF AMERICA,
         Respondent

Civil Action No.

1:26-cv-00809-JPB

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

MAR 25 2026

KEVIN P. WEIMER, Clerk
By: _____ Deputy Clerk

## **COMPLAINANTS MOTION FOR LEAVE TO FILE AMICUS CURIAE BRIEF**

Rochelle M. Cabirac *
Election Oversight Group
911 Wilkinson Street
Shreveport, LA 71104
rcabirac@gmail.com
469-207-5563

Melissa White *
Election Oversight Group
18838 Stone Oak PKWY
Suite 106
mwhite8106@aol.com
210-441-8989

Kevin M. Moncla *
Election Oversight Group
911 Wilkinson Street
Shreveport, LA 71104
kmoncla@gmail.com
469-588-7778

Joseph Rossi *
2007 Cedar Ridge Dr.
Perry, GA 31069
jrossiops@gmail.com
478-955-0977

*pro se*

The independent complainants listed in Appendix A (collectively, "Amici") respectfully move this Court for leave to file an amicus curiae brief in support of Respondents. This motion is supported by the accompanying brief. The proposed amicus brief is attached hereto.

Amici conferred with counsel for the United States and they do not object to this motion.

DATED: March 25, 2026

Rochelle M. Cabirac *
Election Oversight Group
911 Wilkinson Street
Shreveport, LA 71104
rcabirac@gmail.com
469-207-5563

Melissa White *
Election Oversight Group
18838 Stone Oak PKWY
Suite 106
mwhite8106@aol.com
210-441-8989

Kevin M. Moncla *
Election Oversight Group
911 Wilkinson Street
Shreveport, LA 71104
kmoncla@gmail.com
469-588-7778

Joseph Rossi *
2007 Cedar Ridge Dr.
Perry, GA 31069
jrossiops@gmail.com
478-955-0977

* *pro se*

**Appendix A**

**LIST OF AMICI**

Ms. Rochelle M. Cabirac

Mr. Kevin M. Moncla

Mr. Joseph Rossi

Ms. Melissa White

## CERTIFICATE OF SERVICE

I certify that on this date a true copy of the foregoing document was filed with the Clerk of Court via hand delivery and email on counsel for Petitioners and Respondent.

This 25th day of March, 2026.


Rochelle M. Cabirac *


Melissa White *


Kevin M. Moncla *


Joseph Rossi *

*pro se*

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF
GEORGIA ATLANTA DIVISION**

| | |
|---|---|
| ROBERT L. "ROBB" PITTS, CHAIRMAN, FULTON COUNTY BOARD OF COMMISSIONERS; FULTON COUNTY BOARD OF REGISTRATION AND ELECTIONS; and FULTON COUNTY, GEORGIA, <br><br> Petitioners, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Respondent. | Civil Action No. **1**:26-cv-809-JPB |

## ORDER

Upon consideration of the Motion for Leave to File Amicus Curiae Brief in Support of Respondent by the independent complainants and finding that the proposed brief contributes to the Court's understanding and relevant to the disposition of this case:

IT IS HEREBY ORDERED that the Motion for Leave is **GRANTED**. The Clerk is directed to accept for filing the amicus curiae brief attached to the motion.

This ___ day of _____, 2026.

Hon. J.P. Boulee
United States District Judge

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

ROBERT L. "ROBB" PITTS, CHAIRMAN,
FULTON COUNTY BOARD OF
COMMISSIONERS; FULTON COUNTY
BOARD OF REGISTRATION AND
ELECTIONS; FULTON COUNTY,
GEORGIA; AND CHE' ALEXANDER
CLERK OF SUPERIOR COURT,
       Petitioners,

v.

UNITED STATES OF AMERICA,
       Respondent

Civil Action No.

1:26-cv-00809-JPB

## BRIEF OF INDEPENDENT COMPLAINANTS IN SUPPORT OF MOTION
## FOR LEAVE TO FILE BRIEF OF AMICUS CURIAE

Pursuant to Federal Rules of Civil Procedure, prospective Amici, Rochelle Cabirac, Kevin Moncla, Joseph Rossi, and Melissa White, ("Movants"), are private citizens and researchers who have conducted extensive, good-faith investigation and analysis of Fulton County's 2020 election records. Movants have filed several serious, meticulously documented and official complaints with the Georgia State Election Board ("SEB") and whose findings are directly at issue in the search warrant affidavit and Petitioners' Amended Motion for Return of Property (Doc. 30).

1

We respectfully move this Court for leave to file a Brief of Amici Curiae in this action. In support thereof, Movants state as follows:

## 1. TIMELINESS

This motion is timely considering the circumstances and the current status of the case. Petitioners filed their original emergency motion on or about February 5, 2026, and the Amended Motion (Doc. 30) on February 17, 2026. The affidavit supporting the underlying search warrant was unsealed, the parties subsequently filed briefs, and the court ordered mediation which was reported to be unsuccessful. The court has now denied the United States motion to vacate the evidentiary hearing and scheduled a hearing for Friday, March 27, 2026. No dispositive rulings have been issued on the merits of the 41(g) motion, and Movants' Brief will timely inform the court.

## 2. INTEREST RELATING TO THE SUBJECT OF THE ACTION

Movants' detailed research, data compilations, and complaints to the Georgia State Election Board (including SEB2021-181; SEB2023-025 and related filings) informed portions of the probable-cause affidavit. By virtue of their investigations and analyses of the 2020 election in Fulton County, Movants can be helpful to the Court's analysis of the pending Rule 41(g) motion. Petitioners have now placed the assertions of those complaints at the center of this litigation by (a) labeling them "debunked;" (b) mischaracterizing their methodology and conclusions; (c)

2

impugning Movants; credibility with extraneous and incomplete references; and (d) proffering false statements of fact and law. These statements, if left unchallenged, will permanently distort the public and judicial record concerning the integrity of the complaints and investigation of the 2020 Fulton County election materials now in federal custody.

### 3. IMPAIRMENT IF THE COURT'S DECISION IS BASED ON AN INCOMPLETE AND MATERIALLY FALSE RECORD

The Court's truth-seeking function will be substantially assisted by consideration of the facts and authorities included in the attached brief which demonstrate that much of what Petitioners have represented to the Court is simply not true. The importance of truth to the cause of justice needs no elaboration.

### 4. INADEQUATE REPRESENTATION BY EXISTING PARTIES

The existing parties have not and cannot adequately represent Movant's interests. Petitioners are adverse to the warrant and actively seek to discredit the very basis for it by directly attacking certain of the Movants. Respondent (the United States) supports the seizure but is not obligated to defend the specific accuracy of Movants' independent research or to correct misstatements about it. The Special Agent of the FBI, Hugh Evans, who submitted the probable cause affidavit is presumably restricted from discussing details of an ongoing investigation leaving

3

the Petitioners' assertions about details of the evidence to go unanswered.    No current party shares Movants' unique perspective or evidentiary record.

### 5. SUPPLEMENTING THE RECORD IS WARRANTED

For the foregoing reasons, the Court should grant leave for Movants to file a Brief of Amici Curiae. Accepting the Movants' amicus brief will not unduly delay or prejudice the original parties and will assist the Court by providing a complete, adversarial record.

Accordingly, Movants respectfully request leave to file an Amicus Curiae brief to correct and supplement the record. The proposed brief, a copy of which is attached hereto, complies with the requirements set forth in Local Rule 5.1 and Local Rule 7.1. Movants are authorized to state that the Respondent does not object to this motion.

Respectfully submitted, this 25th day of March, 2026

_____
Rochelle M. Cabirac *

_____
Melissa White *

_____
Kevin M. Moncla *

_____
Joseph Rossi *

*pro se

4

**Appendix A**

**LIST OF AMICI**

Ms. Rochelle M. Cabirac

Mr. Kevin M. Moncla

Mr. Joseph Rossi

Ms. Melissa White

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| ROBERT L. "ROBB" PITTS, CHAIRMAN, FULTON COUNTY BOARD OF COMMISSIONERS; FULTON COUNTY BOARD OF REGISTRATION AND ELECTIONS; FULTON COUNTY, GEORGIA; AND CHE' ALEXANDER CLERK OF SUPERIOR COURT, Petitioners, <br><br> v. <br><br> UNITED STATES OF AMERICA, Respondent | Civil Action No. <br><br> 1:26-cv-00809-JPB |

## BRIEF OF AMICI CURIAE IN SUPPORT OF THE PROBABLE CAUSE AFFIDAVIT AND IN OPPOSITION TO THE AMENDED PETITION

Rochelle M. Cabirac *
Election Oversight Group
911 Wilkinson Street
Shreveport, LA 71104
rcabirac@gmail.com
469-207-5563

Melissa White *
Election Oversight Group
18838 Stone Oak PKWY
Suite 106
mwhite8106@aol.com
210-441-8989

Kevin M. Moncla *
Election Oversight Group
911 Wilkinson Street
Shreveport, LA 71104
kmoncla@gmail.com
469-588-7778

Joseph Rossi *
2007 Cedar Ridge Dr.
Perry, GA 31069
jrossiops@gmail.com
478-955-0977

*pro se

## INTERESTS OF THE AMICI

This is the third lawsuit filed by or on behalf of the Fulton County Board of Registration and Elections ("FCBRE" or "Board") concerning complaint SEB 2023-025. Each such action has been initiated without the only lawful prerequisite for a Board lawsuit: a vote of the Board members at a properly noticed public meeting.[1]

Like all citizens, we have a right to seek redress of our grievances. We also have an interest in preventing the court from being misled by untruthful information. In this instance, we are forced to correct material mischaracterizations and false assertions offered in support of the Rule 41(g) motion by the Petitioners and their subject matter expert, Ryan Macias, who participated in, and is witness to, many of the very actions under investigation.[2] In addition, a group of amici calling itself "Former Justice Department Officials" (hereinafter "Former Officials") have filed an amicus brief that adopts the misrepresentations of the Petitioners. (Doc. 50).

---

[1] *See* a true and correct copy of the complaint filed with the Georgia Attorney General: https://www.scribd.com/document/1016295142/GA-AG-Misrepresentation-to-Federal-Court-Attachments (last visited Mar. 23, 2026)

[2] The original SEB2023-025 complaint observed that Mr. Macias was apparently in charge of the Fulton County recount without authorizations, noting: "Ryan Macias was not a Fulton County employee … nor Fulton County Vendor. Mr. Macias was working in Fulton County on behalf of The Elections Group, whose services were provided in association with the Center for Tech and Civic Life (CTCL) grants." CTCL was funded in the 2020 election by $325 million from Mark Zuckerberg and his wife, Patrica Chen. *See* Which States Did CTCL Flood with "Zuck Bucks"? - Capital Research Center, available at www.capitalresearch.org/article/which-states-did-ctcl-flood-with-zuck-bucks (last accessed Mar. 23, 2026) (noting that CTCL spent $4.20 per Georgia voter to influence the outcome of the 2020 election).. As the subject of the complaints at issue, Mr. Macias has an obvious conflict in his presentations to this court.

The material statements of fact and law presented to this court have not been accurate and must be corrected. The present action challenges the PC Affidavit authored by FBI Special Agent Hugh Evans ("SA Evans") and the investigative work underlying the amici's SEB complaints. The amici have encountered repeated obstacles in the prosecution of their complaints, including material misrepresentations by investigators and counsel for the Secretary of State. Those misrepresentations now form the primary basis for Petitioners' challenge to the PC Affidavit, the integrity of SA Evans, and the work of the amici.

The undersigned have produced a comprehensive report of the investigation of Fulton County's 2020 Elections which was provided to the FBI (hereinafter "Exhibit A" or "EOG Report"). We stand for our work, and the report can be found at the links in the footnote below:[3] The amici file this brief both to vindicate their work and to ensure the Court is not misled by inaccurate statements of fact or law.

## ARGUMENT SUMMARY

Petitioners contend that the PC Affidavit contains material omissions of exculpatory information and that the Secretary of State ("SOS") investigation reports and testimony of the SOS's General Counsel ("SOS's GC"), on which they rely,

---

[3] Complainant's EOG Report can be found here:
https://www.scribd.com/document/989542479/Report-of-Investigation-Fulton-2020; or downloaded from Google Drive here:
https://drive.google.com/drive/folders/1V3Qcb-JiBMaV-e-Vub7RSWKdOx-4a78A

2

contradict the PC Affidavit. Petitioners' position rests on reports that are not dispositive. The Georgia legislature has vested the SEB—not the SOS—with primary authority to investigate election frauds and irregularities. *See* O.C.G.A. § 21-2-31(5). The SEB voted to continue its investigation of SEB2023-025, and on July 30, 2025 passed a resolution seeking assistance of the DOJ.[4] The resolution states in part:

> WHEREAS the Board has heard complaints of potential violations of both Georgia and federal election law over the last few years and the investigations of some complaints, including SEB2023-025, are still incomplete with respect to basic documents required by law to be maintained.

The investigation remains open. The reports cited by Petitioners are preliminary and upon examination are not credible. Below the amici respond to each specific challenge raised by Petitioners.

## ARGUMENT

### I.   THE PRESERVATION OF BALLOT IMAGES WAS REQUIRED BY LAW

Fulton County failed to preserve approximately 375,000 ballot images for all of in-person voting for the 2020 General Election, and 17,852 ballot images from the Recount were also destroyed.

**Petitioner's Argument**

Petitioners contend that Georgia law did not require the preservation of ballot

---

[4] *See* the July 30, 2025 SEB Resolution attached hereto as "Exhibit B".

images for the 2020 General Election and further allege that the Affiant failed to disclose this purported "fact". (Dkt. 30-0, at 13)

**Factual Response**

Petitioners' claim is verifiably false and offers no citation at all to any supporting authority. The challenge relies upon an SOS investigator's report and the false claims of the SOS's GC as described in the Macias Declaration. (*See* Dkt. 30-1 at 7.) The Former Officials echo the same claim and solely rely upon the declaration of a non-lawyer, but not governing statutes and regulations, to allege that a Special Agent of the FBI committed wrongdoing. (*See* Dkt. 47-2 at 13.)

State Election Board Rule 183-1-12-.13 was adopted January 23, 2020 and effective February 12, 2020, which expressly required the preservation of ballot images for the 2020 election cycle.[5] SEB Vice Chair, Dr. Janice Johnston, read and applied this rule on the record during the May 7, 2024 SEB meeting. (*See* Exhibit C, transcript of Dr. Johnston's statement) The Petitioners' expert, Ryan Macias ("Macias Declaration") cites the transcript of this SEB meeting for the statements of Ms. McGowan and the SoS investigator but omits any mention of Dr. Johnston's reading the regulation in rebuttal at the same hearing.[6]

Moreover, on April 2, 2021, Charlene McGowan, filed an Amicus brief in

---

[5] *See* Georgia Rules and Regulations, Administrative Bulletin for January 2020, p. 54 which can be found here: GA R&R - GAC - Rule 183-1-12-.13. Storage of Returns

[6] See the May 7, 2024 SEB meeting transcript attached hereto as "Exhibit C"

*Favorito v. Wan* expressly acknowledging the statutory preservation requirement and argued the same as a basis for denying plaintiff's relief:[7]

> Ballots are then scanned through optical voting scanners … Once scanned, an electronic ballot image is created and stored on a memory card ("ballot images"). Following the election, county officials must deliver all ballots and ballot images "in sealed containers to the clerk of the superior court," and those ballots and ballot images are to be held by the clerk under seal for a period of 24 months. O.C.G.A. § 21-2-500(a).

> The Secretary respectfully requests that the Court permit Petitioners to inspect **ballot images** only, and deny Petitioners' request to inspect and scan ballots. (emphasis added)

The same brief cited *Smith v. DeKalb County*, 288 Ga. App. 574 (2007), which affirms the obligation to preserve ballot images when using optical-scan equipment has been in effect for some twenty years. (*See Smith*, at n.3 and n.4.)

Thus, at the SEB meeting **on May 7, 2024 in which she testified that ballot images were not required to be preserved, Ms. McGowan was on the record in** *Favorito v. Wan* **saying they were.** As she argued in that 2021 brief, Georgia law (statute and rule) required the preservation of ballot images, and both were in effect for the 2020 General Election. Her assertions to the contrary on May 7, 2024 to the SEB were simply and knowingly- **not true**. Accordingly, the allegation that FBI Special Agent Evans failed to inform the magistrate judge that ballot images were not required to be preserved for 2020 must be rejected, because it is verifiably false.

---

[7] *See* the referenced Amicus brief by the SOS in *Favorito v. Wan* attached hereto as "Exhibit D"

## II.    DESTRUCTION OF BALLOT IMAGES IS A VIOLATION OF FEDERAL LAW

Destruction of 2020 Election Records, continued.

**Petitioners' Argument**

Petitioners contend that ballot images are not "records relating to an act requisite to voting" under 52 U.S.C. § 20701 and therefore are not protected federal election records. Similarly, the Former Officials advance identical arguments citing the Macias Declaration.  The Macias Declaration challenges the PC Affidavit by stating "[the Affidavit] ignores the important testimony of Charlene McGowan, general counsel to Georgia's Secretary of State, during the May 7, 2024, hearing that ballot images play no role in the tabulation of election results." (Dkt. 30-1 at 11.)

**Factual Response**

Dominion's manual explains that the system images the paper ballot, and then software analyzes the ***ballot image*** to determine the voter's selections (*See* Dominion's responses to Georgia's Request for Information ("RFI"), and the corresponding page from Dominion's manual attached hereto as "Exhibit E" at 1):

> When a hand-marked ballot is scanned by an ImageCast tabulator—whether at the precinct or centrally— **a complete duplex image** is created and **subsequently** analyzed for tabulation by evaluating the pixel count of the voter's mark. (emphasis added);

The documentation establishes that first an image is created which is *subsequently* analyzed by the software to determine the voter's selections through pixel-count evaluation of the voter's mark. Only the digital image contains pixels;

6

the paper ballot itself does not. Without ballot images, Georgia's voting system cannot record, cast, or tabulate votes. Accordingly, ballot images are indeed records "relating to an act requisite to voting" within the meaning of federal law. The PC Affidavit correctly identified the destruction of ballot images as a violation of 52 U.S.C. § 20701 and did not "fail" to include statements from the SOS's GC, because they were false, and therefore were not exculpatory.

### III.   THOUSANDS OF BALLOTS WERE INTENTIONALLY DOUBLE-SCANNED AND DOUBLE-COUNTED

For the Recount, 3,930 ballots were intentionally double-scanned and were in fact double counted and included in the official certified results.

**Petitioner's Argument**

Petitioners assert that *if* any double scanning occurred, it was unintentional and that the PC Affidavit omitted exculpatory testimony suggesting the duplicate scans were not counted in the final totals.

**Factual Response**

The cast-vote records (CVR) for the Recount contain and include the recorded votes for 3,930 duplicate ballot images, yielding 7,860 votes counted for President. The CVR totals precisely match the official certified totals, confirming the inclusion of votes from the duplicate ballot images. The undersigned provided the SEB with side-by-side comparisons of each original and duplicate ballot image file, together

7

with the corresponding CVR entries.[8] This finding is corroborated by declarations from two independent experts filed in *Curling v. Raffensperger* based on data produced under court order. Professor Duncan Buell confirmed that the identical ballot images "were actually counted in the tabulation multiple times."[9] Berkeley Professor Philip Stark also verified that the duplicate images were included in the CVR:[10] The undersigned submitted evidence establishing that the double counting of ballots was deliberate and intentional. Each instance constitutes a separate felony under both state and federal law. Furthermore, no statutory provision of the criminal code requires fraud to be outcome-determinative. The record verifiably and irrefutably supports the PC Affidavit's recitation of 3,930 instances of double-counting.

## IV.   FULTON COUNTY DID IN FACT FINISH THE RECOUNT ON DECEMBER SECOND BEFORE HAVING TO "RECONCILE"

Complaint SEB2023-025 included the allegation that Fulton County's results for the Recount were initially 17,243 ballots short of the November 3rd results. On December 3rd at 12:13 p.m. Richard Barron sent an email to Ryan Macias with an attached report showing the Recount results of 511,543 total ballots cast. Somehow over the twenty-four (24) hours that followed, nearly all of the shortfall was found.

---

[8] *See* Count 17 of the EOG Report (Exhibit A) at 193, which can be found here: https://www.scribd.com/document/989542479/Report-of-Investigation-Fulton-2020
[9] A true and correct copy of the declaration of Professor Duncan Buell can be found here: https://www.scribd.com/document/671203484/20220111-Buell-Expert-Report-Final-Served
[10] *See Curling v. Raffensperger*, Case No. 1:17-cv-2989-AT, Dkt. 1569-42 at 24

8

## Petitioners' Argument

The petitioners state "[t]he Affidavit puts forth a flagrantly misleading narrative of the timing of the Recount in Fulton County, falsely implying that the County manipulated its ballot count by uploading votes that arrived out of thin air…" (*See* Dkt. 30-0 at 23.) Petitioners claim that the county was not done, and that the number was the running total as of the deadline, "[a] date on which it was understood that thousands of ballots had not yet been counted" (Dkt. 30-0 at 23-24). They say that "the Affiant inexplicably omitted an exonerating section of the Secretary of State's report." (*See* Dkt. 30-1 at 28–30.)

## Factual Response

The "omitted" SOS investigator's report and statements of the SOS's GC are not "exculpatory" because they are not true. At 11:52 p.m. on December 2, 2020, Fulton County publicly posted on social media that the recount was complete.[11] The following day, Elections Director Richard Barron emailed Ryan Macias a report showing 511,543 total ballots cast, 17,234 short of the November 3rd total. Interestingly, Mr. Macias references the SOS's investigation report instead of the Batches Loaded Report sent to him by Richard Barron. The Petitioners, nor their Amici, nor Mr. Macias himself disclosed that he was the recipient of the email fromElections Director, Richard Barron with the Recount total of 511,543 ballots

---

[11] A screenshot of the referenced tweet is attached hereto as "Exhibit G"

9

cast.[12]

It was not SA Evans or these amici that made the claim that Fulton County had completed the Recount on December 2nd, it was Fulton County itself. But there is more than just an email and a tweet. There is the December 4, 2020 meeting of the Fulton County Board of Registration and Elections, at which Mr. Barron states the recount was finished on Wednesday December 2nd:[13]

> Now, with regard to the recount, we concluded that on Wednesday night. We submitted our results and then yesterday, the state allowed us to do reconciliation.

December 2nd was a Wednesday. The Board certified the Recount results on Friday, December 4th (not the 7th as Macias states). According to Director Barron, the county uploaded results it believed were final on the night of December 2 (or officially very early on December 3). Only afterward was Fulton County directed to "reconcile." The sequence of events is corroborated by Fulton County's own contemporaneous public statements and Board-meeting testimony. Therefore, the PC Affidavit accurately described these facts. The record, including the verifiable and publicly available statements of Fulton County's Elections Director, robustly supports the assertions made in the probable cause affidavit by SA Evans. Petitioners' allegations must be rejected. The Petitioners and especially their expert

---

[12] An image of the referenced email is attached hereto as "Exhibit F"

[13] See the video of the December 4, 2020 Fulton County Board of Registration and Elections meeting at the corresponding time here: https://youtu.be/Jl3BQuIWFvU?t=869

10

Mr. Macias omitted material facts belying their claims and corroborating those of SA Evans. All of these underlying facts were laid out in detail in SEB2023-025

## V.    TABULATOR TAPES ARE STATUTORILY DEFINED AND REQUIRED BY LAW

138-precinct tabulator closing tapes (10 remain outstanding) for early in-person voting, representing over 315,000 ballots, are unsigned, unwitnessed, and uncertified. The "official returns" were produced on surrogate tabulators and bear the serial number and protective counter number of unknown machines. Additionally, the security seals were cut and the memory cards for 35 tabulators were unlawfully swapped during a live election- and not due to memory card capacity (*See* Counts 5 and 6 of the EOG Report at 49 and 51, respectively).[14]

**Petitioner's Argument**

Petitioners argue that the PC Affidavit "[…] misleadingly omits the SOS's conclusion that tabulator tapes have no relevance to official vote counts"; and that "[t]hey are merely additional documentation of the ballots cast on the precinct scanner"; and that "the improper signatures on some Fulton County tabulator tapes were "an administrative oversight". (Dkt. 30-0 at 24-25)

**Factual Response**

The SOS's assertions that tabulator tapes "have no relevance to official vote

---

[14] A true and correct copy of the EOG Report can be found here:
https://www.scribd.com/document/989542479/Report-of-Investigation-Fulton-2020

11

counts," and are "merely additional documentation," are as reckless as they are false. Georgia law (O.C.G.A. § 21-2-483 (h)) defines tabulator closing tapes as *"the official returns"* and explicitly requires the returns to be certified. Ga. Comp. R. & Regs. 183-1-14-.02(15) also mandates "…for each ballot scanner, three tapes to be printed showing the vote totals as cast on that ballot scanner", and that three witnesses "***shall*** sign each of the tapes" (emphasis added).[15]

## VI.  THOUSANDS OF FICTITIOUS BALLOTS AND VOTES WERE INTENTIONALLY ADDED TO THE HAND COUNT/RISK LIMITING AUDIT

At issue are the results of Fulton County's hand count/audit of the 2020 General Election. Georgia resident, Mr. Joe Rossi, documented problems with the audit and submitted them to the Governor. The Governor's office replicated the findings over several weeks, and on November 17, 2021, referred the matter to the SEB for investigation and correction, which became complaint SEB2021-181.[16]

**Petitioner's Argument**

The Macias Declaration includes claims that the hand count/audit "[has] no bearing on the outcome or determination of the election" (Dkt. 30-1 at 16); and any inconsistencies were due to data entry error. *Id.*

---

[15] Deposition of Eric Coomer-(tabulator tapes are official returns), attached hereto as "Exhibit J"
[16] *See* the formal referral from Governor Kemp here: https://www.scribd.com/document/663445360/Brian-Kemp-Georgia-SEB-Letter-Joe-Rossi-11-17-2021-1; and the Governor's report here: https://www.scribd.com/document/663445727/Brian-Kemp-Audit-Inconsistencies-Report-Joe-Rossi-11-18-2021

**Factual Response**

As a result of the 36 documented "errors" in the hand count, 6,691 fictitious ballots that do not exist were added to the "Total Ballots Cast" column. This was not the product of data entry error. Batch tally sheets were intentionally falsified. After correcting for the false numbers, Fulton County's Total Ballots Cast for the hand count/audit is 521,341, which is 7,436 ballots less than the certified Nov. 3rd total from a review of only the absentee ballots of one county. Furthermore, Fulton County knew about the "errors", because on November 19, 2020, a member of The Elections Group sent a list of the same errors to the current Elections Director (*See* Count 16 of the EOG Report at 157.) The individual tasked with reconciling the hand count/audit is the Petitioners' subject matter expert, Ryan Macias, formerly with The Elections Group.[17] The 36 errors were corroborated but have never been corrected.

## VII.   FRAUDULENT BALLOTS

Following the hand count/audit, witnesses gave sworn affidavits stating there were batches of absentee ballots that were filled out by machine, appeared to be "pristine" and never folded.

**Petitioner's Argument**

Petitioners claim there have been many investigations into Fulton County's

---

[17] See a true and correct copy of the email from a Fulton County elections official describing the role of Mr. Macias attached hereto as "Exhibit H".

13

2020 General Election. They argue the matter of pristine ballots has been investigated, and that the Affiant omitted that fact (*See* Dkt. 30-0 at 22-23.). And that he "omitted the material information that tabulating military and overseas votes regularly results in "pristine ballots."" *Id.* They say that included in the PC Affidavit is the testimony of Witness 6, whose claims preclude even the possibility that fraudulent ballots were injected.

**Factual Response**

First, the suspect batches identified during the hand count/audit; however, batch composition and integrity were not maintained- and were materially altered during the Recount. There is no correlation of ballots and batches from the original count to the Recount(s). The effective shuffling of two machine recounts (one failed) before the matter was investigated, rendered the prospect of identifying and consulting the same batches identified during the hand count/audit, impossible, as they no longer existed.[18]

Second, the assertion that the UOCAVA ballot duplication process would yield pristine hand-marked paper ballots is also not true. Ballot Marking Devices ("BMDs") were used to duplicate UOCAVA ballots (yielding QR code ballots).

---

[18] *See* the undersigned's report on the matter of the pristine ballots investigation, here: https://www.scribd.com/document/913284596/Moncla-2020-Report-Count-20; *See* also the Seven Hills Strategies Post Election Report at 9 here: https://www.scribd.com/document/874605238/Carter-Jones-Seb-Post-Election-Report

14

Third, Fulton County *did* have "extra ballots sitting around"; 1,058,910 extra ballots were ordered by Fulton County. (*See* the EOG Report at 22). There was no reconciliation performed for the 2020 election cycle. (*See* the EOG Report at 141). Lastly, perhaps the reason that there have been no credible investigations into Georgia's 2020 election is better understood by the sworn special purpose grand jury testimony of United States Senator David Perdue. Senator Perdue describes requesting the Director of the GBI, Vic Reynolds, to investigate evidenced violations of Georgia law with regard to the 2020 election. Weeks later Director Reynolds said he would not investigate because the Governor did not want him to, and that "[he] was a team player". (See the corresponding transcript of Senator Perdue's special grand jury testimony attached hereto as "Exhibit I"). His honor (appointed to the Cobb Superior Court bench in 2022) is not the only player on that team.

## CONCLUSION

The Petitioners and the SOS's GC would have you believe that the destruction of ballot images doesn't matter, the official returns (tabulator tapes) have no relevance, intentional double counting of thousands of ballots wasn't outcome determinative; fabricated tally sheets adding thousands of bogus votes to the total is acceptable, and the rule of law is but a suggestion. They claim that the paper ballots are the only record that matters but those can't be accessed because every other election record used to show probable cause- doesn't matter.

15

**Appendix A**

**LIST OF AMICI**

Ms. Rochelle M. Cabirac

Mr. Kevin M. Moncla

Mr. Joseph Rossi

Ms. Melissa White

Respectfully submitted this 25th day of March, 2026

Rochelle M. Cabirac *
Election Oversight Group
911 Wilkinson Street
Shreveport, LA 71104
rcabirac@gmail.com
469-207-5563

Melissa White *
Election Oversight Group
18838 Stone Oak PKWY
Suite 106
mwhite8106@aol.com
210-441-8989

Kevin M. Moncla *
Election Oversight Group
911 Wilkinson Street
Shreveport, LA 71104
kmoncla@gmail.com
469-588-7778

Joseph Rossi *
2007 Cedar Ridge Dr.
Perry, GA 31069
jrossiops@gmail.com
478-955-0977

*pro se

16

# Exhibit A

**Election Oversight Group's Comprehensive Report of Fulton County's 2020 General Election**

**Exhibit A**
Election Oversight Group's Comprehensive Report of Investigation of
Fulton County's 2020 General Election
can be found at the links below:

https://www.scribd.com/document/989542479/Report-of-Investigation-Fulton-2020;

Downloaded from Google Drive here:

https://drive.google.com/drive/folders/1V3Qcb-JiBMaV-e-Vub7RSWKdOx-4a78A

# Exhibit B

**State Election Board Resolution**

**Seeking DOJ Assistance**



# STATE ELECTION BOARD

WHEREAS, the General Assembly of Georgia, as the State Legislature of Georgia, has charged the State Election Board with the duty to "promulgate rules and regulations as to obtain uniformity in the practices and procedures" for all primaries and elections in Georgia as well as "the legality and purity" of those elections under OCGA§21-2-31(1); and

WHEREAS, the Board is also charged to investigate or have investigated the administration of primary and election laws and fraud and irregularities and primaries and elections in Georgia under OSGA§21-2-31(5); and

WHEREAS, the board is charged to take other action, consistent with law, as the Board may determine to be conductive to the fair, legal, and orderly conduct of primaries and elections in Georgia under OCGA§21-2-31(10); and

WHEREAS, considering the foregoing, elections in Georgia include both state and local elections and federal elections, and the U.S. Constitution further protects the voting rights of all the citizens of Georgia in a nondiscriminatory and equal manner and requires that elections be conducted uniformly in all counties to ensure equal protection of those rights;

WHEREAS, the Board relies on assistance from other state actors, including the Attorney General and the Secretary of State to assist it in the conduct of its operations and the Secretary of State is charged with assisting the Board under OCGA§21-2-33.1(h) and the Attorney General is charged with providing independent and effective assistance of counsel to the Board without conflicts of interest that might impair its abilities;

WHEREAS, the Board has heard complaints of potential violations of both Georgia and federal election law over the last few years and the investigations of some complaints, including SEB2023-025, are still incomplete with respect to basic documents required be law to be maintained, despite the extensive efforts of the Board to exhaust all remedies available to it, including the lack of a response to a subpoena issued by the Board issued to Fulton County;

NOW, THEREFORE, BE IT RESOLVED that the Board calls on the assistance of the Secretary of State to assist it as fully as possible and suggests that the Secretary of State and the Attorney General seek the assistance of appropriate local authorities or federal authorities, including the Department of Justice, to take any action necessary to bring a prompt resolution of these issues, including obtaining all necessary voting records and documents.

*Adopted by the Georgia State Election Board on July 30, 2025.*

# Exhibit C

**Transcript of Dr. Johnston's statement on regulation requiring the preservation of ballot images during the May 7, 2024 SEB meeting**

endeavor to keep every record that anyone could ever ask for going forward.  And I wish that we had them, but we can only tell you what we have.

**DR. JOHNSTON:**  Thank you.  And actually I'm asking about images from election day.  I haven't even gotten to the recount yet.

All right.  So I would like to -- to read State Election Board Rule 183-1-12-.13, storage and returns.  This was adopted January 23, 2020, and made effective February 12, 2020.  After tabulating and consolidating the results, the election superintendent shall prepare an electronic file which shall contain a copy of the information contained on each memory card which shall include all ballot images as well as vote totals and a copy of the consolidated returns from the election management system.

Further, the electronic file shall be stored on a secure medium, placed in a sealed envelope or container.  It shall become a part of the election materials which shall be deposited with the clerk of the superior court along with the signed results tape, along with the paper ballots given to the clerk of the superior court.

So are the -- were ballot images required to

179

# **Exhibit D**

**Charlene McGowan for the Georgia Secretary of State**

**Amicus Brief as filed in Favorito v. Wan**

The Secretary respectfully requests that the Court consider the attached amicus brief and the State's interests before entering any relief on Petitioners' Motion to Unseal.

Respectfully submitted, this 2nd day of April, 2021.

|  |  |
|---|---|
| CHRISTOPHER CARR<br>Attorney General | 112505 |
| BRYAN K. WEBB<br>Deputy Attorney General | 743580 |
| RUSSELL D. WILLARD<br>Senior Assistant Attorney General | 760280 |

*/s/Charlene S. McGowan*
CHARLENE MCGOWAN          679316
Assistant Attorney General

*Attorneys for Secretary of State Brad Raffensperger*

2

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically filed the foregoing **MOTION TO FILE**

**BRIEF OF AMICUS CURIAE** with the Clerk of Court using the electronic filing system, which

will send notification of such filing to all parties of record via electronic notification, as well as

via email to the following counsel for the parties:

Todd A. Harding
maddoxharding@gmail.com
Bob Cheeley
bob@cheeleylawgroup.com
Attorneys for Petitioners

Cheryl Ringer
Cheryl.Ringer@fultoncountyga.gov
David Lowman
David.lowman@fultoncountyga.gov
Attorneys for Respondents

Dated: April 2, 2021.

> */s/ Charlene S. McGowan*
> Charlene S. McGowan
> Assistant Attorney General

3

# EXHIBIT A

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

GARLAND FAVORITO, *et al.*,            )
                                        )
        Petitioners,                    )
                                        )
                                        )   **Civil Action No.**
v.                                      )   **2020CV343938**
                                        )
MARY CAROLE COONEY, *et al.*,          )
                                        )
        Respondents.                    )

**BRIEF OF AMICUS CURIAE GEORGIA SECRETARY OF STATE BRAD
RAFFENSPERGER IN RESPONSE TO PETITIONERS' MOTION TO UNSEAL PAPER
BALLOTS AND COMPEL PRODUCTION OF BALLOTS**

Georgia Secretary of State Brad Raffensperger ("Secretary") submits the following Brief

of Amicus Curiae in response to Petitioners' Motion to Unseal Paper Ballots and Compel

Production of Ballots ("Motion to Unseal").

**A.  Interests of Amicus Curiae.**

As the state's chief elections official, the Secretary has an interest in protecting the

confidentiality, security, and integrity of ballots and other elections materials that Petitioners

request in their Motion to Unseal. While the Secretary takes no position on the merits of

Petitioners' underlying case, he submits this brief to advise the Court regarding (1) the

requirements under the Georgia Elections Code for maintaining the confidentiality and security

of ballots; and (2) recent updates to the Georgia Open Records Act that allows for the public

disclosure for ballot images only (*not* ballots). The Secretary respectfully requests that the Court

permit Petitioners to inspect ballot images only, and deny Petitioners' request to inspect and scan

ballots. This result is consistent with Georgia law, and appropriately balances Petitioners'

interests in inspecting ballot images with the State's and the public's interest in maintaining the

security and integrity of confidential ballots.

1

**B. The Georgia Elections Code Provides that Ballots Be Kept Secure and Confidential and are Not Subject to Public Disclosure under the Georgia Open Records Act.**

Petitioners filed this action as an enforcement action under the Open Records Act, O.C.G.A. § 50-18-73, and have asked that the Court order Respondents to produce for inspection all ballots, ballot images, and elections reports from the November 3, 2020, general election. *See* Motion to Unseal, at Exhibit A. These materials are currently under seal as required by O.C.G.A. § 21-2-500, and are currently being maintained by the Fulton County Superior Court Clerk. Because the underlying action was brought under the Open Records Act, there is no legal basis for Petitioners to obtain access to the requested materials beyond what the Open Records Act permits, subject to confidentiality provisions in the Elections Code.

Petitioners have submitted to the Court a proposed order granting their Motion to Unseal, which would grant Petitioners sweeping and unprecedented access to all ballots. Petitioners request that all ballots and ballot images be unsealed and Petitioners be permitted to remove the ballots from their legally required secure location within the Fulton County Clerk's office and move them to a third-party location of Petitioners' choosing. Petitioners also ask that ballots and ballot images be released to their custody and that the Court permit them to scan ballots with unauthorized equipment not intended for such use, and to conduct their own independent tabulation of votes. However, there is no basis under the Open Records Act or the Georgia Elections Code for such unfettered access to confidential ballots.

First, it is important to clarify the difference between "ballots" and "ballot images." "Ballots" include (1) paper ballots produced by ballot marking devices ("BMDs") used in in-

2

person advanced voting and election-day voting; [1] (2) absentee-by-mail paper ballots; and (3) UOCAVA paper ballots. Ballots are then scanned through optical voting scanners selected and furnished by the State of Georgia pursuant to O.C.G.A. § 21-2-300. Once scanned, an electronic ballot image is created and stored on a memory card ("ballot images"). Following the election, county officials must deliver all ballots and ballot images "in sealed containers to the clerk of the superior court," and those ballots and ballot images are to be held by the clerk under seal for a period of 24 months. O.C.G.A. § 21-2-500(a).

The Open Records Act specifically exempts documents that "by law are prohibited or specifically exempted from being open to inspection by the general public." O.C.G.A. § 50-18-70(b). The Georgia Court of Appeals has held that *both* ballots and ballot images are not public records open to inspection by the general public under the Open Records Act because they must remain sealed under O.C.G.A. § 21-2-500(a). *Smith v. DeKalb County*, 288 Ga. App. 574 (2007). In *Smith*, the plaintiff sought production of ballot images maintained on a CD-ROM that were being maintained under seal by the clerk of superior court. The Court of Appeals held that "because the CD-ROM is statutorily designated to be kept under seal, it is by law prohibited or specifically exempted from being open to inspection by the general public and, therefore, is not an open record subject to disclosure." *Id.* at 577. Accordingly, "the trial court did not abuse its discretion in granting the Secretary of State's petition for a permanent injunction prohibiting the custodian from opening the record in response to Smith's Open Records Act request." *Id.*

---

[1] *See* O.C.G.A. §§ 21-2-2(1) (defining a ballot as either "'official ballot' or 'paper ballot' and shall include the instrument, whether paper, mechanical, or electronic, by which an elector casts his or her vote"); 21-2-2(18) (defining an official ballot as "a ballot, whether paper, mechanical, or electronic, which is furnished by the superintendent or governing authority in accordance with Code Section 21-2-280, including paper ballots that are read by ballot scanners"); and 21-2-2(20) (defining paper ballot as "the forms described in Article 8 of this chapter"); Georgia Comp. R. & Regs. r. 183-1-12-.02 (defining ballot as "hav[ing] the meaning set forth in O.C.G.A. § 21-2-2").

3

On March 25, 2021, Governor Kemp signed into law Senate Bill 202 ("SB 202"), which creates a limited exception for "scanned ballot images created by a voting system" and allows for public disclosure of *ballot images*, but not *ballots*, under the Open Records Act. In creating this limited exception, the General Assembly expressed its clear intent to only allow public disclosure of *ballot images* while maintaining the confidentiality of *ballots* from public, and therefore ballots remain excluded to production under the Open Records Act.

Despite the limited exemption created by SB 202, the Georgia Elections Code is clear that all *ballots* are to remain secret and under the secure possession of elections officials or the clerk of court under O.C.G.A. § 21-2-500, and are not available for public review or inspection, and there is certainly no precedent for allowing the general public to copy or electronically scan confidential ballots. Indeed, it is a felony offense for anyone "other than an officer charged by law with the care of ballots" to be in possession of any ballots. O.C.G.A. § 21-2-574. Thus, the legislature has made it quite clear that the security and confidentiality of ballots is to be strictly maintained, and the Court should be cautious in granting Petitioners' access to ballots that Georgia law requires to remain under seal, which makes it a felony as soon as Petitioners were to lay hands on them even if the Court were to grant the order that they seek, and for which the plain language of the Open Records Act and binding precedent make clear is *not* permitted under the Open Records Act.

**C. Petitioners have no legal authority to conduct their own independent verification and tabulation of ballots.**

The Elections Code is furthermore clear that it is only authorized elections officials who are legally permitted to verify and tabulate ballots in an election. *See, e.g.,* O.C.G.A. §§ 21-2-386 (authorizing board of registrars or absentee ballot clerks to validate and authenticate signatures

4

on mailed absentee ballots and securely maintain absentee ballots); 21-2-493 (authorizing county elections superintendents to tabulate election returns); 21-2-495 (procedures for recount or recanvass of votes); 21-2-498 (authorizing elections superintendents and the Secretary of State to conduct tabulation audits); 21-2-499 (granting the Secretary of State the sole authority to certify final elections results).

Moreover, the scanning and tabulation of ballots is only permitted under Georgia law to be conducted on the equipment selected and furnished by the State of Georgia. The Elections Code provides that county elections officials shall use only the "uniform system of electronic ballot markers and ballot scanners" furnished by the State. O.C.G.A. § 21-2-300. There is simply no legal basis for unauthorized third parties such as Petitioners to electronically scan ballots using their own equipment in order to conduct their own independent tabulation of ballots. This is not permissible under the Georgia Elections Code, the Open Records Act, or any other statute. The official scanners that were furnished by the State and used to tabulate the ballots in Georgia have been certified by the Election Assistance Commission, tested by independent voting system review labs accredited by the Election Assistance Commission, certified by the Secretary of State, acceptance tested by the Secretary of State's office, and, finally, logic and accuracy tested by the county elections office prior to use. Allowing Petitioners to conduct their own scan on uncertified and unknown equipment is contrary to law and would set a new and dangerous precedent going forward.

There are serious privacy and security risks with allowing Petitioners access to scan and reproduce the original, sealed ballots because they can easily be altered and manipulated and shared with the public to spread misinformation. This risk is not merely hypothetical—there has already been a great deal of misinformation regarding the 2020 general election that was

5

disseminated through social media and other internet media, and which forms the basis for Petitioners' allegations in their action. Just as one example, Petitioners cite to security footage from the Fulton County tabulation center at State Farm Arena to falsely claim that tabulators brought out bins of unlawful ballots they had hidden under tables and unlawfully counted them. *See* Petition at ¶¶ 46-55. This misinformation was generated by plaintiffs in a separate election challenge, who obtained the security camera footage of the Fulton County tabulation center at State Farm Arena through a subpoena, and then selectively edited nearly 24-hours of that video footage into a few minutes to suggest that unlawful activity had occurred, when it had not. There is an obvious and real risk that, if electronic ballot images are disseminated on the internet, that bad actors will attempt to alter or manipulate them as a means to spread similar misinformation.

Petitioners have not articulated a legal justification for why they are entitled to conduct their own independent tabulation of ballots separate and apart from the legal tabulation conducted by authorized elections officials as required by law. If they wished to contest the legality of certain ballots or the results of the general election, Petitioners could have timely filed an election contest under Article 13 of the Elections Code, O.C.G.A. § 21-2-520, *et seq.* Many parties, including former President Trump, did file election contests making the same baseless claims Petitioners raise in this action, and none of them were successful.[2] But in any event,

---

[2] At least four election contests challenging the general election results were filed by other parties, including former President Trump, in addition to federal lawsuits seeking stop or undo certification of the general election results. In all of these cases, injunctive relief was denied and/or the case was dismissed. *See, e.g., Trump v. Kemp*, No. 1:20-cv-05310-MHC, 2021 U.S. Dist. LEXIS 4185 (N.D. Ga. Jan. 5, 2021) (motion for injunction denied); *Trump v. Raffensperger*, No. 2020cv343255 (Fulton Superior Court) (election contest voluntarily dismissed by plaintiff on the day before trial); *Texas. v. Pennsylvania*, No. 155 (Orig.) 2020 WL 7296814 (U.S. Dec. 11, 2020) (denying petition to file original action challenging Georgia's general election results); *Wood v. Raffensperger*, 981 F.3d 1307 (11th Cir. 2020) (affirming denial of motion to enjoin certification of general election results); *Pearson v. Kemp*, No. 1:20-cv-4809 (N.D. Ga.) (dismissed); *Wisconsin Voters Alliance, et al. v. Pence*, No. 20-3791, 2021 U.S. Dist. LEXIS 127 (D.D.C. Jan. 4, 2021)

6

Petitioners did not file an election contest, and the current Petition filed pursuant to the Open Records Act cannot be construed as an election contest because it was not properly filed within five days of the certification of the election results and fails to meet the other requirements of O.C.G.A. § 21-2-524. To the extent that Petitioners are using this open records act enforcement action as a pretext for challenging the legality of ballots cast in the general election, it is too late, for them to assert such a challenge now, and any request for relief would be barred by the applicable statute of limitations. *See* O.C.G.A. § 21-2-524.

Moreover, any legal challenges to the results of the 2020 general election are also moot, as the results of that election have already been tabulated, audited by hand count, recounted by machine tabulation, and were certified by the Secretary of State on November 20, 2020, who has the sole authority to certify elections results under O.C.G.A. § 21-2-499. The list of presidential electors was certified again on December 7, 2020, by the Secretary of State and the Governor, who transmitted the Certificate of Ascertainment to the Archivist of the United States pursuant to 3 U.S.C. § 6. All officials elected in the general election have been sworn into office. The public interest would not be served by allowing Petitioners to undergo an unlawful fishing expedition into sealed ballots in their attempt to undermine the results of the general election, when the ballots have already been tabulated, audited, and recounted as provided by law.

---

(*sua sponte* dismissal of a challenge to Georgia's general election results, in which the district court referred plaintiffs' counsel to the court's grievance commission for discipline for filing a frivolous action); *Wood v. Raffensperger*, No. 2020cv342959 (election contest in Fulton County Superior Court that was dismissed by the court); *Della Polla v. Raffensperger*, No. 20-1-7490-46 (election contest in Cobb County Superior Court that was dismissed by the court); *Boland v. Raffensperger*, No. 2020cv34018 (election contest in Fulton County Superior Court that was dismissed by the Court).

7

Based upon the controlling law discussed above, the Secretary respectfully requests that Petitioners' Motion to Unseal be granted only as to ballot images, and Petitioners' request to inspect and scan ballots be denied. Such a results is consistent with Georgia law and allows Petitioners access to inspect ballot images, while maintaining the confidentiality, security, and integrity of ballots that Georgia law requires and the voting public expects.

Respectfully submitted, this 2nd day of April, 2021.

CHRISTOPHER CARR          112505
Attorney General

BRYAN K. WEBB             743580
Deputy Attorney General

RUSSELL D. WILLARD        760280
Senior Assistant Attorney General


/s/Charlene S. McGowan
CHARLENE MCGOWAN          679316
Assistant Attorney General

*Attorneys for Secretary of State Brad Raffensperger*

8

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically filed the foregoing **BRIEF OF AMICUS CURIAE** with the Clerk of Court using the electronic filing system, which will send notification of such filing to all parties of record via electronic notification, as well as via email to the following counsel for the parties:

Todd A. Harding
maddoxharding@gmail.com
Bob Cheeley
bob@cheeleylawgroup.com
Attorneys for Petitioners

Cheryl Ringer
Cheryl.Ringer@fultoncountyga.gov
David Lowman
David.lowman@fultoncountyga.gov
Attorneys for Respondents

Dated: April 2, 2021.

*/s/ Charlene S. McGowan*
Charlene S. McGowan
Assistant Attorney General

9

# Exhibit E

**Dominion's Responses to the State of Georgia's**

**Request For Information ("RFI")**

### Section 3 – Polling Place Scanners (PPS)

### File 3-3 PPS Tabulation

### 3.3    Describe your PPS' tabulation process.

The ImageCast Precinct can be thought of as a sheet fed scanner. This means that as the paper is pulled through the machine, a complete image is taken of the top and bottom of the ballot. The scanner then passes this image to a software program which looks for markings (black squares which are often called `fiducials') around the ballot. If the correct number of fiducials is found, and the ballot bar code passes checksum logic tests, the software then knows that it is looking at a valid ballot.

Once a ballot is verified, the system begins to interrogate the ballot markings. To begin, the machine integrates every black pixel for each marking area corresponding to a position on the ballot. If the number of black pixels exceeds the threshold marking defined by the jurisdiction, the mark is considered a vote and a digital signal is created. If there is no mark present, an appropriate digital signal is created. For those cases where handwritten or write-in votes are present, the marks are detected and these ballots are placed in the secondary ballot compartment.

The machine is designed so that no ballot is allowed to pass the scanning stage unless:

- The scanner verifies that it is a valid ballot

- The scanner reads all the fiducials around the ballot image.

If, for whatever reason, the machine is unsure about the image, it will notify the operator with an appropriate error message (such as \Ballot Misread," \Please Insert Again," \Invalid ballot for this polling location," \DRO box not signed," etc).

In total, there are approximately 340 image checks that are performed on each image. If any check fails, the machine will report the ballot as misread and automatically reverse it. The system has been designed to have an error rate of less than 1 in 10,000,000 markings.

State of Georgia

eRFP: 47800-SOS0000037

 

The imaging system is designed using a narrow paper path. This ensures that folds, creases, and crumpled ballots are imaged without any artifact appearing in the ballot image. If these artifacts appear and affect the image, an error message is given to the operator.

If proper marking devices are used, smudges do not occur. If a voter uses another type of pen, which does not dry before ballot insertion, the leading surfaces of the tabulation units contact the paper and prevent any wet ink or smudges from affecting the imaging of the initial or subsequent ballots.

The ImageCast Precinct allows ballots to be generated with marking positions for Write-Ins, if allowed under election laws, whereby a voter can write-in a candidate's name if that name does not appear on the ballot. When a ballot with Write-In markings is scanned, the ImageCast Precinct will record as many write-in votes as the number of candidates the voter is allowed to select, as per VVSG regulations.

The scanning process consists of real-time monitoring and interrogation of all ballot images before the batches are accepted. In essence, all ballots are scanned and then subjected to image processing, which determines if the ballot is valid and scanned correctly. If any scan fails this interrogation, the scanner ceases operation. It emits an audible and visual notification to the operator, and returns the ballot.

A high-level list of ImageCast Precinct features that support the scanning and tabulation function includes the following:

- Two (2) optical imaging scanners for creating a duplex scanned image of each side of the ballot. Ballots can be fed in all four (4) orientations.

- Linux Operating System.

- Two SD memory cards ports for storage capabilities. Two (2) 8GB SD memory cards will be provided and located behind two securable doors (Administrator Door and Pollworker Door).

- An interactive electronic display in the form of an ultra-high contrast graphical color 5.7" LCD screen, and a built-in touch screen for administration purposes.

 

- An internal 3" thermal printer and one (1) 3" paper roll for generating reports.

- One (1) administrative security key (iButton) used with an integrated receptacle (physically attached to the top of the unit and electrically connected to the motherboard) used for a variety of verification and security tasks such control, data confidentiality and integrity functions.

- A motorized paper feed mechanism for detecting and moving the ballot within the scanner. Ballots used with the ImageCast Precinct must be 8.5" wide by a variable length (11", 14", 17", 19" and 22"). The paper feed mechanism is physically capable of moving the ballot forward into the machine, across image sensors, enabling complete image capture of both sides of the ballot.

- Power supply module uses 120 Vac, 60 Hz, one phase power. It has a power consumption of 0.07 Amps at 120 Volts AC.

- An internal battery which is rated to provide six (2.5) hours of normal use in the absence of AC power. In addition to internal 2.5 hours battery an internal 6 hours battery option is also available. There is also a connection for an external 12VDC SLA battery.

- Patented functionality known as the AuditMark. For each ballot scanned and accepted into the unit, a corresponding ballot image is created and stored for audit purposes. The image consists of two parts described below:

  - The top portion of the image contains a scanned image of the ballot.

  - The bottom portion consists of a machine-generated text showing each mark that the unit interpreted for that particular ballot. This is referred to as the AuditMark.

State of Georgia

eRFP: 47800-SOS0000037

 

Statewide Voting System

Page 3 of 3

# Chapter 2

# Introduction

## 2.1   Document Use

This document is intended for use with the Democracy Suite® 5.0 platform.

## 2.2   General

The ImageCast® Precinct (or ICP) tabulator is one of the main components of an automated paper ballot tabulation system. Used in conjunction with the required consumables, supplies, and software, the ImageCast® Precinct forms a complete tabulation system with Accessible Voting (AV) capabilities.

At the polling place, voters make their selections by marking a paper ballot and then inserting the ballot directly into the ImageCast® Precinct. If a person is disabled, they may use an Audio Tactile Interface (ATI) to navigate through an audio version of the ballot to select their voting choices.

The ImageCast® Precinct mounts onto a specially designed ballot box with three separate compartments:

1. A primary compartment for storing voted ballots tabulated by the machine.

2. A secondary compartment for storing ballots that have been diverted for further manual review (e.g. write-ins).

3. An auxiliary compartment to be used in the event that the machine is temporarily inoperable.

Voters make their selections by using a special marking pen to mark the box(es) corresponding to the candidate(s) of their choice. The ImageCast® Precinct scans the ballot, stores a complete image of the ballot, interprets, and tallies the results, and prints cumulative totals of all votes cast after the voting station has been closed. The ImageCast® Precinct is also equipped with an ultra-sonic multi-feed detector that prevents the device from accepting more than one ballot at a time.

The ImageCast® Precinct can also be used as an Accessible Voting device by connecting an ATI (Audio Tactile Interface) and a set of headphones, which the voter uses to navigate through the audio ballot and make their selections.

Additionally, the ImageCast® Precinct can also be used in conjunction with an ImageCast® Precinct Ballot Marking Device, otherwise known as an ImageCast® Precinct BMD. This device takes a blank sheet of ballot paper, and produces a machine-readable ballot that is marked with the voter's selections made during an Accessible Voting Session. This marked ballot is identical in appearance to a manually marked ballot and is subsequently inserted into the ImageCast® Precinct for tabulation.

*NOTE: Election laws and procedures vary from jurisdiction to jurisdiction, and as a result, the roles and responsibilities of the people responsible for operation will vary accordingly. The procedures in this manual are presented as generally as possible, and some adjustments may be required in order to comply with local election regulations.*

# Exhibit F

**Image of the December 3, 2020 email from**

**Richard Barron to Ryan Macias**

| | |
|---|---|
| **From:** | Barron, Richard L. |
| **To:** | RYan.macias@electionsgroup.com |
| **Date:** | Thursday, December 3, 2020 12:13:15 PM |
| **Attachments:** | Batches Loaded Report.xml |

# Exhibit G

**Screenshot of Fulton County's tweet stating
they had finished the Recount.**



**FultonCountyGeorgia**
@FultonInfo

Fulton County has completed the recount of the November 3 Presidential Election. Results will be released by the Secretary of State's Office.

11:52 PM · Dec 2, 2020                                  ⓘ

♡ 97     💬 Reply     ⬆ Share

**Read 16 replies**

# Exhibit H

**Email of Fulton County's Registration Chief establishing the
role of Ryan Macias for the hand count/audit reconciliation.**

 today trying to assist with the reconciliation of the

all with Edwin, let me know and I will make myself

20, 1:47 PM Jones, Ralph <Ralph.Jones@fultoncoun

s project for me.  We will come together soon.

# Exhibit I

**Transcript of the special purpose grand jury testimony of**

**United States Senator David Perdue.**

IN THE SUPERIOR COURT OF FULTON COUNTY

STATE OF GEORGIA


TRANSCRIPT OF THE SPECIAL PURPOSE

GRAND JURY PROCEEDINGS

ATLANTA JUDICIAL CIRCUIT
COMMENCING SEPTEMBER 6, 2022


A P P E A R A N C E S:

ON BEHALF OF THE STATE OF GEORGIA:

ADAM NEY, ESQUIRE
DONALD WAKEFORD, ESQUIRE
WILLIAM WOOTEN, ESQUIRE
NATHAN WADE, ESQUIRE


OFFICE OF THE FULTON COUNTY DISTRICT ATTORNEY
136 PRYOR STREET
SUITE 301
ATLANTA, GEORGIA 30303
(404) 612-4981


ALSO PRESENT:

MICHAEL L. HILL, II, INVESTIGATOR


DENISE D. MYLES, CVR, CCR, BS
FULTON COUNTY SUPERIOR COURT
404-612-4607

FCDA00136562

36

GBI INVESTIGATE THOSE CLAIMS?

A.   NOT TO MY KNOWLEDGE -- NOT TO MY SATISFACTION.

Q.   OKAY.  DO YOU HAVE REASON TO BELIEVE THAT GBI WOULD NOT HAVE CONDUCTED A SATISFACTORY INVESTIGATION?

A.   I'LL GIVE YOU A PHONE CALL THAT HAPPENED --

Q.   SURE.

A.   -- IN NOVEMBER OF '22.  THE HEAD OF THE GBI, VIC REYNOLDS CALLED ME, IT'S A MATTER OF RECORD.  HE CALLED ME AND SAID, "WE'RE NOT GOING TO INVESTIGATE.  THE GOVERNOR WANTS ME TO TELL YOU WHY WE'RE NOT GOING TO INVESTIGATE."  I SAID, "PLEASE DO."  BECAUSE HE WAS IN A MEETING IN MAY WHEN HE SAW EVIDENCE OF BALLOT HARVESTING.  AND THIS IS VIDEO EVIDENCE AND CELL PHONE EVIDENCE, ALONG WITH TESTIMONY AND BANK RECORDS THAT ARE CORROBORATED ON, AND ALL THAT.  HE LOOKED AT THAT AND SAID IT WAS COMPELLING TO BE INVESTIGATED.  THAT WAS IN MAY OF 2021.

IN NOVEMBER OF '21, HE CALLS ME AND SAYS, "WE'RE NOT GOING TO INVESTIGATE BECAUSE I HAVE I'M A TEAM PLAYER.  IF THE GOVERNOR DOESN'T WANT TO INVESTIGATE, WE'RE NOT GOING TO INVESTIGATE."  AND FOR THE RECORD, SUBSEQUENTLY, HE'S BEEN PROMOTED TO SUPERIOR COURT JUDGE OF COBB COUNTY.

Q.   SO IS THERE ANY EVIDENCE OF BALLOT HARVESTING THAT CONVINCES YOU THAT THERE WAS WIDESPREAD ELECTION

FCDA00136597

37

FRAUD?

A. IN THAT REGARD, YES.

Q. THERE IS?

A. YES.

Q. SO WHY IS THAT NOT BEEN PRESENTED TO THE COURT?

A. IT'S -- WE TRIED. THEY -- THEY THROW THEM OUT. MINE WAS THROWN OUT BECAUSE THE JUDGE SAID IT WAS SOUR GRAPES AND HIS -- WHEN HE DISMISSED THE CASE, AND ALSO REFERRED TO THE FACT THAT AS A CANDIDATE, ONE OF THE REASONS WHY HE DISMISSED THE CASES IS THAT A CANDIDATE DID NOT HAVE LEGAL STANDING.

Q. SO WHEN YOU SAY YOUR CASE, WAS THERE ANOTHER -- WERE YOU TALKING ABOUT YOUR DECEMBER 2021 LAWSUIT?

A. LET'S SEE. THERE WERE THREE LAWSUITS BACK THEN. NO, THIS IS A LAWSUIT THAT I FILED AFTER THE JEFFERS CASE WAS DISMISSED BECAUSE OF LEGAL STANDING.

SO I WANTED TO FIND OUT IF A SENATOR OR CANDIDATE HAD LEGAL STANDING.

Q. RIGHT. WOULD THIS HAVE BEEN THIS PAST DECEMBER OR IS THAT A DIFFERENT CASE?

A. I'M SORRY. THE DECEMBERS ARE RUNNING TOGETHER HERE.

Q. SURE.

A. DECEMBER OF -- IT'S NOT THE ONE IN DECEMBER OF 2020.

FCDA00136598

# Exhibit J

## Testimony of former V.P. Dominion Voting Systems

to understand when they scan a physical ballot.

Q.    Is it possible for Dominion systems to flip votes from one candidate to another?

A.    Again, in the EMS, as evidenced in Antrim, votes were shifted due to improper configuration of the system.  A generic -- well, again, I'll point back to the tabulators read those ballots perfectly.  There was no issue.

Those are some of the official records, the poll tapes that are run at the end, that's the official record.  The results that are reported out of the EMS or election night and perhaps several days later are unofficial results.  They are not the official results.

That's by design, because sometimes you have issues like in Antrim, which may not present themselves immediately.

Q.    But you never personally verified any of that yourself, right?

A.    Verified what?

Q.    The Antrim results.

A.    No, I said I did not.