**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| ROBERT L. "ROBB" PITTS, CHAIRMAN, FULTON COUNTY BOARD OF COMMISSIONERS; FULTON COUNTY BOARD OF REGISTRATION AND ELECTIONS; FULTON COUNTY, GEORGIA; and CHE ALEXANDER, CLERK OF COURT, <br><br> Petitioners, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Respondent. | Civil Action No. 1:26-CV-00809-JPB |

**PETITIONERS' POST-HEARING MOTION FOR ADDITIONAL EVIDENCE PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 41(G)**

On March 27, 2026, the Court held an evidentiary hearing pursuant to Federal Rule of Criminal Procedure 41(g). During the hearing, the Court raised questions about the relationship between the civil proceeding in *United States v. Alexander*, No. 1:25-cv-07084 (N.D. Ga. filed Dec. 11, 2025), and what Respondent has described as the "ongoing criminal investigation" at issue in this case. The Court noted the timing of the January 28, 2026, search warrant—executed only eight days after Respondent filed its opposition to a motion to dismiss the *Alexander* case—and suggested that it would be troubling if Respondent had used a criminal search warrant to circumvent obstacles that had arisen in the civil case.

Because Respondent's counsel could not state whether the search warrant was issued for that very reason, the Court should allow for additional evidentiary development on this critical question before ruling on the 41(g) motion. At the evidentiary hearing, counsel for Respondent stated only that they had no *personal knowledge* of a meeting at which the DOJ decided to use a criminal search warrant to sidestep the procedural hurdles in *Alexander*. But Respondent's counsel joined this case more than two weeks after the warrant was executed, so they necessarily lacked first-hand information about the search warrant's origins. Absent at the hearing were those who initiated the "criminal investigation": Kurt Olsen and Thomas Albus.

The timing of the search warrant, especially as it relates to the status of the civil proceedings, creates a strong inference that the search warrant served as an improper means to expedite access to the 2020 election records that DOJ sought in the civil case. That inference is further supported by DOJ's failure to identify the normal basis for a warrant: a crime within the statute of limitations period. At the hearing, Respondent did not even attempt to dispute that the statute of limitations has expired on any criminal conduct alleged in the affidavit. Given the highly unusual context of this warrant, further evidence is necessary for this Court to determine whether—in callous disregard of Petitioners' rights—the supposed

1

"ongoing criminal investigation" was merely a pretext for expediting access to records Respondent was already pursuing through civil litigation.

Under these circumstances, it is insufficient for Respondent's counsel to merely assert that they are not aware of a specific meeting where DOJ officials or the White House discussed the status of the *Alexander* case, the challenge to that suit, the delay the challenge would create, or the use of a criminal warrant to end run civil proceedings that Respondent initiated. The Court should direct Respondent's counsel to supplement the record with additional information so that the Court has a complete record upon which to rule. Given that Respondent's counsel continues to assert that there is an "ongoing criminal investigation" referred by Kurt Olsen, Respondent's counsel should, at a minimum, identify for the Court the date of the referral and the date upon which any criminal investigation began. Respondent's counsel should also provide the information noted below so that the questions the Court raised may be answered.

## The Timing of Key Events Leading Up to the Search Warrant

There is no dispute that the search warrant is the direct result of a criminal referral by Kurt Olsen, the so-called "Presidentially appointed Director of Election

2

Security and Integrity."[1] It appears that the President appointed Mr. Olsen for a 130-day term.[2] Here is the relevant timeline:

- In **October 2025**, the President appointed Kurt Olsen.[3]

- On **October 30, 2025**, the head of the DOJ's Civil Rights Division, Harmeet Dhillon, sent a letter to the Fulton County Board of Registration and Elections ("FBRE"), seeking Fulton County's 2020 election records "responsive to the recent subpoena issued to your office by the [Georgia] State Elections Board." Exh. 1, *United States v. Alexander*, 1:25-CV-07084-TWT (Dec. 11, 2025), Doc. 2-3 (Letter

---

[1] *See, e.g.*, *Lake v. Hobbs*, 643 F. Supp. 3d 989, 1008 (D. Ariz. 2022) (imposing sanctions on plaintiffs' counsel, including Olsen, where plaintiffs "made false, misleading, and unsupported factual assertions" in their pleadings); *aff'd sub nom. Lake v. Gates*, 130 F.4th 1064 (9th Cir. 2025); *id.* ("Plaintiffs' counsel acted at least recklessly in unreasonably and vexatiously multiplying the proceedings by seeking a preliminary injunction based on Plaintiffs' frivolous claims"); *Lake v. Hobbs*, No. CV-23-0046-PR (Ariz. May 4, 2023) ("Because Lake's attorney has made false factual statements to the Court, we conclude that the extraordinary remedy of a sanction under [Arizona Rule of Civil Appellate Procedure] 25 is appropriate"). Olsen was also disciplined by the Arizona State Bar for that same misconduct. *See In the Matter of Kurt Olsen*, No. PDJ 2024-9004 (Decision and Order of Presiding Disciplinary Judge Oct. 17, 2024) ("Mr. Olsen violated duties owed to the legal system and to the profession."). Notably, Respondent has never disputed that Mr. Olsen has, in fact, been sanctioned or that the Court can take judicial notice of these facts.

[2] *See, e.g.*, Josh Dawsey, et al., *White House Hires 'Stop the Steal' Lawyer to Investigate 2020 Election Claims*, WALL ST. J. (October 17, 2025), https://www.wsj.com/politics/elections/white-house-hires-stop-the-steal-lawyer-to-investigate-2020-election-claims-6395d322.

[3] Respondent has not identified Mr. Olsen's precise date of appointment or on what date his appointment expires.

from H. Dhillon to FBRE (Oct. 30, 2025)); *see also* Exh. 2, *Alexander*, Doc. 2-4 (Letter from FBRE to H. Dhillon (Nov. 14, 2025)).[4]

- On **November 21, 2025**, Ms. Dhillon sent a virtually identical letter to Fulton Superior Court Judge Robert McBurney and Fulton County Clerk Che Alexander. Exh. 3, *Alexander*, Doc. 2-5 (Letter from H. Dhillon to Petitioner Alexander and Hon. Robert McBurney (Nov. 21, 2025)).

- On **December 11, 2025**, the U.S. Department of Justice filed a civil complaint and motion for an order compelling the production of 2020 election records against Che Alexander, the Clerk of Courts for Fulton County. *See Alexander*, Docs. 1, 2. Notably, in *Alexander*, the U.S. Department of Justice purported to be "assist[ing] the [Georgia] State Election Board" in their efforts to obtain Fulton County's 2020 election records via the SEB's subpoenas to the FBRE and the Clerk. *See Alexander*, Doc. 1 (Compl.) ¶¶ 15–23; *id*. ¶ 19 ("The Attorney General also seeks to assist the State Election Board . . . in their transparency efforts under Georgia law.").

- On **December 22, 2025**, Fulton County Superior Court Judge Robert C.I. McBurney entered an order in a state court proceeding about the validity of the very SEB subpoenas that DOJ purported to be enforcing. *See* Exh. 4, *Alexander*, Doc. 18-

---

[4] "A court may take judicial notice of its own records and the records of inferior courts." *United States v. Rey*, 811 F.2d 1453, 1457 n.5 (11th Cir. 1987). And the Court may do so "at any stage of the proceeding." Fed. R. Evid. 201(d).

4

3 (Order Denying Quashal, *Allen v. Georgia*, Civil Action No. 24CV014632 (Super. Ct. of Fulton Cnty. Dec. 22, 2025)). Judge McBurney ruled that he "intend[ed]" to require Petitioners to "comply with the subpoenas but also intend[ed] to require the SEB to pay for what it wants" and therefore directed the FBRE to submit an itemized cost-breakdown for complying with the SEB's subpoena. Exh. 4, at 4.[5]

● On **January 5, 2026**, Ms. Alexander moved to dismiss the DOJ's case in *Alexander*, in part, because (a) the records were sealed pursuant to an order by Judge McBurney and (b) DOJ should "seek an order from a judge of the Fulton County Superior Court unsealing these materials." *Alexander*, Doc. 18 (Defendant's Motion to Dismiss Plaintiff's Complaint), at 2–3.

● On **January 20, 2026**, the DOJ filed its response in opposition to Ms. Alexander's motion to dismiss. *Alexander*, Doc. 20.

● On **January 28, 2026**, Respondent obtained and executed a search warrant for the same records DOJ sought in *Alexander*. *See, e.g.*, Resp. Hearing Exhs. 1, 2.

● On **February 6, 2026**, less than two weeks after the execution of the warrant, Ms. Dhillon posted on x.com and appeared to imply that the warrant was somehow connected to Fulton County's challenge to the Civil Rights Division's civil

---

[5] Judge McBurney subsequently scheduled a hearing for March 9, 2026, "at which the parties could present evidence on the means and cost of generating copies of these sensitive election materials." *See* Exh. 5, Order Staying Case, *Allen v. Georgia*, Civil Action No. 24CV014632 (Super. Ct. of Fulton Cnty. Feb. 9, 2026), at 1.

suit: "Fulton County refused to cooperate with @CivilRights request for 2020 election-related documents, alas."[6]



### The Court's Concerns Regarding the Timing and Basis for the Warrant

At the March 27 hearing, the Court stated that it would be a "good argument" in favor of Petitioners' request for relief if, in fact, Respondent sought and executed a warrant merely to bypass delays in the civil proceedings. Respondent's counsel

---

[6] Harmeet Dhillon (@AAGHarmeetDhillon), X (Feb. 6, 2026, at 11:21 AM) https://x.com/AAGDhillon/status/201980864101319835.

replied that they were not aware of a specific meeting where that issue was discussed but offered no other details.

The Court should direct Respondent to answer certain questions identified below and to produce records regarding the same. To the extent that Respondent deems such communications "sensitive," despite the Affidavit's express admission that Olsen was the genesis of the "criminal investigation," the Court could review those records *in camera* before providing them to Petitioners for further briefing. *Cf. United States v. Potes Ramirez*, 260 F.3d 1310, 1314 (11th Cir. 2001) (holding district court erred by accepting the government's representations "without requiring the government to submit at least some evidence"); *id*. ("Research has revealed no authority for the proposition that a district court must rely on a representation, made by the government or any other litigant for that matter.") (quoting *Mora v. United States*, 955 F.2d 156, 158 (2d Cir. 1992)).

<u>**Additional Evidence Requested**</u>

Given Respondent's incomplete answer to the Court's specific questions, Respondent should be directed to answer the following questions that go to the possible pretextual use of criminal process here:

1. On which date did Kurt Olsen refer the criminal investigation to the FBI, as stated in Paragraph 6 of the search warrant affidavit?

2. On which date did Respondent's "ongoing criminal investigation" begin?

3. Were there any meetings or communications (including phone calls, in-person meetings, text messages, emails, or other digital communications) in which DOJ officials (including Mr. Olsen or White House personnel) discussed using a criminal search warrant in response to delays in the *Alexander* case or the Civil Rights Division's request for 2020 election records?

Moreover, Respondent should be directed to identify whether there have been any communications between any DOJ personnel (including Thomas Albus, Kurt Olsen, and FBI agents) involved in the initiation, drafting, preparation of, and execution of the search warrant for Fulton County's 2020 election records, on the one hand, and any DOJ personnel who have been involved in the *Alexander* case, including Harmeet Dhillon, the Assistant Attorney General for the Civil Rights Division, on the other. To the extent that any such communications exist, Respondent should log them and prepare them for *in camera* review. Likewise, given the timing of Ms. Dhillon's initial letter to Fulton County, Exh. 1, and the timing of Mr. Olsen's appointment, both of which took place in October 2025, Respondent should be directed to identify calendar entries between October 2025 through today's date, reflecting meetings between Mr. Olsen (or members of DOJ's criminal division who were involved with the search warrant and the related investigation) and Ms. Dhillon and her staff (or others working on the *Alexander* matter), as well

as meetings between Mr. Olsen and Mr. Albus, and meetings between Mr. Albus and Ms. Dhillon.

Given Mr. Olsen's role, his statements since 2020, public statements from AAG Dhillon, the timing of the letter, and the rapid switch to a search warrant when the *Alexander* civil suit was challenged, the Court was correct to inquire about Respondent's actions. To ensure consideration of the facts pertinent to that inquiry and the parties' dispute, the Court should direct Respondent to supplement the record with additional evidence.

## CONCLUSION

For the reasons noted above, the Court should direct Respondent to provide a more complete answer to the questions posed by the Court at the March 27, 2026, hearing and to produce the information identified above.

Respectfully submitted, this 30th day of March, 2026.

/s/ Y. Soo Jo                                      /s/ Kamal Ghali
Y. Soo Jo                                          Kamal Ghali
Georgia Bar No. 385817                             Georgia Bar No. 805055
OFFICE OF THE FULTON                               Michael C. Duffey
COUNTY ATTORNEY                                    Georgia Bar No. 710738
141 Pryor St. SW, Suite 4038                       CHAIKEN GHALI LLP
Atlanta, Georgia 30309                             One Atlantic Center
Tel.: (404) 612-0246                               1201 W. Peachtree St. NW, Suite 2300
soo.jo@fultoncountyga.gov                          Atlanta, Georgia 30309
                                                   Tel.: (404) 795-5005
                                                   kghali@chaikenghali.com
                                                   mduffey@chaikenghali.com

9

/s/ Abbe David Lowell
Abbe David Lowell*
John Bolen*
LOWELL & ASSOCIATES, PLLC
1250 H Street NW
Washington, D.C. 20005
Tel.: (202)-964-6110
jbolen@lowellandassociates.com
alowellpublicoutreach@
lowellandassociates.com

/s/ Stephen Jonas
Stephen Jonas*
Norman Eisen*
DEMOCRACY DEFENDERS FUND
600 Pennsylvania Avenue SE
Suite 1580, Washington, D.C. 20003
Tel.: (202) 594-9958
steve@democracydefenders.org
norman@democracydefenders.org

*Counsel for Petitioners Robert L. Pitts, Chairman, Fulton County Board of Commissioners; Fulton County Board of Registration and Elections; Fulton County, Georgia; and Che Alexander, Clerk of Court*

*\*Admitted pro hac vice*

## CERTIFICATE OF SERVICE

I hereby certify that on this day, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will automatically serve all counsel of record.

This 30th day of March, 2026.

/s/ *Michael C. Duffey*
Michael C. Duffey

11