IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ROBERT L. "ROBB" PITTS, CHAIRMAN,
FULTON COUNTY BOARD OF
COMMISSIONERS; FULTON COUNTY
BOARD OF REGISTRATION AND
ELECTIONS; FULTON COUNTY,
GEORGIA; AND CHÉ ALEXANDER
CLERK OF SUPERIOR COURT,
Petitioners,

Civil Action No.

1:26-cv-00809-JPB

v.

UNITED STATES OF AMERICA,
Respondent

## BRIEF OF CURRENT AND FORMER GEORGIA ELECTION OFFICIALS AS AMICI CURIAE IN SUPPORT OF THE PROBABLE CAUSE AFFIDAVIT AND IN OPPOSITION TO THE AMENDED PETITION

**INTERESTS OF THE AMICI**

The amici are current and past members of the State Election Board, the board of elections in Fulton County (the "FCBRE"), and election boards of other counties whose electors[4] could be adversely affected by the continued abusive conduct

---

[4] The amici are Janice Johnston, M.D., Janelle King, Salleigh Grubbs, as present members of the Georgia State Election Board, Rick Jeffares, as a former Georgia State Senator and former member of the Georgia State Election Board, Mark Wingate and Michael Heekin, as former members of the Fulton County Board of Elections and Registration, and David Hancock, Roy McClain, and

alleged in Special Agent Ray Evans' affidavit (the "Probable Cause Affidavit") discussed in the Petitioners' motion. Each of the amici have experience with or have been thwarted in investigating all the matters referenced in the Probable Cause Affidavit, or both. We are concerned because of the continued presence of interested parties who have conflicted interests in establishing a fair and transparent voting system and because some of the information being presented to this court as factual is not correct and perhaps intentionally misleading. We have sought many of the same documents sought by the United States Department of Justice (the "DoJ") in this case because, without access to those documents, we will be unable to fulfill our legislatively mandated duties to certify elections, conduct investigations, and make recommendations to the State Legislature for improvement.

We note at the outset that the FCBRE is the owner of the documents at issue and the Clerk of the Court is the appropriate custodian. We are concerned by the expressions of possessory interest from the entity styling itself as "Fulton County, Georgia" or for the Fulton County Board of Commissioners or its Chairman to claim similar interest. Elections are operated in Georgia under the exclusive authority of the General Assembly,[5] which has delegated significant duties with respect to

---

Sharlene Alexander, members of election boards of other counties whose citizens are adversely impacted by the duplicate counting of ballots in Fulton County. Each has authorized the filing of this brief.

[5] See Georgia Constitution, Art. II, Sec. II (with respect to Georgia elections) and U.S. Constitution, Art. I, Sec. 4 (granting primary authority over federal elections to the "State Legislature," with a secondary role for the U.S. Congress). Governor Brian Kemp, a former

elections to the State Election Board, and under Local Act No., 250 (1989) to the FCBRE, which is a state entity, not a county entity.[6] Notwithstanding this, we note that the Clerk of Court has recently joined the FCBRE as a "Petitioner" in this matter, although she stated that, "I'm a neutral party…. I don't have an opinion on either side of it."[7]

We have conducted investigations and overseen election issues as directed by law and have attempted to review many of the documents sought by the DoJ. As with the DoJ, we have been frustrated in all our polite and lawful requests for review of those documents, even when the documents were ordered to be produced by court order or are available electronically with the push of a button. There is very little personal information that needs any privacy protection and no protected personal information in the documents being requested that is not routinely the subject of investigation; there are no valid concerns being expressed with respect to the review

---

chairman of the State Election Board, expressly noted the "responsibility of [the State Election] Board to safeguard the confidence [we] must have in our elections." Letter of Governor Brian T. Kemp to State Election Board, p. 2 (Nov. 17, 2021), assigning the responsibility for investigating what became SEB2021-181 to the SEB. The "Home Rule" amendments to the Georgia Constitution *expressly exclude* from the county authority any matters that are preempted by law or "subject of local acts of the General Assembly" or "[a]ction affecting any elective county office." Georgia Constitution, Art. IX, Sec. II, Para. 1(c).

[6] Under the Local Act creating the FCBRE, the FCBRE has the responsibility to "inform and advise the governing authority of the county." Local Act 250, Sec. 9(a)(2)(C) in "Local and special acts and resolutions of the General Assembly of the state of Georgia," vol 2. p. 4577 (1989). https://dlg.galileo.usg.edu/do:dlg_zlgl_500539654 (last accessed March 23, 2026).

[7] C. Groves, "Skeptics said 2020 election boxes were missing. They never asked Fulton," Atl. Journal Const., p. 1 (Mar. 23, 2026) at www.ajc.com/politics/2026/03/skeptics-said-2020-election-boxes-were-missing-they-never-asked-fulton (last accessed Mar. 23, 2026).

of these documents by licensed investigators. There is no reason for the expressions of shock exhibited by the Petitioners, who continue to obstruct the investigations by manufactured claims of outrage over normal government oversight.

The amici have a direct and substantial interest in this matter and in the proper and legal conduct of elections in Georgia. The FCBRE has responsibility for the conduct of elections in Fulton County and the preservation and maintenance of records. Amici who were in oversight positions as members of the FCBRE or the SEB during relevant periods have sought access to the election records at issue to fulfill statutory duties. Those efforts were repeatedly delayed, obstructed, or refused. In all instances, they have been denied access to information to which they were entitled either due to obstruction or through delaying legal tactics, including cases tied in litigation for years on issues such as standing (finally reversed by the Georgia Supreme Court, but the plaintiffs have still not obtained the records in that case after more than five years).[8]

Petitioners have failed to fulfil their duties for the proper care and custody of, and access to, the public records in this case and have intentionally obfuscated issues by claiming spurious privacy issues, asserting dictatorial claims of unaccountability, and needlessly spending hundreds of thousands of dollars of taxpayer funds to avoid accountability.

---

[8] Jeffords v. Fulton Cty. (Case S22C1299, Dec. 20, 2022).

4

The amici therefore present this brief as a friend of this court to join and endorse the needs for the report of the investigation made by Special Agent Evans in connection with the Probable Cause Affidavit and the exercise of a search warrant to overcome this obstruction.

### OUR EXPERIENCE

Issues with respect to the conduct of the 2020 General Election were present in all counties in Georgia even before the close of the polls on Election Day in 2020, but they reached a crescendo in Fulton County. On election night, one of the amici, Mr. Mark Wingate, an FCBRE memberand were given unsatisfactory responses to the questions raised with respect to the election, including the low turnout of voters on Election Day (which subsequently became a much larger turnout) and the lack of any signature verification for mail-in ballots, even though signature verification was mandated by law. The FCBRE staff ultimately confirmed to Mr. Wingate that no signature verification had been done in the 2020 General Election. His questions about the accuracy of the voter registration files were never answered.

In the 2020 General Election, mail-in ballots accounted for 148,319 ballots in Fulton County, or almost 30% of the total. The 2020 Election was unique because of the outbreak of Covid-19, with many more mail-in votes than normal, and many more absentee ballots and absentee ballot applications mailed than would normally be the case. It was the first election in which "drop boxes" were used; allegations of

5

impropriety in the use of those drop boxes abounded and have not been addressed. The Secretary of State had entered into a consent decree making signature verification by individuals more convoluted than normal. Mr. Wingate and Dr. Kathleen Ruth, another member of the FCBRE, were appropriately alarmed by the response of the FCBRE staff.

Because the questions asked by Dr. Ruth and Mr. Wingate remained unanswered, each of them voted not to certify the results of the Fulton County elections, but the election was certified over their objections.[9] Mr. Wingate has subsequently been asked to give depositions and affidavits in ongoing litigation over these unsolved issues despite the fact that he resigned from the FCBRE more than three years ago. Michael Heekin, a former member who served on the FCBRE more recently, also joins this brief to allow this investigation to proceed.

David Hancock is a member of the Gwinnett County elections board. Roy McClain is a member of the Spalding County elections board. Sharlene Alexander is a member of the Fayette County elections board. Messrs. Hancock and McClain and Ms. Alexander have an interest because electors in their counties could be adversely affected and denied equal protection by the failure of Fulton County to

---

[9] Under current interpretations of the Georgia courts, a vote not to certify elections would be at least a misdemeanor and would subject Dr. Ruth and Mr. Wingate to fines and potential jail terms. *Adams v. Fulton County*, Civ. No. 376 Ga.App. 288 (2025); *see* O.C.G.A. §§ 21-2-492, 21-2-595, and 21-2-599. Fortunately for them, the law was not so interpreted at that time.

correctly and uniformly follow election procedures and the FCBRE's resistance to statutory oversight by state and federal officials.

Dr. Janice Johnston and Me ses. Janelle King and Salleigh Grubbs are current members of the Georgia State Election Board (the "SEB"). They have been or currently are seeking access to the documents at issue in this case to fulfill their statutory duties to investigate.

## UNINVESTIGATED ISSUES REQUIRING ACCESS TO DOCUMENTATION

One complaint to the SEB (SEB2023-025) alleged numerous violations, including serious allegations of ballot stuffing, duplicate ballots, and missing ballot images. Another complaint alleged the failure to maintain certified records (tabulator tapes) for all early voting (316,838 ballots or 60% of all ballots cast in Fulton County). Yet another complaint, validated by Governor Brian Kemp, noted that batch cover sheets in the election recounts had been falsified to add nearly 7,000 votes to the totals, based on non-existent ballots. During the course of these complaints, Nadine Williams, the Executive Director of the FCBRE, confirmed that all ballot images from Election Day were deleted. Sloppy records management is one thing; deleting election records is a violation of state and federal law.

SEB2023-025 (filed July 8, 2022) alleged that there were 17,852 missing ballot images, an assessment confirmed by election law experts at the University of California-Berkeley and the University of South Carolina. Dr. Johnston has reviewed

the electronic files confirming the count of missing ballot *images* but cannot verify whether there are missing ballots without seeing the ballots.

SEB2023-025 also verified 3,930 duplicated ballots apparently created by selecting portions of previously scanned batches to create new batches of ballots which were then scanned a second time. Ballots duplicated in this manner would indicate intentional conduct to add ballots to the recount. But that cannot be verified for investigation without a review of the ballots. Without more information, standards for future recounts cannot be identified.

SEB2023-025 also noted 20,713 ballots were counted as votes despite the fact that there was no or scant evidence of the provenance of those ballots. That provenance cannot be confirmed or denied without further review of those ballots, the numbered voter lists, and possibly more information that has not yet been found.

## OBSTRUCTION AND MISINFORMATION

Many of these complaints were not evident until after the "cast vote records" were released by Fulton County in mid-2021 and the complaints to the SEB were held up in investigation by the Secretary of State's investigative staff until 2024. There has been no explanation as to why so many complaints filed with the SEB were backlogged in SOS investigation for many years. Further, when the Secretary of State's general counsel, Charlene McGowan, presented the results of the investigation of SEB2023-025, she falsely claimed that the ballot images were not

8

retained because they were not required to be maintained in the 2020 election. Later, she refused to allow Dr. Johnston to review the files containing the ballot images from the recount unless Dr. Johnston agreed to vote to close the SEB2023-025 investigation. Dr. Johnston did not agree to that demand and after much resistance, she was able to review the electronic files in a confined space on a dedicated terminal without access to the "exhibit" that had initially been made part of the Secretary's of State's report. What she saw in that environment shocked her as the files had been modified after the election, the vast majority of precinct counts did not match the reported totals, and the files had been visibly altered after the election (many were missing the required "secured hashtag algorithm" files ("SHA files") that are needed to verify that the files had not been modified).

Ms. Julie Adams is a current member of the FCBRE and has repeatedly asked for documentation to validate the elections that she has had responsibility to supervise. Because she asked for clarification from the courts as to whether she was required to certify an election when she had no basis for doing so, Petitioner Robb Pitts has retaliated against her exercise of a right to legal redress and refused to allow her re-appointment to the FCBRE.

On October 4, 2024 and again on November 5, 2025, the SEB issued subpoenas (the "first and second subpoenas," respectively) to the FCBRE under its authority under O.C.G.A § 21-2-31. Rather than complying with the first subpoena,

9

the Executive Director and Chairman of the FCBRE, without authorization from the FCBRE, filed a lawsuit to quash the first subpoena; after more than a year of litigation, the FCBRE, through counsel, made an offer to comply with the first subpoena by copying documents and sending a bill for more than $435,000 to the SEB. The FCBRE has not responded to the second subpoena and ignored the legal process altogether.

The SEB's position has been and remains that this demand for compensation is unreasonable because these documents were required to be maintained under the Election Code and the rules and regulations under the Election Code, as well as the Georgia Records Act. *See* O.C.G.A. §50-18-94 (requiring retention and orderly preservation of "adequate and proper documentation ... designed to furnish the information necessary to protect the legal rights of the government and persons with interest" and to provide for the "economic and efficient management of records").

FCBRE's response has been mercurial and is the cause of great frustration and in fact, the need for the Search Warrant. After initial claims concerning standing, sovereign immunity, and state agency three-card Monte failed (who is the correct party for a lawsuit to hold a government agency accountable in Georgia?), FCBRE claimed the request was burdensome because it would lead to searching more than 750 boxes. Or more than 700 boxes. Calculations of the cost for such a search have varied based on the number of boxes that have been identified as existing to be

10

searched. In any event, it appears that only 653 boxes were turned over to the DoJ in response to the Search Warrant, which we assume have been inventoried as required by Federal regulations covering seized property. In other litigation, the Clerk has confirmed through counsel that not all boxes of 2020 election materials were seized by the FBI, but no one – including Mr. Pitts, the Clerk of Court, or the FCBRE – has explained why material was retained or given an inventory explaining the volume of the retained material. See Favorito v. Wan, Fulton Superior Court Case No. 2020CV343938, *Fulton County Clerk of Superior and Magistrate Court's Response to Jeffords' Notice of Filing and Motion to Preserve any Unseized or Returned 2020 Election Records*, filed March 6, 2026, pp. 2-4.

This experience raises concerns of truthfulness and possible financial misrepresentation. Certainly, there is no confidence in the Petitioners' capacity to engage in basic record keeping.

In addition, the FCBRE has made false and misleading claims to the SEB regarding the functionalities of election equipment. These claims, and the aforementioned false claims with respect to the lack of any requirement to retain ballot images, have been repeated in sworn declarations and related filings.

11

Petitioners' conduct demonstrates a callous disregard for the maintenance of paper records required by Georgia law[10] and federal law.[11] It represents a callous disregard for election laws, the rights of citizens of Fulton County, as well as citizens in other counties in Georgia, and disregard for the laws and the Constitution. The resistance to basic oversight is inconsistent with basic principles of a government accountable to the people. Such conduct weighs heavily against equitable relief for the Petitioners and we trust will ultimately lead to the ability to complete the necessary investigations still open. Returning the materials would risk loss, alteration, or further delay.

Public confidence requires preservation of evidence and independent review. This has been true since the founding of our Republic and is especially true now to restore the confidence of the citizens of Georgia in the fairness and accountability of the Georgia voting systems. The Government's retention of these materials advances those interests and we support the dismissal of Petitioners' motion.

---

[10] O.C.G.A. §§ 72, 73, 585
[11] HAVA, Sec. 301(a)(2), *codified at* 52 U.S.C. §21081(a)(2)

12

Respectfully submitted, this 25th day of March, 2026

Dr. Janice W. Johnston
c/o Georgia State Election Board
2 Martin Luther King Jr. Drive
Atlanta, Georgia 30334
770-701-4643
jjohnston@seb.ga.gov

## CERTIFICATE OF SERVICE

I certify that on this date a true copy of the foregoing document was filed with

the Clerk of Court by in person delivery to the Clerk of Court and by email to counsel

for Petitioners and Respondent.

This 25th day of March, 2026.

_____
Dr. Janice W. Johnston

14

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations and formatting requirements of the Local Rules of the Northern District of Georgia.

_____
Dr. Janice W. Johnston

This experience raises concerns of truthfulness and possible financial misrepresentation. Certainly, there is no confidence in the Petitioners' capacity to engage in basic record keeping.

In addition, the FCBRE has made false and misleading claims to the SEB regarding the functionalities of election equipment. These claims, and the aforementioned false claims with respect to the lack of any requirement to retain ballot images, have been repeated in sworn declarations and related filings.

Petitioners' conduct demonstrates a callous disregard for the maintenance of paper records required by Georgia law[10] and federal law.[11] It represents a callous disregard for election laws, the rights of citizens of Fulton County, as well as citizens in other counties in Georgia, and disregard for the laws and the Constitution. The resistance to basic oversight is inconsistent with basic principles of a government accountable to the people. Such conduct weighs heavily against equitable relief for the Petitioners and we trust will ultimately lead to the ability to complete the necessary investigations still open. Returning the materials would risk loss, alteration, or further delay.

Public confidence requires preservation of evidence and independent review. This has been true since the founding of our Republic and is especially true now to restore the confidence of the citizens of Georgia in the fairness and accountability

---

[10] O.C.G.A. §§ 72, 73, 585
[11] HAVA, Sec. 301(a)(2), *codified at* 52 U.S.C. §21081(a)(2)

of the Georgia voting systems. The Government's retention of these materials advances those interests and we support the dismissal of Petitioners' motion.

Respectfully submitted, this 25th day of March, 2026

_____

Dr. Janice W. Johnston
c/o Georgia State Election Board
2 Martin Luther King Jr. Drive
Atlanta, Georgia 30334
770-701-4643
jjohnston@seb.ga.gov

]

17

## CERTIFICATE OF SERVICE

I certify that on this date a true copy of the foregoing document was filed with the Clerk of Court by in person delivery to the Clerk of Court and by email to counsel for Petitioners and Respondent.

This 25th day of March, 2026.

_____
Dr. Janice W. Johnston

18

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations and formatting requirements of the Local Rules of the Northern District of Georgia.

_____
Dr. Janice W. Johnston