**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| Robert L. Pitts, Chairman, Fulton County Board of Commissioners, Fulton County Board of Registration and Elections, Fulton County, Georgia, and Che Alexander, Clerk of Fulton County Superior Court, <br><br> *Petitioners*, <br><br> v. <br><br> United States of America, <br><br> *Respondent*. | Case No. 1:26-CV-00809 |

**UNITED STATES OF AMERICA'S
OPPOSITION TO
MOTION TO SUPPLEMENT EVIDENTIARY RECORD**

**INTRODUCTION**

Petitioners belatedly seek internal information about an ongoing criminal investigation. Their motion fails for numerous reasons and only confirms that Petitioners have not satisfied their burden under Rule 41(g).

*First*, Petitioners' request is untimely because Petitioners just as easily could have requested the information they seek before the evidentiary hearing. *Second*, the request seeks information that is irrelevant because Eleventh Circuit caselaw holds that there is no constitutional violation—let alone a callous disregard of constitutional rights—in using criminal process to obtain materials, regardless of when or whether those materials had been sought civilly. Petitioners certainly cannot complain that the United States went through the *more* arduous process of obtaining a search warrant. *Third*, the information Petitioners seek is privileged, as exemplified by their requests for evidence of "first-hand information about the search warrant's origins" and internal communications about the case. Doc. # 71 ("Mot.") at 2.

The Court should deny this new motion, deny Petitioners' Rule 41(g) motion, and dismiss this case.

1

## ARGUMENT

### I.     Petitioners' Motion Is Untimely.

The Court should deny Petitioners' motion at the outset because it comes too late. Courts do not typically entertain evidentiary submissions *after* evidentiary proceedings have concluded, absent a change of circumstances or some other extraordinary justification. Where a court sets a deadline and an evidentiary request is "not timely filed, . . . this alone [i]s a sufficient basis for the district court to reject" the request. *See Williamson Oil Co., Inc. v. Philip Morris USA*, 346 F.3d 1287, 1323 (11th Cir. 2003) (discussing untimely addendum to expert report); *cf. Artistic Entertainment, Inc. v. City of Warner Robins*, 331 F.3d 1196, 1202-1203 (rejecting a belated evidentiary motion raising "issues [that] could have been addressed much earlier in the litigation").

Petitioners have filed what amounts to a motion to compel *after* evidentiary proceedings have concluded. Specifically, Petitioners move the Court to order the United States to "supplement the record with additional information" about the early stages of a criminal investigation or, "at a minimum, identify for the Court the date of the referral and the date upon which any criminal investigation began." Mot. 2. According to Petitioners, this information is needed to determine whether there has been a "callous disregard of Petitioners' rights." *Id.* at 1.

2

Petitioners could have sought this information weeks ago. Nothing changed during or after the evidentiary hearing, except Petitioners' strategy. Petitioners cite no new circumstances or other extraordinary reasons that excuse their failure to seek this evidence before the hearing. There are none.

## II.    The Information That Petitioners Seek Is Irrelevant.

The Court should deny Petitioners' motion for the independent reason that the evidence they seek is irrelevant to the Rule 41(g) inquiry.

As all parties agree, Petitioners must show a "callous disregard of their constitutional rights"—among other requirements—to establish this Court's equitable jurisdiction. *Trump v. United States*, 54 F.4th 689, 698 (11th Cir. 2022). Petitioners argue that the information they seek would be relevant to whether the search warrant "was merely a pretext for expediting access to records that Respondent was already pursuing through civil litigation." Mot. 2.

Petitioners' argument, even if it had evidentiary support, could not possibly establish callous disregard of their constitutional rights. It is not clear which constitutional right Petitioners purport to assert—their motion does not mention the Constitution at all. Nor do Petitioners cite any authority or caselaw suggesting that obtaining a judicially authorized search warrant to expedite access to evidence of potential federal criminal violations violates the Fourth Amendment, or any other constitutional right, even where the United States has been unable to access

3

the same evidence (so far) in civil litigation. As far as the United States can tell, no such authority exists.

To the contrary, the Eleventh Circuit has recognized that civil and criminal investigations often "proceed at roughly the same time and share[] information"—"[t]hose facts are typical of parallel governmental investigations, which are common and generally proper." *United States v. Goldstein*, 989 F.3d 1178, 1202 (11th Cir. 2021). "It would stultify enforcement of federal law to require a governmental agency . . . to choose either to forgo recommendation of a criminal prosecution once it seeks civil relief, or to defer civil proceedings pending the ultimate outcome of a criminal trial." *United States v. Kordel*, 397 U.S. 1, 11 (1970).

To be sure, "[a] due process problem might arise in the context of parallel investigations if . . . two government arms collude in bad faith," but such "bad faith collusion generally involves affirmative misrepresentations or trickery or deceit by the investigating authority to get the defendant to voluntarily turn over documentary or physical evidence relevant to the criminal investigation." *Goldstein*, 989 F.3d at 1202 (internal quotation marks omitted)*; see United States v. Edwards*, 526 F.3d 747, 759 n.36 (11th Cir. 2008) (explaining that caselaw addressing collusion between agencies to deny constitutional rights has "rest[ed] on a showing of prosecutorial misconduct" that presumably violates such rights).

Petitioners allege nothing of the sort.  Petitioners have never turned anything over voluntarily, let alone due to "trickery or deceit" by the United States in any civil proceeding. Moreover, the United States used criminal process to get the records—a *higher* burden than obtaining civil discovery. Satisfying a higher burden is not a violation of any right, let alone a callous violation. And theories "that a constitutional non-violation plus a constitutional non-violation may equal a constitutional violation . . . do not work." *FCC v. Consumers' Research*, 606 U.S. 656, 696 (2025).

Even setting aside the legal irrelevance of the information Petitioners seek, Petitioners' theory does not make sense. Petitioners assert that there was a "rapid switch to a search warrant when the . . . civil suit was challenged." Mot. 9. But the routine filing of a motion to dismiss in civil litigation is no surprise, and certainly not an adverse event that would prompt a change in strategy.

Further, the United States then—and still now—has every reason to think it would ultimately prevail in the now-stayed civil case.[1] As Petitioners themselves have emphasized, all records subject to retention under 52 U.S.C. § 20701 must be

---

[1] Notably, in the civil case, the Clerk did "not oppose [the United States's] 'Motion to Stay Case Pending Outcome of Potential Criminal Proceedings'" and "agree[d] that a stay . . . pending the resolution of the separate proceedings involving [the] documents at issue . . . would be appropriate." *United States v. Alexander*, No. 1:25-cv-070804, Doc. # 29 at 1 (N.D. Ga. Feb. 10, 2026).

made available to "the Attorney General or [her] representative" "for inspection, reproduction, and copying" upon a written demand. 52 U.S.C. § 20703. The motion to dismiss in the civil case argued that 52 U.S.C. § 20701 covers only records relating to "voter registration requirements." *Alexander*, Doc. # 18-1 at 1 (N.D. Ga. Jan. 5, 2026). But courts have long held that 52 U.S.C. § 20701 "encompasses, among other things, voting registration records, poll lists, applications for absentee ballots, ballot envelopes, tally sheets, computer programs used to tabulate votes, as well as the ballots themselves." *McIntyre v. Morgan*, 624 F. Supp. 658, 664 (S.D. Ind. 1985). That follows from the plain text, which covers "all records and papers . . . relating to any . . . act requisite to voting." 52 U.S.C. § 20701.[2]

In short, even accepting Petitioners' theories and hypotheticals, Petitioners still fall far short of showing that the Department of Justice "somehow colluded to deny [them their] constitutional rights" by pursuing the more arduous path of obtaining a warrant (twice), *Edwards*, 526 F.3d at 759, which of course further means Petitioners fail to show a *callous disregard* of such rights.

---

[2] The motion to dismiss also contends that the Attorney General's federal statutory authority is subject to Georgia state law requiring that the records be sealed, such that the Attorney General must "file a motion to unseal those materials in Superior Court." *Alexander*, Doc. # 18-1 at 2 (N.D. Ga. Jan. 5, 2026). Under the Supremacy Clause, Georgia law cannot limit the Attorney General's federal statutory authority. U.S. Const. Art. VI, cl. 2.

Finally, the information that Petitioners seek is also irrelevant because of the many incurable defects in Petitioners' Rule 41(g) motion.  That includes (but is not limited to) Petitioners' lack of need for the original materials and lack of irreparable harm, as exemplified by the County's Director of Registration and Elections stating *during the seizure* that the United States could "make paper airplanes" with the records for all she cared.

Because the information Petitioners seek is not relevant to the Rule 41(g) inquiry, the Court should deny Petitioners' request.

## III.   The Information That Petitioners Seek Is Privileged.

Petitioners' motion fails for the additional reason that it seeks confidential information about DOJ deliberations concerning an ongoing criminal investigation—information that is clearly privileged, as the Court already indicated in its Order quashing Petitioners' subpoena issued to SA Evans. *See* Doc. # 65.

The "law enforcement investigatory privilege protects from disclosure files and reports of criminal and civil law enforcement investigations." *FEC v. Rivera*, 335 F.R.D. 541, 547 (S.D. Fla. 2020) (citing *United States v. Van Horn*, 780 F.2d 1492, 1507 (11th Cir. 1986)). "The purpose of the privilege is to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witnesses and law enforcement personnel, to safeguard the privacy of

individuals involved in an investigation, and otherwise prevent interference in an investigation." *Id.* (internal quotation marks and emphasis omitted). This Court has already recognized "the breadth of the law enforcement privilege" in this case. Doc. # 65 at 13.

Separately, "[t]he most frequent form of executive privilege raised in the judicial arena is the deliberative process privilege; it allows the government to withhold documents and other materials that would reveal advisory opinions, recommendations[,] and deliberations comprising part of a process by which governmental decisions and policies are formulated." *In re Sealed Case*, 121 F.3d 729, 736 (D.C. Cir. 1997) (internal quotation marks omitted).

To be sure, both the law enforcement investigatory privilege and the deliberative process privilege are "qualified." *Van Horn*, 789 F.2d at 1507; *In re Sealed Case*, 121 F.3d at 737. Although courts consider numerous factors, the analysis boils down to a "balancing of the evidentiary need against the harm that may result from disclosure." *In re Sealed Case*, 121 F.3d at 738; *accord Van Horn*, 789 F.2d at 1508 (assessing need for evidence against risks of disclosure).

Here, the information that Petitioners seek is clearly privileged. This Court has already recognized that the disclosure of "information concerning the process and scope of the DOJ's investigation" would "interfere with enforcement proceedings or disclose investigative techniques and procedures the effectiveness

8

of which would thereby be impaired." Doc. # 65 at 15 (quotation omitted). Yet Petitioners want a record of supposed discussions regarding the same investigation. That information, to the extent it exists, would plainly bear on the government's law enforcement techniques and procedures, as well as internal deliberations comprising part of a process by which governmental decisions have been formulated. Any disclosure in these circumstances would chill executive branch officials from discussing important investigations, parallel or not. *See In re Sealed Case*, 121 F.3d at 738 (courts consider the "possibility of future timidity by government employees" (internal quotation marks omitted)). And there is no countervailing need for the information: as noted above, this information is immaterial to any legal issue and could not change Petitioners' failure to establish this Court's equitable jurisdiction.

9

## CONCLUSION

For the foregoing reasons, the Court should deny Petitioners' motion to supplement the evidentiary record and should dismiss this case.

Respectfully submitted,

STANLEY E. WOODWARD, JR.
*Associate Attorney General*

THOMAS C. ALBUS
*Special Attorney to the Attorney General*
*and United States Attorney for the*
*Eastern District of Missouri*
Missouri Bar No. 46224
Thomas Eagleton U.S. Courthouse
111 S. 10th Street, 20th Floor
St. Louis, MO 63102
(314) 539-2200

A. TYSEN DUVA
*Assistant Attorney General – Criminal*
*Division*

R. TRENT MCCOTTER
*Associate Deputy Attorney General*

/s/ MICHAEL WEISBUCH
MICHAEL WEISBUCH
*Senior Counsel to the Associate Attorney*
*General*

PETER L. COOCH
*Trial Attorney/Senior Counsel, Criminal*
*Division*

10

## Certificate of Compliance

I hereby certify, pursuant to Local Rules 5.1 and 7.1D, that the foregoing brief has been prepared using Book Antiqua, 13 point font.

*/s/* MICHAEL WEISBUCH
MICHAEL WEISBUCH
*Senior Counsel to the Associate Attorney*
*General*
