**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| ROBERT L. "ROBB" PITTS, CHAIRMAN, FULTON COUNTY BOARD OF COMMISSIONERS; FULTON COUNTY BOARD OF REGISTRATION AND ELECTIONS; FULTON COUNTY, GEORGIA; and CHE ALEXANDER, CLERK OF COURT, <br><br> Petitioners, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Respondent. | Civil Action No. 1:26-CV-00809-JPB |

**PETITIONERS' MOTION TO COMPEL RESPONDENT TO COMPLY
WITH REQUEST FOR INFORMATION**

The events now established in the record raise questions (including ones asked by the Court) about the purpose and timing of the search warrant application challenged in this action. Specifically, Respondent's assertion that it was pursuing an "ongoing criminal investigation" increasingly appears to be a pretext to acquire records that this Administration was unable to quickly secure via the civil litigation process. Notably, Respondent does not dispute that neither the FBI nor DOJ initiated this criminal investigation; it was initiated by a twice-sanctioned attorney who now works at the behest of the White House. So, following the Court's most recent order, Petitioners followed the Court's suggestion and submitted a very narrow *Touhy*

1

request about the timing of the investigation, an issue that this Court acknowledged is directly relevant to the callous disregard standard in the Rule 41(g) motion.

Specifically, Petitioners sought information regarding: (1) the date on which "Kurt Olsen refer[red] the criminal investigation to the Federal Bureau of Investigation," (2) the date on which "the Federal Bureau of Investigation open[ed] the criminal investigation," (3) the date on which "DOJ first beg[a]n drafting the Affidavit," and (4) whether there were "any meetings or communications . . . in which DOJ officials . . . discussed using a criminal search warrant in response to delays in the case of *United States v. Alexander*, No. 1:25-CV-07084 (N.D. Ga. filed Dec. 11, 2025) or the Civil Rights Division's requests for Fulton County's 2020 election records . . . ." Exhibit A, Letter from K. Ghali to A. Duva (April 14, 2026) at 3.

Respondent, without articulating any reasonable basis, then refused to provide this relevant information in response to Petitioners' request regarding the issues raised at the March 27, 2026, hearing. *See* Exhibit B, Letter from T. Albus to K. Ghali (Apr. 17, 2026) ("*Touhy* Denial").

Despite refusing to answer those questions, Respondent offered this self-serving statement: "[I]n the interests of putting an end to this inquiry so the Department can devote its full attention to law-enforcement duties, and without waiving any arguments or privileges, I can disclose that Kurt Olsen sent a formal

criminal referral to the Department before Che Alexander even filed her motion to dismiss the *Alexander* case on January 5, 2026 (ECF No. 18). No further disclosures are authorized." Ex. B at 2.

In making this one, vague statement, Respondent opted for secrecy over transparency, deciding to selectively disclose information when convenient, while invoking an amorphous privilege when it suits Respondent's litigation needs. Petitioners therefore respectfully move this Court for an Order compelling Respondent to answer the questions posed in Petitioners' April 14, 2026 Request.[1]

1.      **Respondent's *Touhy* Denial Is Its Latest Effort to Avoid Answering Relevant Questions That the Court Raised Nearly a Month Ago.**

During the March 27, 2026, hearing in this matter, the Court questioned counsel for both parties about the timing of the January 28, 2026, search warrant in relation to pending civil litigation regarding Petitioner Fulton County's election records. *See, e.g.*, Transcript (Doc. 76) at 70–72. Because Respondent's counsel was unable to answer those questions, Petitioners filed a Motion for Additional Evidence. *See* Pet'rs' Mot. for Additional Evid. (Doc. 71). The Court directed the parties to

---

[1] Petitioners note that their Request offered Respondent the choice of a range of procedural vehicles to submit answers. *See* Ex. A at 1 ("Petitioners are willing to confer with Respondent on how to provide the requested information, *e.g.*, by a deposition on written questions or through the production of documents sufficient to show the answer to the questions . . . to name two options."). But because Respondent declines to issue answers under any procedural vehicle, any effort to more formally serve legal process on Respondent would be futile. *See* Ex. B.

meet and confer regarding Petitioners' motion, but during the April 1, 2026, meeting, Respondent declined to supply any information or any answers in response to any of Petitioners' requests or any subset of those requests. *See* Pet'rs' Notice (Doc. 73). The Court subsequently issued an Order on Petitioners' motion, which provided in pertinent part: "[T]he Court is prepared to receive any additional evidence concerning these topics that Petitioners are able to obtain. If Petitioners gather such information, via a *Touhy* request or otherwise, they may submit it for the Court's consideration . . . ." April 13, 2026, Order (Doc. 88) at 4.

In consideration of the Court's Order, on April 14, 2026, Petitioners sent Respondent a *Touhy* request seeking answers to the questions the Court raised during the hearing. *See* Ex. A at 3. Petitioners requested a response by April 16, 2026. *Id.* At approximately 4:45 p.m. on April 17, 2026, Respondent replied that it would not answer any of the questions. *See* Ex. B.

2.      **Because Respondent's *Touhy* Denial Is an Arbitrary and Capricious Decision that Evidences a Clear Error of Judgment and a Failure to Consider the Relevant Factors, the Court Should Compel Respondent to Comply with Petitioners' Request for Information.**

As an initial matter, Petitioners note that this Court has broad discretion to compel Respondent to provide the information sought. Indeed, Rule 41(g) requires that the Court "receive evidence on any factual issue necessary to decide the motion," and the Court has previously indicated that the information sought is relevant. *See* Tr. at 70–71; April 13, 2026, Order at 4 n.3; *cf. Smith v. Psych. Sols.,*

*Inc.*, 750 F.3d 1253, 1262 (11th Cir. 2014) ("District courts have unquestionable authority to control their own dockets. This authority includes broad discretion in deciding how best to manage the cases before them.") (internal quotation marks and citations omitted).

Petitioners' *Touhy* request seeks answers to four questions. *See* Ex. A at 3. Three of those questions[2] concern the dates of specific events in Respondent's "ongoing criminal investigation" that purportedly justified the seizure of Petitioners' election records. *See id.* From the evidence in the record, it is apparent that the three dates requested all fall between October 1, 2025,[3] and January 28, 2026. *See* Resp. Hearing Exhs. 1, 2. But Respondent has maintained that *any* answer to Petitioners' questions is "not appropriate." *See* Ex. B at 2.

Respondent's purported justifications for denying Petitioners' *Touhy* request fail to provide even an arguable basis for Respondent's position. First, Respondent

---

[2] The fourth question simply asks whether there were meetings or communications in which DOJ officials discussed using a criminal search warrant in response to delays in civil litigation, and if so, the date of and parties to those meetings or communications. Ex. A at 3. Petitioners did not request the specific contents of those meetings or communications. *See id.*

[3] It is undisputed that Kurt Olsen was appointed the "Director of Election Security and Integrity," as described in the search warrant affidavit, in October of 2025. *See* Affidavit ¶ 6; *see also* Josh Dawsey, et al., *White House Hires 'Stop the Steal' Lawyer to Investigate 2020 Election Claims*, Wall St. J. (October 17, 2025), https://www.wsj.com/politics/elections/white-house-hires-stop-the-steal-lawyer-to-investigate-2020-election-claims-6395d322.

recycles its prior arguments[4] that the request is untimely and irrelevant, Ex. B at 2, even though the Court's recent Order already rejected those arguments. *See* April 13, 2026, Order at 4 (explaining that the Court will receive additional evidence regarding the pertinent topics); *id.* at 4 n.3 ("Respondent contends that Petitioners' request for additional information is irrelevant and untimely. As to both concerns, Petitioners' request is, at least in part, in response to certain inquiries that were not raised until the hearing itself.") (citation omitted).

Second, Respondent claims that "certain of the information Petitioners seek is privileged." Ex. B at 2. But "[a]ny government claim of privilege should . . . specify the particular privilege claimed and the basis for its assertion." *Zenith Radio Corp. v. United States*, 764 F.2d 1577, 1581 (Fed. Cir. 1985); *cf. In re Sealed Case*, 856 F.2d 268, 271 (D.C. Cir. 1988) (identifying three requirements to sustain a claim of law enforcement investigatory privilege). Here, Respondent declined to even identify what "privilege" it purported to invoke—likely because there is no privilege that allows the DOJ to withhold this narrow set of answers related to an ongoing criminal investigation.

---

[4] Respondent also reiterates its same, tired argument that providing any answers would be inappropriate because Petitioners should not prevail on their Rule 41(g) motion. *See* Ex. B at 2. As the Court already explained in its Order denying Respondent's Motion to Vacate, that argument fails here. *See* Mar. 20, 2026, Order at 6 ("[R]egardless of Respondent's arguments to the contrary, the Court finds that the parties dispute issues of fact in this case and that the resolution of those disputed issues will be necessary to decide the Rule 41(g) motion.").

To the extent the *Touhy* Denial attempts to assert the law enforcement privilege, this Court should reject that attempt. The law enforcement privilege "is a *qualified* privilege, not an absolute privilege." *In re The City of New York*, 607 F.3d 923, 940 (2d Cir. 2010) (emphasis in original); *accord Coughlin v. Lee*, 946 F.2d 1152, 1159–60 (5th Cir. 1991). Binding precedent recognizes that "while pendency of a criminal investigation is a reason for denying discovery of investigative reports, this privilege would not apply indefinitely . . . ." *Swanner v. United States*, 406 F.2d 716, 719 (5th Cir. 1969). The court in *Swanner*, evaluating a claim of privilege concerning events that transpired three years prior, stated, "it is doubtful that [the privilege] would apply here so long after the events in question." *Id.* But here, the government invokes "privilege" as a reason to withhold basic information about an investigation into events that transpired more than five years ago—beyond the statutes of limitations for any potential offenses.

Moreover, the law enforcement privilege is intended to protect confidential sources, investigative files in ongoing investigations, information concerning law enforcement techniques, or information that would endanger law enforcement personnel or their ability to conduct an investigation. *See Coughlin*, 946 F.2d at 1159; *In re Dep't of Investigation*, 856 F.2d 481, 483–84 (2d Cir. 1988); *United States v. Winner,* 641 F.2d 825, 831 (10th Cir. 1981). Petitioners seek no such information. To the contrary, the information requested, consisting of three dates

and non-substantive information about communications, is the precise type of information regularly furnished in privilege logs. Respondent's selective refusal to provide even the most basic answer to Petitioners' least intrusive requests shows its unreasonable intransigence. Given the narrow scope of the requests, Respondent cannot come close to carrying its burden of demonstrating that law enforcement privilege applies. *See F.T.C. v. Timeshare Mega Media & Mktg. Grp., Inc.*, No. 10-62000-CIV, 2011 WL 6102676, at \*4 (S.D. Fla. Dec. 7, 2011) ("The proponent of the law-enforcement privilege bears the ultimate burden of demonstrating its applicability.").

Additionally, even when the documents at issue in a discovery request do fall within the realm of the law enforcement privilege, the government may not withhold those documents if the requesting party's need for the documents outweighs the government's interest in confidentiality. *In re U.S. Dep't of Homeland Sec.*, 459 F.3d 565, 570 (5th Cir. 2006). And where there is a dispute, "the district court should review the documents at issue *in camera* to evaluate whether the law enforcement privilege applies to the documents at issue." *Id.*; *accord Application of Eisenberg*, 654 F.2d 1107, 1112 (5th Cir. 1981) ("Privilege questions are determined on the basis of in camera, ex parte examinations of the evidence."). To be clear, in this case, Respondent could provide the information requested without providing a single document.

Further, any assertion of the law enforcement privilege fails unless Respondent satisfies three procedural requirements: "(1) there must be a formal claim of privilege by the head of the department having control over the requested information; (2) assertion of the privilege must be based on actual personal consideration by that official; and (3) the information for which the privilege is claimed must be specified, with an explanation why it properly falls within the scope of the privilege." *In re Sealed Case*, 856 F.2d 268, 271 (D.C. Cir. 1988); *accord Navarro v. Applebee's Int'l, Inc.*, No. 7:10-CV-6HL, 2010 WL 3745905, at *2 (M.D. Ga. Sept. 20, 2010); s*ee also Application of Eisenberg*, 654 F.2d at 1110 n.5 (explaining that the same requirements apply to assertions of state secrets privilege and similar privileges). Here, Respondent has "not complied with the requirements for raising this privilege." *Navarro*, 2010 WL 3745905, at *2. "Like any other privilege, the law-enforcement privilege may be waived." *Timeshare Mega Media*, 2011 WL 6102676, at *7 (citations omitted). In addition to waiving law enforcement privilege, Respondent waived *any* applicable privilege when it (a) declined to assert it in response to the same line of questioning at the evidentiary hearing, *see* Tr. at 70–72, and (b) confirmed in its *Touhy* denial that Kurt Olsen referred the matter to DOJ prior to January 28, 2026, Ex. B at 2.

Finally, Respondent contends that it cannot answer the relevant questions because it "must consider the cumulative effect of others possibly making similar

9

requests." Ex. B at 2. Simply stated, Respondent's opposition is that it cannot provide the tailored information in this case because others might make other requests for information in the future. That is a nonsensical and totally unsupportable basis to deny a proper request. It would be as if an agency said it would not provide information to a proper Freedom of Information Act (FOIA) request today because it might cause others to make FOIA requests in the future. None of the *Touhy* regulations cited in Respondent's denial include "the cumulative effect of others" as a consideration. *See id.* (citing 28 C.F.R. §§ 16.23, 16.26). To the extent Respondent relies on that consideration, its denial is arbitrary and capricious,[5] and the Court should reject it. *See* March 26, 2026, Order ("To determine whether an agency decision was arbitrary and capricious, the reviewing court must consider whether the decision was based on a consideration of *the relevant factors . . . .*") (emphasis added) (internal quotation marks and citation omitted); *see also Motor Vehicle Mfrs.*

---

[5] To preserve their previous argument, Petitioners note here that the arbitrary and capricious standard should not govern requests for discovery where the United States is a party because, among other reasons, *Touhy* provides Respondent no substantive rights where the United States is a party to the litigation. Although the Eleventh Circuit has previously affirmed the validity of *Touhy* regulations generally, those cases generally involve cases in which the United States is *not* a party. *See, e.g.*, *Moore v. Armour Pharmaceutical Co.*, 927 F.2d 1194 (11th Cir. 1991). Petitioners also assert that *United States v. Bizzard* does not govern here because *Bizzard* involved a party's refusal to comply with the *Touhy procedural* regulations, *i.e.*, a *pro se* litigant refused to comply with the procedural requirements at all. 674 F.2d 1382, 1387 (11th Cir. 1982) (rejecting argument that regulations were unconstitutional and finding that "[a]lthough defendant was aware of the regulations . . . he failed to comply with them").

*Assoc. of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) ("Normally an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider . . . ."). In short, Respondent's denial of Petitioners' *Touhy* request is wholly arbitrary, as it is unsupported by any legitimate argument regarding (1) privilege; (2) timeliness; or (3) relevance.

**3.**  **Respondent's Self-Serving Disclosure Demonstrates the Lack of Any Legitimate Interest in Refusing to Answer Petitioners' Questions.**

In addition to the meritless arguments above, the *Touhy* denial concludes with one notable disclosure: "[I]n the interests of putting an end to this inquiry . . . I can disclose that Kurt Olsen sent a formal criminal referral to the Department before Che Alexander even filed her motion to dismiss the *Alexander* case . . . ." Ex. B at 2. But that disclosure invites additional questions: Why can Respondent disclose that Kurt Olsen referred the matter to DOJ prior to January 5, 2026 but not any other date? Would it implicate a law enforcement privilege to disclose that Olsen made the referral prior to January 7? January 6? December 15? November 6? October 8? Why would the disclosure of any date raise any issue at all? Notably, Respondent has not cited any authority suggesting that the United States can substantively withhold information on *Touhy* grounds solely because it helps its litigation position.

No matter the answer, Respondent cannot pick and choose which information to disclose based on whether it is beneficial to Respondent's litigation position. To

the contrary, by selectively disclosing only information that Respondent deems helpful to its position, Respondent has demonstrated the arbitrary and capricious nature of its denial. No principle of law allows it to use the assertion of privilege as both a sword and a shield.

Of course, evidence continues to mount, suggesting that Respondent's "ongoing criminal investigation," is, in reality, a pretext for seizing Fulton County's election records. Among other things, recent media revelations underscore the relevance of the information sought in Petitioners' requests. *See, e.g.*, Doug Bock Clark & Jen Fifield, *Inside Trump's Effort to 'Take Over' the Midterm Elections*, ProPublica (Apr. 13, 2026), https://www.propublica.org/article/trump-midterm-elections-takeover (newly reported information that in late 2025, the former head of the Atlanta FBI field office was forced to resign after his team "[b]ased on their own investigation . . . submitted an affidavit to their superiors at DOJ that did not make a strong enough case to move forward with what [Kurt] Olsen wanted"). Accordingly, the Court should compel Respondent to provide substantive answers to Petitioners' requests.

## 4.   <u>Conclusion.</u>

For the reasons noted above, the Court should direct Respondent to provide a complete answer to the questions posed in Petitioners' Request for Information. Given the current April 27 deadline for the submission of additional evidence,

Petitioners further request that the Court order expedited briefing on this motion pursuant to Local Rule 7.2.

Respectfully submitted, this 21st day of April, 2026.

/s/ Y. Soo Jo
Y. Soo Jo
Georgia Bar No. 385817
OFFICE OF THE FULTON
COUNTY ATTORNEY
141 Pryor St. SW, Suite 4038
Atlanta, Georgia 30309
Tel.: (404) 612-0246
soo.jo@fultoncountyga.gov

/s/ Kamal Ghali
Kamal Ghali
Georgia Bar No. 805055
Michael C. Duffey
Georgia Bar No. 710738
CHAIKEN GHALI LLP
One Atlantic Center
1201 W. Peachtree St. NW, Suite 2300
Atlanta, Georgia 30309
Tel.: (404) 795-5005
kghali@chaikenghali.com
mduffey@chaikenghali.com

/s/ Abbe David Lowell
Abbe David Lowell*
John Bolen*
LOWELL & ASSOCIATES, PLLC
1250 H Street NW
Washington, D.C. 20005
Tel.: (202)-964-6110
jbolen@lowellandassociates.com
alowellpublicoutreach@
lowellandassociates.com

/s/ Stephen Jonas
Stephen Jonas*
Norman Eisen*
DEMOCRACY DEFENDERS FUND
600 Pennsylvania Avenue SE
Suite 1580, Washington, D.C. 20003
Tel.: (202) 594-9958
steve@democracydefenders.org
norman@democracydefenders.org

*Counsel for Petitioners Robert L. Pitts, Chairman, Fulton County Board of Commissioners; Fulton County Board of Registration and Elections; Fulton County, Georgia; and Che Alexander, Clerk of Court*

*Admitted pro hac vice

13

## CERTIFICATE OF SERVICE

I hereby certify that on this day, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will automatically serve all counsel of record.

This 21st day of April, 2026.

/s/ *Michael C. Duffey*
Michael C. Duffey