# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

Robert L. Pitts, Chairman, Fulton
County Board of Commissioners, Fulton
County Board of Registration and
Elections, Fulton County, Georgia, and
Che Alexander, Clerk of Fulton County
Superior Court,

       *Petitioners*,

     v.

United States of America,

       *Respondent*.

Case No. 1:26-CV-00809

## UNITED STATES OF AMERICA'S
## OPPOSITION TO
## MOTION TO COMPEL

## INTRODUCTION

Petitioners continue to seek internal information about an ongoing criminal investigation. Having failed to get discovery, they now seek the same result by challenging the United States's denial of their third *Touhy* request. But even if such a request were procedurally proper, the denial was not arbitrary and capricious for multiple reasons.

*First*, Petitioners are seeking information that is irrelevant. Eleventh Circuit caselaw confirms that parallel civil and criminal proceedings are commonplace. Petitioners still do not explain what constitutional claim or relevant issue their request implicates. An issue does not become legally relevant just because it was discussed during a hearing.

*Second*, Petitioners are seeking information that is clearly protected by both the law enforcement privilege and the deliberative process privilege (the latter of which Petitioners do not even address). For that reason, compelled disclosure of such privileged information regarding the timing of procedural events in a criminal investigation, and the existence and content of meetings and internal communications (if any) relating to a criminal investigation, would be highly unusual.

*Third*, the United States's voluntary disclosure that a criminal referral to the Department occurred before the filing of a motion to dismiss in civil litigation does

not somehow require further disclosure. Until now, Petitioners' entire theory has been that the criminal investigation came about in response to a motion to dismiss in the civil litigation. Although that theory was nonsensical for multiple reasons, the United States provided a limited disclosure to Petitioners—expressly without waiving any privileges—"in the interests of putting an end to this inquiry." Tellingly, Petitioners have now abandoned their motion to dismiss theory. But they continue to waste judicial and party resources by seeking privileged information about an ongoing investigation based on sheer speculation.

*Fourth*, the cumulative impact of this type of request compels denial. It cannot be that the United States must disclose details of an ongoing criminal investigation anytime there is a parallel civil investigation or the media speculates about the motives of the United States.

The Court should deny the motion to compel, deny Petitioners' Rule 41(g) motion, and dismiss this case.

## BACKGROUND

After the evidentiary hearing, Petitioners filed a motion to supplement the record seeking detailed information regarding the origins of the Department's ongoing criminal investigation. *See* Doc. # 71. Petitioners' theory was that "the rapid switch to a search warrant when the *Alexander* civil suit was challenged" via a motion to dismiss warranted further "inquiry." *Id.* at 9.

The Court denied the motion "[g]iven the unique posture of these Rule 41(g) proceedings and the possibly sensitive nature of the information sought." Doc. # 88. The Court "note[d] that past cases cast doubt on the availability of expansive discovery in the Rule 41(g) context." *Id.* at 3 n.2. The Court nevertheless stated that it would "receive any additional evidence concerning these topics that Petitioners are able to obtain." *Id.* at 4.

Petitioners sought to obtain additional information by sending the United States a third *Touhy* request demanding to know (1) the date of a criminal referral to the FBI; (2) the date the FBI opened the criminal investigation; (3) the date on which DOJ began drafting the Affidavit; and (4) whether there were any meetings or communications in which DOJ officials discussed using a criminal search warrant in response to delays in the case of *United States v. Alexander*, No. 1:25-CV-07084 (N.D. Ga. Dec. 11, 2025) or the Civil Rights Division's requests for Fulton County's 2020 election records. Ex. A at 3.

The United States denied the request. *See* Ex. B. It explained that any disclosures are governed by the Department's *Touhy* regulations. *Id.* at 1. Those regulations require Department officials to consider whether "disclosure is appropriate under the rules of procedure governing the case" and "the relevant substantive law concerning privilege." *Id.* (citing 28 C.F.R. § 16.26(a)). The regulations also prohibit revealing any information that would "reveal

3

investigatory records compiled for law enforcement purposes, and would interfere with enforcement proceedings or disclose investigative techniques and procedures the effectiveness of which would thereby be impaired." *Id* at 1-2 (citing 28 C.F.R. § 16.26(b)).

The United States explained that disclosure of the requested information was inappropriate for numerous independent reasons. Ex. B at 2. At a high level, the United States expressly "incorporate[d] by reference all the reasons provided in its opposition to Petitioners' motion to supplement the evidentiary record." *Id.* For example, Petitioners' request "seeks information that is irrelevant because Eleventh Circuit caselaw holds that there is no constitutional violation—let alone a callous disregard of constitutional rights—in using criminal process to obtain materials, regardless of when or whether those materials had been sought civilly." *Id.* Additionally, "disclosure is inappropriate because of the many incurable defects in Petitioners' Rule 41(g) motion itself." *Id.* On that point, the United States once again incorporated its prior arguments by reference—including by noting that the County could not be suffering irreparable harm given the County's Director of Registration and Elections stated "during the seizure that the United States could 'make paper airplanes' with the records for all she cared." *Id.*

Petitioners also sought privileged information, especially to the extent they "request[ed] information about alleged communications regarding these matters."

*Id.* And the United States noted that it "must consider the cumulative effect of others possibly making similar requests." *Id.* "If parties served with a search warrant could routinely file a Rule 41(g) motion, insist on an evidentiary hearing, and then belatedly seek to peel back information about an ongoing criminal investigation . . . , the Department's ability to meet its law enforcement duties would be severely curtailed." *Id.*

Despite denying Petitioners' request, and "without waiving any arguments or privileges," the United States provided one limited disclosure "in the interests of putting an end to this inquiry." Ex. B at 2. "Kurt Olsen sent a formal criminal referral to the Department before Che Alexander even filed her motion to dismiss[.]" *Id.*

Petitioners then filed a motion to compel. Doc. # 89.

## ARGUMENT

As this Court has recognized, "Rule 41(g) is not a discovery tool." *United States v. Riccardi*, 857 F. App'x 472, 475 (10th Cir. 2021). For that reason, courts have denied requests for Rule 41(g) discovery "tantamount to extraordinary pre-indictment discovery of the Government's investigation." *Trezza v. United States*, No. CV 06-492, 2006 WL 2989033, at *3 (D. Ariz. Oct. 16, 2006). Petitioners cannot circumvent those limitations by challenging the United States's denial of their *Touhy* request. *See* Doc. # 89 at 3 n.1 (acknowledging Petitioners have failed to

5

"formally serve legal process" despite effectively seeking answers to interrogatories under the guise of *Touhy*). In any event, "[a]gency determinations under *Touhy* regulations are subject to review under the Administrative Procedure Act's ("APA") 'arbitrary and capricious' standard." Doc. # 65 at 4-5 (citing 5 U.S.C. § 706(2)(A); *Moore v. Armour Pharm. Co.*, 927 F.2d 1194, 1197 (11th Cir. 1991)). "Under this standard, a court may only overturn an agency's decision if it was unreasonable or not based on proper considerations." *Id.* at 5. And under any standard, Petitioners would not be entitled to the information they seek because it is irrelevant and privileged.

## I.     The Information That Petitioners Seek Is Irrelevant.

The Court should deny Petitioners' motion because the evidence they seek is irrelevant to the Rule 41(g) inquiry. When considering a *Touhy* request, Department officials are required to consider, *inter alia*, "[w]hether such disclosure is appropriate under the rules of procedure governing the case." 28 C.F.R. § 16.26(a)(1). To establish this Court's equitable jurisdiction to grant pre-indictment relief under Rule 41(g), Petitioners must show a "callous disregard of their constitutional rights"—among other requirements. *Trump v. United States*, 54 F.4th 689, 698 (11th Cir. 2022). Petitioners argue that the information they seek would be relevant to whether the search warrant was "a pretext to acquire records

6

that this Administration was unable to quickly secure via the civil litigation process." Doc. # 89 at 1.

As the United States has explained, this theory could not possibly establish callous disregard of Petitioners' constitutional rights. Petitioners have not even tried to identify a constitutional right at stake. Petitioners cite no authority or caselaw suggesting that obtaining a judicially authorized search warrant to expedite access to evidence of potential federal criminal violations violates any constitutional right.

To the contrary, civil and criminal investigations often "proceed at roughly the same time and share[] information"—"[t]hose facts are typical of parallel governmental investigations, which are common and generally proper." *United States v. Goldstein*, 989 F.3d 1178, 1202 (11th Cir. 2021). "It would stultify enforcement of federal law to require a governmental agency . . . to choose either to forgo recommendation of a criminal prosecution once it seeks civil relief, or to defer civil proceedings pending the ultimate outcome of a criminal trial." *United States v. Kordel*, 397 U.S. 1, 11 (1970). Petitioners do not allege any "due process problem" based on "bad faith collusion," which "generally involves affirmative misrepresentations or trickery or deceit by the investigating authority to get the defendant to voluntarily turn over documentary or physical evidence relevant to the criminal investigation." *Goldstein*, 989 F.3d at 1202 (internal quotation marks

7

omitted); *see United States v. Edwards*, 526 F.3d 747, 759 n.36 (11th Cir. 2008) (explaining that caselaw addressing collusion between agencies to deny constitutional rights has "rest[ed] on a showing of prosecutorial misconduct" that presumably violates such rights). Nor could they. The United States used criminal process to get the records—a *higher* burden than obtaining them through civil process.

The information that Petitioners seek is also irrelevant because of the many incurable defects in Petitioners' Rule 41(g) motion. That includes (but is not limited to) Petitioners' lack of need for the original materials and lack of irreparable harm, as exemplified by the County's Director of Registration and Elections stating *during the seizure* that the United States could "make paper airplanes" with the records for all she cared.

All Petitioners muster in response is that the topics they wish to explore were "raised during the hearing." Doc. # 89 at 4. But all sorts of topics were discussed during the day-long hearing. That does not make them relevant, let alone subject to intrusive quasi-discovery. And post-hearing, the United States has cited Eleventh Circuit case law confirming that this information is not relevant.

Because the Department's conclusion that the information Petitioners seek is irrelevant is not arbitrary and capricious, the Court should deny Petitioners' request.

## II.    The Information That Petitioners Seek Is Privileged.

Petitioners' motion fails for the independent reason that Petitioners seek confidential information about DOJ deliberations concerning an ongoing criminal investigation—information that is clearly privileged.

Under the Department's *Touhy* regulations, Department officials must consider whether disclosure "is appropriate under . . . the relevant substantive law concerning privilege." 28 C.F.R. § 16.26(a)(2). And disclosure that would "reveal investigatory records compiled for law enforcement purposes, and that would interfere with enforcement proceedings or disclose investigative techniques and procedures the effectiveness of which would thereby be impaired," is prohibited. *Id.* § 16.26(b)(5).

Those considerations compelled denial of Petitioners' *Touhy* request, which implicated at least two privileges. To start, the "law enforcement investigatory privilege protects from disclosure files and reports of criminal and civil law enforcement investigations." *FEC v. Rivera*, 335 F.R.D. 541, 547 (S.D. Fla. 2020) (citing *United States v. Van Horn*, 780 F.2d 1492, 1507 (11th Cir. 1986)). Some of the purposes of the privilege are to "prevent disclosure of law enforcement techniques and procedures," "to safeguard the privacy of individuals involved in an investigation," and to "otherwise prevent interference in an investigation." *Id.*

9

(internal quotation marks and emphasis omitted). The Court has recognized "the breadth of the law enforcement privilege" in this case. Doc. # 65 at 13.

Petitioners' *Touhy* request also implicates "[t]he most frequent form of executive privilege raised in the judicial arena," which "is the deliberative process privilege; it allows the government to withhold documents and other materials that would reveal advisory opinions, recommendations[,] and deliberations comprising part of a process by which governmental decisions and policies are formulated." *In re Sealed Case*, 121 F.3d 729, 736 (D.C. Cir. 1997) (internal quotation marks omitted).

To be sure, both the law enforcement investigatory privilege and the deliberative process privilege are "qualified." *Van Horn*, 789 F.2d at 1507; *In re Sealed Case*, 121 F.3d at 737. The analysis boils down to a "balancing of the evidentiary need against the harm that may result from disclosure." *In re Sealed Case*, 121 F.3d at 738; *accord Van Horn*, 789 F.2d at 1508 (assessing need for evidence against risks of disclosure).

As the United States explained in its *Touhy* denial, the information that Petitioners seek is privileged. Ex. B at 2. This Court has already recognized that disclosure of "information concerning the process and scope of the DOJ's investigation" would "interfere with enforcement proceedings or disclose investigative techniques and procedures the effectiveness of which would thereby

10

be impaired." Doc. # 65 at 15 (quotation omitted). Yet Petitioners continue to seek information concerning the process and scope of the investigation. The dates of a criminal referral, the formal opening of an investigation, and when an FBI agent began drafting an affidavit are obviously related to the process of the investigation—to say nothing of Petitioners' request for evidence of any "meetings or communications" about a search warrant and the civil litigation. Ex. A at 3. Petitioners claim they "did not request the specific contents of [any such] meetings or communications," Doc. # 89 at 5 n.2, but demanding to know whether there were meetings or communications "*in which DOJ officials . . . discussed using a criminal search warrant in response to*" events in the civil litigation, Ex. A (emphasis added), is tantamount to demanding to know the contents of any such meetings and communications.

Regardless, any information about criminal referrals, meetings, or communications, to the extent it exists, would plainly bear on the government's law enforcement techniques and procedures, as well as internal deliberations comprising part of a process by which governmental decisions have been formulated. And any disclosure in these circumstances would also chill executive branch officials from discussing important investigations, parallel or not. *See In re Sealed Case*, 121 F.3d at 738 (courts consider the "possibility of future timidity by government employees" (internal quotation marks omitted)).

11

Petitioners' contrary arguments fall flat. As an initial matter, Petitioners' statement that the United States "declined to even identify what privilege it purported to invoke," Doc. # 89 at 6, ignores that the United States expressly incorporated its response to Petitioner's motion to supplement the record, Ex. B at 2; Doc. # 75. That response invoked both the law enforcement investigatory privilege and the deliberative process privilege. Doc. # 75 at 7-9. Petitioners' motion fails to address (and thus forfeits any argument regarding) the deliberative process privilege, which independently foreclosed the *Touhy* request.

In any event, Petitioners' arguments challenging the law enforcement investigatory privilege fail. Petitioners primarily rely on a case discussing the "indefinite[]" application of the privilege, such as when the events at issue "transpired three years prior." Doc. # 89 at 7 (citing *Swanner v. United States*, 406 F.2d 716, 719 (5th Cir. 1969). But *Swanner* itself acknowledged that the "pendency of a criminal investigation is a reason for denying discovery." *Id.* at 719. Because in that case three years had passed, it was "doubtful" that such a privilege "would apply so long after the events in question." 406 F.2d at 719. Even then, the Fifth Circuit *upheld* the district court's denial of discovery because even if the "investigative records [were] not technically privileged," they were "at any rate highly sensitive." *Id.* That hardly supports Petitioners' request for information, related to an *ongoing* investigation, that is both privileged and highly sensitive.

12

Petitioners also do not support their statement that their "need for the documents outweighs the government's interest in confidentiality," Doc. # 89 at 8, with any argument about why they need this information. As discussed above, the information is not relevant, so Plaintiffs have no countervailing need for it.

Petitioners also wrongly claim that the government needed to satisfy "three procedural requirements" to assert privilege. Doc. # 89 at 9 (citing *In re Sealed Case*, 856 F.2d 268, 271 (D.C. Cir. 1988)). They ignore that the United States asserted privilege in the context of a *Touhy* denial, which is a distinct agency action. Petitioners appear to acknowledge that "the *Touhy* regulations" control in this circumstance. Doc. # 89 at 10. And those regulations give "[e]very attorney in the Department of Justice in charge of any case or matter" responsibility for making privilege determinations in the course of granting or denying a *Touhy* request. 28 C.F.R. § 16.23(a); *see also id.* § 16.26(a), (b). Petitioners cannot invoke inapplicable procedural rules to show that the denial itself was arbitrary and capricious.

Ultimately, Petitioners resort to baseless waiver arguments. But the United States could not have waived privilege when it "confirmed in its *Touhy* denial that Kurt Olsen referred the matter to DOJ prior to January 28, 2026," Doc. # 89 at 9, given that the *Touhy* denial itself expressly stated that the Department was not "waiving any arguments or privileges," Ex. B at 2. Nor could the United States have waived privilege when the United States "declined to assert it in response to

13

the same line of questioning at the evidentiary hearing." Doc. # 89 at 9 (citing Tr. 70-72). For one thing, the Court did not ask the United States the same questions as Petitioners. *See* Tr. 70-72. For another, the United States could not have revealed *any* privileged information by disclaiming knowledge of certain information that Petitioners seek — let alone revealed privileged information that would result in a waiver of other information. *Cf.* Fed. R. Evid. 502(a) (waiver must be "intentional," disclosed and undisclosed information must "concern the same subject matter," and "they ought in fairness to be considered together").

Further, as demonstrated next, the United States made a limited disclosure rather than refuse to provide any response — and that limited disclosure proves that Petitioners' illogical theory is also factually unsupported.

III.    **The United States's Voluntary Disclosure Does Not Render The** *Touhy* **Denial Arbitrary And Capricious**

Since the hearing, Petitioners have been arguing that the Court should "inquire about Respondent's actions" based on the purported "rapid switch to a search warrant when the *Alexander* civil suit was challenged." Doc. # 71 at 9. The United States sought to avoid further resource-intensive briefing on this issue by confirming that the criminal referral occurred before the motion to dismiss was filed in *Alexander*. That disclosure, while limited, leaves no doubt that Petitioners' central theory is based on a false premise.  And the disclosure is entirely consistent with otherwise asserting privilege over the details of an ongoing criminal

14

investigation. To the extent the disclosure helps the United States's "litigation position," Doc. # 89 at 11, it is only because Petitioners have been litigating a theory that is not only legally frivolous, but also unmoored from reality.

### IV. The Cumulative Effect Of Requests Like Petitioners' Would Be Exceedingly Damaging To The Department

As the United States explained in its *Touhy* denial:

> If every party served with a search warrant could file a Rule 41(g) motion, insist on an evidentiary hearing, and then belatedly seek to peel back information about an ongoing criminal investigation (especially via depositions and document requests, as your letter proposes), the Department's law-enforcement duties would be severely curtailed. Every search warrant, or at least every search warrant in a high-profile matter, would result in a mini pre-trial.

Ex. B at 2.

Tellingly, Petitioners do not dispute that cumulative impact. Instead, they argue that such an impact "is a nonsensical and totally unsupportable basis" for denial. Doc. # 89 at 10. But they overlook directly on-point Eleventh Circuit precedent to the contrary: "the cumulative impact of allowing their request" is relevant to a *Touhy* decision. *Moore*, 927 F.2d at 1198. And here, it is dispositive.

15

## CONCLUSION

For the foregoing reasons, the Court should deny Petitioners' motion to supplement the evidentiary record and should dismiss this case.

Respectfully submitted,

STANLEY E. WOODWARD, JR.
*Associate Attorney General*

THOMAS C. ALBUS
*Special Attorney to the Attorney General
and United States Attorney for the
Eastern District of Missouri*
Missouri Bar No. 46224
Thomas Eagleton U.S. Courthouse
111 S. 10th Street, 20th Floor
St. Louis, MO 63102
(314) 539-2200

A. TYSEN DUVA
*Assistant Attorney General – Criminal
Division*

R. TRENT MCCOTTER
*Principal Associate Deputy Attorney
General*

/s/ MICHAEL WEISBUCH
MICHAEL WEISBUCH
*Senior Counsel to the Associate Attorney
General*

PETER L. COOCH
*Trial Attorney/Senior Counsel, Criminal
Division*

16

## Certificate of Compliance

I hereby certify, pursuant to Local Rules 5.1 and 7.1D, that the foregoing brief has been prepared using Book Antiqua, 13 point font.

> /s/ MICHAEL WEISBUCH
> MICHAEL WEISBUCH
> *Senior Counsel to the Associate Attorney General*