# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| ROBERT L. "ROBB" PITTS, CHAIRMAN, FULTON COUNTY BOARD OF COMMISSIONERS; FULTON COUNTY BOARD OF REGISTRATION AND ELECTIONS; FULTON COUNTY, GEORGIA; and CHE ALEXANDER, CLERK OF COURT,<br><br>       Petitioners,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>       Respondent. | Civil Action No.<br>1:26-CV-00809-JPB |

## PETITIONERS' SUPPLEMENTAL EVIDENCE

On April 13, 2026, the Court issued an Order on Petitioners' Post-Hearing Motion for Additional Evidence Pursuant to Federal Rule of Criminal Procedure 41(g). Order (Doc. 88). The Court noted that Rule 41(g) "states that courts must 'receive evidence' when deciding a motion for return of property" and agreed to accept additional evidence on or before April 27, 2026. Order at 3–4.

Accordingly, Petitioners submit the following evidence, which for ease of review, Petitioners present in two sections.[1] First, Petitioners submit evidence

---

[1] On April 21, 2026, Petitioners filed a motion to compel narrowly crafted discovery. (Doc. 89). Should the Court grant Petitioners' motion to compel, Petitioners intend to seek leave to further supplement the record.

1

further demonstrating that the purported criminal investigation supporting the search warrant was a pretext for expediting the seizure of documents Respondent sought in civil litigation. Second, Petitioners submit additional evidence further showing that there is no factual basis for the hypothetical and speculative claims in the search warrant affidavit and the similar claims in the amicus briefs in support of Respondent (Docs. 79, 80).[2]

## I.   Additional Evidence that Respondent Manufactured a Criminal Investigation as a Pretext for Overcoming Roadblocks in Civil Litigation.[3]

Petitioners identify the supplemental evidence in chronological order for the Court's convenience.

1.   <u>July 30, 2025</u>: The Georgia State Election Board issued a resolution seeking DOJ assistance to obtain records the State Election Board had been unable

---

[2] For the record and the Court's convenience, Petitioners intend to file a courtesy copy of the videos referenced in this filing with the Clerk of Court, and Petitioners will also provide a copy to counsel for Respondent.

[3] Respondent's repeated failure to obtain various state election records through civil litigation is now well-established in courts across the country, and this Court can take judicial notice of such records. *See, e.g.*, *United States v. Benson*, Case No. 1:25-CV-1148 (W.D. Mich. Feb. 10, 2026) (dismissing all claims in "one of over two dozen lawsuits that the United States has recently brought seeking voter registration data from states and localities"); *United States v. Weber*, Case No. 2:25-CV-09149-DOC-ADS (C.D. Cal. Jan. 15, 2026) (district court granted motions to dismiss DOJ claims arising from request for voter registration data from California Secretary of State); *United States v. Raffensperger*, Case No. 5:25-CV-0548-CAR (M.D. Ga. Jan. 23, 2026) (dismissing DOJ lawsuit seeking voter registration data for lack of jurisdiction).

to obtain in litigation. Citing a "lack of response to a subpoena issued by the Board" to Fulton County, the State Election Board called on the Georgia Secretary of State and Attorney General to "seek the assistance of appropriate local authorities or federal authorities, including the Department of Justice, to take any action necessary to bring a prompt resolution of these issues, including obtaining all necessary voting records and documents." A copy of the resolution is attached hereto as Exhibit A.

2.    November 2025: In an interview with Ed Martin, U.S. Department of Justice "Weaponization Czar," on the Steve Bannon *War Room* Podcast, Martin discussed the necessity of obtaining Fulton County's ballots despite the challenges to doing so:

Ed Martin:    You know Kurt Olsen, Kurt Olsen was recently appointed by the President to work on Election Integrity. What people may not know and it's not a secret is that, inside DOJ myself and a couple of others have been working also on the same topic, so you know you see whether it's Fulton County has these ballots we're worried about…

Steve Bannon:  Why are we not, why don't we just send down some U.S. Marshalls and go down and seize them?

Ed Martin:    Yeah, everybody thinks it's, look yeah, everybody thinks it's easier, it's a challenge, look we got to get them.

(Nov. 10, 2025) (Video at 0:42–1:07), available at https://rumble.com/v71i08u-ed-martin-anytime-theres-wholesale-misconduct-targeting-the-american-people.html.

3.    February 5, 2026: Catherine Herridge, the host of *Straight to the Point* podcast, interviewed DOJ Assistant Attorney General for Civil Rights Harmeet

3

Dhillon. During the interview, AAG Dhillon indicated that DOJ's basis for asserting probable cause to obtain a search warrant was developed *after* the Civil Rights Division's suit was initiated:

> Let me give you a timeline … I have sued Georgia for its voter rolls … that's one lawsuit … we found there to be a basis to obtain those ballots civilly under the civil rights provisions that I administer. I first tried to get them voluntarily by letters, I asked for them. The people in possession of these ballots in Fulton County had already defied requests by Georgia Election Officials, election board to obtain these, so they were already in defiance of state requests. They said no. They said go to the judge, the judge will have them because they were part of a trial. We went to the court, the court said I don't have them go over there. It was like a big game of, big shell game of whose got the ballots. So I then filed a lawsuit because in a lawsuit, let's sue everybody and you all can all figure out whose got the ballots and we can get the ballots and then we can conduct our civil review.
>
> *While that case has been pending, which was filed fairly recently, just weeks ago, other colleagues of mine at the Department of Justice learned that they believe they had probable cause to obtain a search warrant regarding potential criminal violations of the law and that is what was executed in the search warrant being executed at a election hub, some kind of election storage space offsite of where the election offices are in Fulton County.* We don't know exactly what was there, whether that's the totality of what I was looking for or not, so that is to be determined.

Catherine Herridge, Straight to the Point (Feb. 5, 2026) (video at 19:37 to 22:17) (emphasis added), available at https://x.com/C__Herridge/status/2019429415147491374?s=20.

   4.   <u>February 6, 2026</u>: AAG Dhillon's post on x.com the week following the execution of the search warrant established that the warrant was connected to Fulton

County's challenge to the Civil Rights Division's civil suit, stating: "Fulton County refused to cooperate with @CivilRights request for 2020 election-related documents, alas. @TheJusticeDept is committed to ensuring American elections are safe & secure!" Harmeet Dhillon (@AAGHarmeetDhillon), X.com (Feb. 6, 2026), https://x.com/AAGDhillon/status/2019808641013190835. AAG Dhillon's statement carries a clear implication: if a county litigates against the Civil Rights Division, it faces the prospect of a search warrant.

5. March 10, 2026: John Solomon, editor in chief of news website *Just the News* interviewed AAG Dhillon who suggested that the criminal search warrant might be a result of Fulton County opposing the Civil Rights Division's civil suit for 2020 ballots. In response to a question about the "raid in Georgia," AAG Dhillon said: "My jurisdiction, statutorily, is civil in nature. And so my colleagues, *after we've tried to go through the front door and get these materials voluntarily, if they're not complying—to help us help them do their jobs correctly—then it may become criminal in nature*…." John Solomon, Just the News (Mar. 10, 2026) (video at 4:34-5:41) (emphasis added), available at https://rumble.com/v76xypy-harmeet-dhillon-doj-is-cleaning-dirty-voter-rolls-nationwide-with-

shocking-.html?e9s=src_v1_s%2Csrc_v1_s_o&sci=8b47d269-399a-45c7-b6ce-e400bce8c311.[4]

6.   March 25, 2026: Some current members of the Georgia State Election Board acting as amici curiae in this case indicated that the search warrant was necessary because Fulton County had not turned over the ballots in civil litigation. Amici state that "[o]n October 4, 2024 and again on November 5, 2025, the [State Election Board] issued subpoenas … to the FCBRE under its authority under O.C.G.A. § 21-2-31. Rather than complying with the first subpoena, the Executive Director and Chairman of the FCBRE … filed a lawsuit to quash the first subpoena …. FCBRE's response has been mercurial and is the cause of great frustration *and in fact, the need for the Search Warrant*." Doc. 80 at 9–10 (emphasis added).

---

[4] Legal commentators have raised the same questions about timing based on AAG Dhillon's statements. *See, e.g.*, Anna Bower, *Fulton County's Uphill Battle for Ballots*, Lawfare (Mar. 31, 2026), https://www.lawfaremedia.org/article/fulton-county's-uphill-battle-for-ballots (citing Dhillon's statements "support[ing] . . . the county's theory that the warrant was merely a pretext for securing access to records that the Justice Department was seeking through civil litigation"); *see also* Yunior Rivas, *DOJ says Fulton County ballot seizure timeline is secret. But Harmeet Dhillon may have already revealed it*, Democracy Docket (Apr. 3, 2026), https://www.democracydocket.com/newsalerts/doj-fulton-county-ballot-seizure-timeline-harmeet-dhillon-revealed/.

## II.    Additional Evidence that Further Demonstrates the Baseless Nature of the Allegations in the Search Warrant Affidavit.

Post-hearing reporting indicates that "director of election security and integrity, Kurt Olsen," who "had worked to overturn Trump's loss in court in 2020 and was later sanctioned by judges, including for making baseless allegations about Arizona elections," forced out the head of the FBI's Atlanta field office for refusing to seize Fulton County ballots after determining there was no basis to do so:

> In a previously unreported series of events, around the end of 2025, Olsen flew to Georgia to meet with Paul Brown, the head of the FBI's Atlanta field office, according to people familiar with the matter.
>
> Olsen wanted the FBI to seize 2020 ballots from Fulton County, a Democratic stronghold, and gave Brown a report he claimed would justify the extraordinary action. Brown and his team emphasized to Olsen that any investigation his team did would be independent and fair.
>
> When Brown and his team examined the report, they found that Georgia's election board had already looked into its allegations, dismissing many altogether, and concluding that others came down to human error, not criminal wrongdoing. The report had been assembled by a longtime ally of Olsen's and participant in the Election Integrity Network who had a history of discredited claims, ProPublica has reported.
>
> Based on their own investigation, Brown's team submitted an affidavit to their superiors at DOJ that did not make a strong enough case to move forward with what Olsen wanted.
>
> Soon after, Brown was offered a choice: retire or be moved to a new office, people with knowledge of the exchange told ProPublica.
>
> ….

7

Brown's ouster after refusing to carry out the seizure of 2020 election materials has been reported, but Olsen's involvement and the details of their interactions leading to Brown's retirement have not been previously disclosed.

With Brown gone, the case moved ahead under his replacement.

Doug Bock Clark & Jen Fifield, *Inside Trump's Effort to "Take Over" the Midterm Elections*, ProPublica (Apr. 13, 2026), https://www.propublica.org/article/trump-midterm-elections-takeover.[5]

### III.   Conclusion.

Petitioners respectfully request the Court consider this additional evidence in support of Petitioners' Rule 41(g) motion and that the Court grant Petitioners' requested relief.

Respectfully submitted, this 27th day of April, 2026.

[SIGNATURES ON FOLLOWING PAGE]

---

[5] The proposed amicus brief filed on April 24, 2026, by election experts and scholars (Doc. 93-2), provides additional evidence that the Election Oversight Group Report, on which the search warrant affidavit was partially based, provides no coherent theory or evidence of fraud.

/s/ Y. Soo Jo
Y. Soo Jo
Georgia Bar No. 385817
OFFICE OF THE FULTON
COUNTY ATTORNEY
141 Pryor St. SW, Suite 4038
Atlanta, Georgia 30309
Tel.: (404) 612-0246
soo.jo@fultoncountyga.gov


/s/ Abbe David Lowell
Abbe David Lowell*
John Bolen*
LOWELL & ASSOCIATES, PLLC
1250 H Street NW
Washington, D.C. 20005
Tel.: (202)-964-6110
alowellpublicoutreach@
lowellandassociates.com
jbolen@lowellandassociates.com

/s/ Kamal Ghali
Kamal Ghali
Georgia Bar No. 805055
Michael C. Duffey
Georgia Bar No. 710738
CHAIKEN GHALI LLP
One Atlantic Center
1201 W. Peachtree St. NW, Suite 2300
Atlanta, Georgia 30309
Tel.: (404) 795-5005
kghali@chaikenghali.com
mduffey@chaikenghali.com


/s/ Stephen Jonas
Stephen Jonas*
Norman Eisen*
DEMOCRACY DEFENDERS FUND
600 Pennsylvania Avenue SE
Suite 1580, Washington, D.C. 20003
Tel.: (202) 594-9958
steve@democracydefenders.org
norman@democracydefenders.org

*Counsel for Petitioners Robert L. Pitts, Chairman, Fulton County Board of Commissioners; Fulton County Board of Registration and Elections, Fulton County, Georgia; and Che Alexander, Clerk of Court*

*Admitted pro hac vice*

**CERTIFICATE OF SERVICE**

I hereby certify that on this day, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will automatically serve all counsel of record.

This 27th day of April, 2026.

/s/ *Michael C. Duffey*
Michael C. Duffey