UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ROBERT L. "ROBB" PITTS, et al.,

Petitioners,

v.

UNITED STATES OF AMERICA,

Respondent.

CIVIL ACTION NO.
1:26-CV-00809-JPB

## **ORDER**

This matter is before the Court on Petitioners'[1] Motion to Compel [Doc. 89]. This Court finds as follows:

## **BACKGROUND**

On January 28, 2026, the Federal Bureau of Investigation ("FBI") seized over 600 boxes of Fulton County's 2020 election records pursuant to a search warrant signed by a United States Magistrate Judge. [Doc. 1]. As part of the search warrant application, Special Agent Hugh Raymond Evans—an FBI agent assigned to the Public Corruption and Civil Rights Squad—submitted an affidavit for the purpose of establishing probable cause (hereinafter, "the Affidavit"). [Doc. 22-2, p. 5]. Shortly after the seizure, Petitioners filed a Motion for Return of

---

[1] Petitioners include Robert L. "Robb" Pitts, who is the Chairman of the Fulton County Board of Commissioners; the Fulton County Board of Registration and Elections; Fulton County, Georgia; and Che Alexander, the Clerk of Court for Fulton County.

Property and Amended Motion for Return of Property pursuant to Federal Rule of Criminal Procedure 41(g).  [Doc. 1]; [Doc. 30].

This Court held an evidentiary hearing on the Amended Motion on March 27, 2026.  A few days after the hearing, Petitioners filed a Motion to Supplement Evidentiary Record.  [Doc. 71].  In the motion, Petitioners requested that the Court order the United States of America ("Respondent") to provide certain details about the start of the Department of Justice's ("DOJ") criminal investigation into the 2020 election in Fulton County.  Id.  Petitioners sought this information to support their argument that the criminal investigation underlying this case was initiated as a means of circumventing civil proceedings in which Respondent had sought many of the same records.

After briefing, this Court denied the motion because Petitioners had not requested the information from Respondent directly.  [Doc. 88].  Nevertheless, the Court extended the time period for submitting evidence and stated that it would receive any evidence that Petitioners gathered "via a Touhy request or otherwise."[2] Id. at 4.  Petitioners submitted a Touhy request to the DOJ the next day.  [Doc. 89-1].  In their request, they asked the DOJ to provide answers to four questions:

1. On which date did Kurt Olsen refer the criminal investigation to the [FBI] . . . ?

---

[2] A "Touhy request" refers to a request for information from an agency.  The phrase stems from the case United States ex rel. Touhy v. Ragen, 340 U.S. 462 (1951).

2. On which date did the [FBI] open the criminal investigation identified by Special Agent Evans in the Affidavit?

3. Were there any meetings or communications (including phone calls, in-person meetings, text messages, emails, or other digital communications) in which DOJ officials (including but not limited to Kurt Olsen and White House personnel) discussed using a criminal search warrant in response to delays in the case of United States v. Alexander, . . . or the Civil Rights Division's requests for Fulton County's 2020 election records . . . ?  If so, on which date(s) did any meeting(s) or communications occur, and who were the attendees at each meeting or participants in the communication?

4. On which date did the DOJ first begin drafting the Affidavit?

Id. at 3.

Respondent denied the Touhy request on April 17, 2026.  [Doc. 89-2].  First, the DOJ stated that the request was denied for the reasons provided in Respondent's opposition to Petitioners' earlier motion to supplement the record, which included:  (1) the untimeliness of the request, (2) that the information sought is irrelevant to the 41(g) motion and (3) that "certain of the information Petitioners seek is privileged."  Id. at 2.  Second, the DOJ denied the request because it "must consider the cumulative effect of others possibly making similar requests."  Id. According to the denial, if parties "routinely" file 41(g) motions and seek to "peel back information about an ongoing criminal investigation," the DOJ's ability to perform its law-enforcement duties "would be severely curtailed."  Id.  Though it denied the request, the DOJ did provide some information—that Kurt Olsen sent a

3

formal criminal referral to the DOJ before a motion to dismiss was filed in the civil case where Respondent was seeking the records.  Id.

Petitioners filed the instant Motion to Compel on April 21, 2026.  [Doc. 89].  The motion argues that the denial of the Touhy request was arbitrary and capricious.  The Court ordered expedited briefing on the motion, and the matter is now ripe for review.

## LEGAL STANDARD

When a party seeks testimony or documents from the federal government, federal laws and agency rules may restrict access to the desired information.[3]  Indeed, 5 U.S.C. § 301 allows leaders of federal agencies to create rules—called Touhy regulations—that control how employees can share information that they learn in the performance of their official duties.  United States ex rel. Touhy v. Ragen, 340 U.S. 462 (1951).  Agency determinations under Touhy regulations are subject to review under the Administrative Procedure Act's ("APA") "arbitrary and capricious" standard.  5 U.S.C. § 706(2)(A); Moore v. Armour Pharm. Co., 927 F.2d 1194, 1197 (11th Cir. 1991).[4]  Under this standard, a court may only

---

[3] The Court also discussed this principle in its Order on Respondent's Motion to Quash Subpoena.  [Doc. 65].

[4] Petitioners re-assert their argument that the arbitrary and capricious standard of review should not apply where the government is a party to a case.  [Doc. 89, p. 10 n.5].  For the same reasons stated previously, [Doc. 65, pp. 5–7], the Court rejects that argument.

overturn an agency's decision if it was unreasonable or not based on proper considerations.

## ANALYSIS

### A. The DOJ's Touhy Regulations

In relevant part, the DOJ's Touhy regulations provide that:

> Every attorney in the [DOJ] in charge of any case or matter in which the United States is a party is authorized . . . to reveal and furnish . . . such testimony, and relevant unclassified material, documents, or information secured by any attorney, or investigator of the [DOJ], as such attorney shall deem necessary or desirable to the discharge of the attorney's official duties[.]

28 C.F.R. § 16.23(a).

While the above section authorizes the release of testimony and unclassified material in cases where the United States is a party, § 16.23 nevertheless requires DOJ attorneys to consider the factors in 28 C.F.R. § 16.26(a)(1)–(2): "[w]hether such disclosure is appropriate under the rules of procedure governing the case or matter in which the demand arose" or "under the relevant substantive law concerning privilege." Additionally, the regulations require that the attorney consider the factors set forth in § 16.26(b) before furnishing materials or testimony to a requesting party. If any of these factors are implicated by a request, the attorney must seek prior approval before providing the information or testimony. 28 C.F.R. § 16.23(a).

**B. Arbitrary and Capricious Review**

The parties disagree as to whether the DOJ's denial of Petitioners' Touhy request was arbitrary and capricious. Under the APA, the Court may overturn the agency action if it finds that the agency's refusal to authorize the testimony was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "To determine whether an agency decision was arbitrary and capricious, the reviewing court 'must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.'" N. Buckhead Civic Ass'n v. Skinner, 903 F.2d 1533, 1538 (11th Cir. 1990) (quoting Marsh v. Or. Nat. Res. Council, 490 U.S. 360, 378 (1989)).

> The Supreme Court of the United States has said that:
>
> an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise. The reviewing court should not attempt itself to make up for such deficiencies; we may not supply a reasoned basis for the agency's action that the agency itself has not given.

Motor Vehicle Mfrs. Assoc. of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983). When an agency's decision is challenged under the arbitrary and capricious standard, the challenging party bears the burden of

6

persuasion.  Balfour Land Co. v. United States, No. 08-CV-34, 2009 WL 1796068, at *7 (M.D. Ga. June 22, 2009) (citing Ward v. Campbell, 610 F.2d 231, 235 (5th Cir. 1980)).  "The arbitrary and capricious standard is 'exceedingly deferential.'" Miccosukee Tribe of Indians of Fla. v. United States, 566 F.3d 1257, 1264 (11th Cir. 2009) (quoting Sierra Club v. Van Antwerp, 526 F.3d 1353, 1360 (11th Cir. 2008)).  Though this review is deferential, the Court is "not a rubber stamp — 'courts retain a role, and an important one, in ensuring that agencies have engaged in reasoned decisionmaking.'"  USF Fed. Credit Union v. Gateway Radiology Consultants, P.A., 983 F.3d 1239, 1263 (11th Cir. 2020) (quoting Judulang v. Holder, 565 U.S. 42, 53 (2011)).

As discussed above, Respondent offered several reasons for denying the Touhy request.  The Court will consider each reason in turn.

### i. Untimeliness, Irrelevance and the Merits

The DOJ's Touhy denial letter offers three reasons for denying the Touhy request that are related to the substance of this case.  First, the DOJ concluded that Petitioners' "request is untimely because [they] just as easily could have requested this information before the evidentiary hearing."  [Doc. 89-2, p. 2].  Second, the DOJ stated that the request "seeks information that is irrelevant because Eleventh Circuit caselaw holds that there is no constitutional violation—let alone a callous disregard of constitutional rights—in using criminal process to obtain materials,

regardless of when or whether those materials had been sought civilly." Id. Third, the DOJ asserted that denial of the Touhy request is appropriate because Petitioners lose on the merits of their 41(g) motion. Id. Respondent reiterates these points in its brief in opposition to the motion to compel. [Doc. 92].

Respondent's arguments as to timeliness and relevance are not a rational basis to deny the requested information. In considering the timeliness argument, Respondent is right that Petitioners' request could have been made before the hearing. However, Petitioners' request is, at least in part, in response to certain inquiries that were raised at the evidentiary hearing. [Doc. 88, p. 4 n.3]. Importantly, the Court gave Petitioners' additional time to obtain evidence, and Petitioners' Touhy request was made during this new timeframe. Id. at 4. Their request for evidence is thus timely. As for relevance, the Court explained at the evidentiary hearing that this information is relevant to the callous disregard inquiry. [Doc. 76, pp. 71–74]. Simply put, Petitioners sought the evidence within the timeframe this Court provided, and the evidence sought is relevant. The DOJ clearly erred in concluding otherwise.

The DOJ's denial letter also provided that "disclosure is inappropriate because of the many incurable defects in Petitioners' Rule 41(g) motion itself." [Doc. 89-2, p. 2]. In the Court's view, Respondent cannot start at the conclusion that the overarching motion will ultimately fail to justify the denial of requests for

evidence in support of that motion.  Rule 41(g) clearly instructs this Court to "receive evidence on any factual issue necessary to decide the motion."  The Court finds that the evidence sought by Petitioners, though it may well not be dispositive of the ultimate issues in this case,[5] would still be helpful to the Court's determination as to a "factual issue necessary to decide the motion."  In sum, the DOJ acted arbitrarily by denying the Touhy request based on its own evaluation of the merits of the case.

### ii.  Privilege and Cumulative Effect

In its Touhy denial letter, the DOJ also asserted that it cannot fulfill Petitioners' request for information because "certain of the information Petitioners seek is privileged."[6]  [Doc. 89-2, p. 2].  As a starting point, the DOJ's Touhy regulations permit the agency to withhold information on the basis of privilege.  28 C.F.R. § 16.26(a)(2).  While the assertion of privilege in the denial letter is vague, Respondent's briefing indicates that the denial is based on the law enforcement privilege and the deliberative process privilege.  The law enforcement privilege is

---

[5] Given Respondent's disclosure that the referral from Kurt Olsen occurred prior to the filing of the motion to dismiss in the federal civil proceeding, [Doc. 89-2, p. 2], the Court is less concerned that the criminal investigation was created wholly because of procedural hurdles in the federal civil action.

[6] This statement implies that at least some of the information Petitioners request is not privileged, but Respondent does not clarify which information is privileged and which is not.  [Doc. 89-2, p. 2].  Nevertheless, the Court analyzes privilege as to each of Petitioners' requests.

intended to prevent disclosure of law enforcement techniques and procedures, to protect witnesses and law enforcement personnel, to protect the privacy of individuals involved in an investigation and to prevent other interference with an investigation.  FEC v. Rivera, 335 F.R.D. 541, 547 (S.D. Fla. 2020).  As to the deliberative process privilege, it "shields documents that reflect an agency's preliminary thinking about a problem, as opposed to its final decision about it." U.S. Fish & Wildlife Serv. v. Sierra Club, Inc., 592 U.S. 261, 266 (2021).  This privilege is intended "to allow agencies to freely explore possibilities, engage in internal debates, or play devil's advocate without fear of public scrutiny."  Moye, O'Brien, O'Rourke, Hogan & Pickert v. AMTRAK, 376 F.3d 1270, 1277 (11th Cir. 2004).  "To fall within the deliberative process privilege, a document must be both 'predecisional' and 'deliberative.'"  Id. (citing Dep't of Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8 (2001)).  "Documents are 'predecisional' if they were generated before the agency's final decision on the matter, and they are 'deliberative' if they were prepared to help the agency formulate its position."  Sierra Club, 592 U.S. at 268.

At the outset, it bears repeating that the Court's review in this posture is deferential.  The relevant inquiry is whether it was arbitrary and capricious for Respondent to withhold evidence on this ground—not the substantive privilege inquiry itself.  Put another way, the Court must decide whether withholding

evidence on the basis of privilege was a "rational conclusion," not whether privilege applies. Florida v. Dep't of Health & Human Servs., 19 F.4th 1271, 1307 (11th Cir. 2021) (quoting Sierra Club v. Flowers, 526 F.3d 1353, 1360 (11th Cir. 2008)). In the analysis that follows, the Court analyzes whether the DOJ's decision to withhold information based on these two privileges was arbitrary and capricious.

### a. Petitioners' Requests for Dates

The Court first considers Respondent's assertion that the three dates requested by Petitioners are privileged. As stated earlier, Petitioners want to know the date Kurt Olsen referred the criminal investigation to the FBI, the date that the FBI opened the criminal investigation and the date that the DOJ began drafting the Affidavit. [Doc. 89-1, p. 3]. As an initial matter, the Court notes that these questions seek an extremely small amount of information and should be simple to answer. Indeed, the DOJ can answer these three questions by doing nothing more than providing dates on the calendar for events that it does not dispute occurred.

Turning now to examine the agency's justifications for denial, the Court finds that the DOJ's decision to deny Petitioners' first, second and fourth requests on the basis of privilege was arbitrary and capricious. As to the law enforcement privilege, the DOJ's denial does not articulate any particular law enforcement interest that would be hindered—confidential sources, investigative files,

11

investigative techniques or information that could endanger law enforcement personnel—if the dates are disclosed.  Nor does the Court see how any of these interests could be rationally protected by withholding the exact dates from Petitioners here.[7]  Concerning the deliberative process privilege, Respondent fails to explain how these three dates, in and of themselves, are "predecisional" or "deliberative" in nature.  Moye, 376 F.3d at 1277.  Notably, "[p]urely factual material that does not reflect the agency's deliberative process generally is not protected."  In re Polypropylene Antitrust Litig., 181 F.R.D. 680, 695 (N.D. Ga. 1998).

The DOJ also denied Petitioners' Touhy request, at least in part, after considering "the cumulative effect of others possibly making similar requests." [Doc. 89-2, p. 2].  According to Respondent, providing this information could lead to a slippery slope that would allow 41(g) motions to be "routinely file[d]" to obtain information concerning ongoing criminal investigations.  Id.  Respondent is correct that part of any court's "inquiry to determine whether an agency's denial is 'arbitrary or capricious' must include a determination of the burden that the [production of evidence] would place on the agency."  Moore, 927 F.2d at 1198.

---

[7] This is especially so considering that currently available information indicates that these dates are all within a four-month window from Kurt Olsen's appointment in October 2025 to the execution of the search warrant on January 28, 2026.  See [Doc. 89, p. 5 n.3].

12

Concerns about cumulative effect, however, "cannot put a blanket ban on all [Touhy] requests."  Id.

At least as to Petitioners' requests for the three dates, the Court concludes that denial based on the cumulative impact of similar Touhy requests is arbitrary and capricious.  This case involves a 41(g) motion brought by a local government and its officials against the federal government.  It concerns questions related to the interplay between simultaneous civil and criminal investigations.  And, most importantly, the information requested is simply the dates that discrete actions occurred.  This is a very narrow request for information made in a case involving a set of unique circumstances.  Given these facts, the Court finds that Respondent could not have rationally concluded that disclosure of the dates alone would lead to a flood of Touhy requests in future cases.  Thus, this ground for withholding the dates is arbitrary and capricious as well.  In summary, because the DOJ's denial of these three requests fails to articulate a rational basis to withhold the information, the denial was arbitrary and capricious.

  b.  *Petitioners' Request for Information About DOJ Meetings*

The Court now turns to the DOJ's denial of Petitioners' third request, which sought information concerning "meetings or communications" that may have occurred between DOJ officials discussing the use of a criminal search warrant "in response to" delays in civil proceedings.  [Doc. 89-1, p. 3].

As to this request, the Court finds that the DOJ could rationally conclude that the information sought implicates the law enforcement privilege and the deliberative process privilege. As to the law enforcement privilege specifically, the DOJ could reasonably find that the number of communications and the persons involved in such discussions would reveal, in some measure, how the DOJ goes about its investigations. This is significant because the privilege is designed to safeguard knowledge of these kinds of investigatory techniques and processes. The DOJ could also rationally conclude that the information is protected by the deliberative process privilege. Indeed, discussions about whether a warrant should be obtained or how to get the warrant would necessarily be predecisional. And it is reasonable to determine that information about these discussions—including whether they occurred at all—would also reveal information about the kind of "internal debates" that the deliberative process privilege protects from "public scrutiny."[8] Moye, 376 F.3d at 1277. In sum, the DOJ's conclusion that the

---

[8] While the Court recognizes that Petitioners' request for dates and attendees may appear factual at first glance, the question is posed in a way that asks whether a specific internal deliberation occurred. [Doc. 89-1, p. 3]. Thus, on some level, Petitioners necessarily seek the content of DOJ communications. In other words, if Respondent was forced to comply with this request, it would have to indicate whether DOJ officials did indeed have discussions about using a criminal search warrant to avoid delays in the federal civil case, which necessarily would reveal key aspects of agency employees' decision-making process. Thus, the Court cannot say that the DOJ's reliance on the deliberative process privilege was irrational as to Petitioners' third request.

identified privileges bar releasing this information is a rational one, so the Court must uphold it under the deferential arbitrary and capricious standard of review.[9]

## CONCLUSION

In accordance with the foregoing, Petitioners' Motion to Compel [Doc. 89] is **GRANTED IN PART**.

Respondent is hereby **ORDERED** to file a document with answers to questions one, two and four in Petitioners' motion no later than May 1, 2026, at 5:00 PM. The parties may provide supplemental briefing to the Court in light of these answers. Each party's brief, if any, shall be due no later than May 5, 2026, at 12:00 PM—there will be no responsive briefing. Each brief is limited to ten pages.

**SO ORDERED** this 30th day of April, 2026.

_____
J. P. BOULEE
United States District Judge

---

[9] Petitioners also assert that Respondent has waived its privileges by its limited disclosure of the fact that Kurt Olsen referred the case to the DOJ before the motion to dismiss was filed in the federal civil action. [Doc. 97, pp. 3–4]. To the extent this argument applies to the information about communications, the Court concludes that Petitioners are incorrect. Revealing the existence and content of communications between government officials would reveal more than fairly allowed by the disclosure of a single date. See Cox v. Adm'r U.S. Steel & Carnegie, 17 F.3d 1386, 1419 (11th Cir. 1994) (stating that privilege is waived if a litigant "injects into the case an issue that *in fairness* requires an examination of otherwise protected communications" (emphasis added)).

15