# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| ROBERT L. "ROBB" PITTS, CHAIRMAN, FULTON COUNTY BOARD OF COMMISSIONERS; FULTON COUNTY BOARD OF REGISTRATION AND ELECTIONS; FULTON COUNTY, GEORGIA; and CHE ALEXANDER, CLERK OF COURT, Petitioners, v. UNITED STATES OF AMERICA, Respondent. | Civil Action No. 1:26-CV-00809-JPB |

## PETITIONERS' SUPPLEMENTAL BRIEF

Petitioners submit this supplemental briefing to the Court following Respondent's May 1, 2026, disclosures, which—for the first time—confirm that Respondent did not open its "ongoing criminal investigation" until January 14, 2026.

### 1. Preliminary Statement

Respondent's new disclosures confirm that the January 28, 2026, seizure of Fulton County's 2020 ballots constituted an abuse of the warrant power, in callous disregard of Petitioners' rights. We now know that there was no criminal investigation in 2024 or 2025. Instead, the evidence shows that what Respondent has described as an "ongoing investigation" was, in reality, a late-breaking pretext for the U.S. Department of Justice (DOJ) to get its hands on Fulton County's 2020 election records after it suffered setbacks in two civil cases: (1) *Allen v. State of Georgia*, No. 24CV014632 (Fulton Cnty. Super. Ct.) (hereinafter, "*Allen*"), which

was pending in Fulton County Superior Court before Judge McBurney, and (2) *United States v. Alexander*, No. 1:25-cv-07084 (N.D. Ga. filed Dec. 11, 2025) (hereinafter, "*Alexander*"), which was pending in this district before Judge Thrash.

The record confirms that the only "ongoing" activity in 2025 was a coordinated effort by the Georgia State Election Board (SEB) and the DOJ to obtain Fulton County's 2020 election records with as little judicial supervision as possible. The "criminal investigation"—which was initiated after every applicable statute of limitations had lapsed, was open for all of two weeks before the warrant was issued, and resulted in a warrant that did not identify a single suspect or any intentional misconduct—was not a search for a crime. It was a probe for a backdoor that would allow it to circumvent Judge McBurney and Judge Thrash's jurisdiction and quickly seize the records. Assistant Attorney General Harmeet Dhillon has not been subtle on this point: "[A]fter we've tried to go through the front door and get these materials voluntarily, if they're not complying—to help us help them do their jobs correctly— then <u>it may become criminal in nature</u>…."[1]

2. **<u>Respondent's new disclosures confirm that the "ongoing criminal investigation" was created to evade procedural hurdles in *Allen* and *Alexander*.</u>**

---

[1] Real America's Voice, *Harmeet Dhillon: DOJ is Cleaning Dirty Voter Rolls Nationwide – And What They're Finding Is Shocking* (YouTube, Mar. 10, 2026) (video at 4:34-5:41), https://www.youtube.com/watch?v=11ucRFoSJ8E (emphasis added).

Several key facts should inform the Court's view of the evidence. To start, DOJ did not open *any* criminal investigation into this matter until after the following developments in civil litigation, including: (1) a November 14, 2025, letter from Ms. Alexander's and the FBRE's counsel to Assistant Attorney General Dhillon, which put DOJ on notice that pursuant to Georgia law, the records could not be produced absent a Superior Court Order (and including prior correspondence citing the *Allen* case pending in Superior Court before Judge McBurney),[2] (2) Ms. Dhillon's November 21, 2025, letter to Judge McBurney demanding that he and Ms. Alexander produce Fulton County's 2020 records responsive to the SEB's subpoenas;[3] (3) Judge McBurney's December 22, 2025, order in *Allen* indicating that he would supervise access to the records and require the SEB to pay for copying,[4] and (4) Che Alexander's January 5, 2026, motion to dismiss in *Alexander*. *See* Respondent's Notice in Response to Order (Doc. 101) at 1 (confirming that the FBI did not open a full criminal investigation until January 14, 2026).[5]

Further, the SEB and DOJ coordinated to try to get Fulton County's 2020 records throughout 2025—for reasons that had nothing to do with a criminal

---

[2] Doc. 71-2. Kilpatrick Townsend Stockton LLP, who authored the letter on behalf of the FBRE, subsequently entered an appearance on Ms. Alexander's behalf in *Alexander.*

[3] Doc. 71-3 at 2.

[4] Doc. 71-4 (*Allen* Order Denying Quashal).

[5] Unless otherwise indicated, citations to docket entries herein refer to the docket entry number in this matter.

investigation.[6] In July 2025, the SEB requested DOJ's "assistance" getting Fulton County's 2020 records. The public record (including the docket in *Alexander*) leaves no question that DOJ answered the SEB's call.[7] Ms. Dhillon specifically responded by (1) demanding that Fulton County authorities give DOJ and the SEB all of Fulton County's 2020 records pursuant to the SEB's subpoenas, and (2) filing suit in *Alexander*, in which DOJ admitted that it was seeking the ballots for the SEB's benefit.[8]

The timing of the investigation indicates that Judge McBurney's December

---

[6] *See* State Election Board Resolution (Doc. 98-1) at 1 (calling for "assistance" of "federal authorities, including the [DOJ], to take any action necessary . . . including obtaining all necessary voting records and documents," to address, *inter alia*, Fulton County's "lack of a response to a[n SEB] subpoena") (emphasis added); *See, e.g.*, October 30, 2025, Letter from H. Dhillon to FBRE (Doc. 71-1) (demanding 2020 records in response to the SEB's subpoenas to the FBRE); November 21, 2025, Letter from H. Dhillon to R. McBurney (Judge) and C. Alexander (Doc. 71-3) at 2 (demanding that Judge McBurney and Ms. Alexander "confirm" that they possessed the records sought by SEB by "November 26, 2025" and demanding that they "make such records available to [DOJ] by December 16, 2025").

[7] *See Alexander* Doc. 1 ¶¶ 15–23 (citing the SEB's July 30, 2025, resolution and expressly referencing the SEB's subpoena); *id*. ¶ 19 (asserting that "[t]he Attorney General also seeks to assist the State Election Board . . . in their transparency efforts . . . ") (emphasis added).

[8] Furthermore, three SEB officials (*i.e.*, a majority) filed an amicus brief in this case where they confirm that their "frustration" about Fulton County's willingness to comply with the subpoena somehow required the warrant. Doc. 80 at 9–10 ("On October 4, 2024 and again on November 5, 2025, the SEB issued subpoenas … FCBRE's response has been mercurial and is the cause of great frustration and in fact, the need for the Search Warrant."). Why would SEB officials, who want access to the records, cheer the fact that Respondent now has the records unless the two were closely coordinating?

22, 2025, order (the "December 22 Order") triggered Kurt Olsen's referral. By all accounts, Judge McBurney's ruling represented a significant setback to the SEB and DOJ's quest for 2020 ballots. The December 22 Order provided that the SEB would be required to pay potentially $400,000 in estimated copy costs (including costs for monitors to oversee the copying given the sensitivity of the data), which represented a significant amount of the SEB's annual budget; and indicated that the court intended to supervise the handling of the data so the SEB could not have *carte blanche* access to originals. Doc. 71-4 at 5.

Though DOJ was not formally a party to the *Allen* case, Judge McBurney's ruling necessarily thwarted DOJ's claims for relief in *Alexander*. As the FBRE's lawyers notified Ms. Dhillon and DOJ on November 14, 2025, both Ms. Alexander (the Clerk) and the FBRE were "without authority to produce" the 2020 election records, "absent a Court order" from Judge McBurney. Doc. 71-2 at 2 (citing O.C.G.A. § 21-2-500(a)).

In other words, since November 14, 2025, DOJ was on notice that all civil roads to Fulton County's 2020 records went through Judge McBurney. In fact, On November 21, 2025, Ms. Dhillon sent a letter directly to Ms. Alexander and to Judge McBurney, who was presiding over the *Allen* case, and demanded that <u>Judge McBurney</u> and Ms. Alexander "confirm" that they were in possession of the records by "November 26, 2025" and further demanded that they "make such records

4

available to the U.S. Department of Justice by December 16, 2025." Doc. 71-3 at 2.

Moreover, on December 16, 2025—just four days after DOJ filed its December 11, 2025 complaint in *Alexander*—two parties moved to intervene in *Alexander* and expressly notified DOJ that "Georgia law dictates that the materials DOJ seeks are to be held under seal by the Clerk of Courts and cannot be disclosed absent an 'order of the superior court' to unseal the records." *Alexander* Doc. 4-1 at 11 (citing O.C.G.A. §§ 21-2-500(a) 21-2-390(a)). So it would have come as no surprise to DOJ (or Kurt Olsen) when, on January 5, 2026, Ms. Alexander moved to dismiss *Alexander* on the same grounds that were raised in the (1) November 14, 2025 letter–namely, that DOJ needed to "seek an order from a judge on the Fulton County Superior Court unsealing these materials;" *Alexander* Doc. 18 at 3; and (2) December 16, 2025, Motion to Intervene filed in *Alexander* confirming that only a Fulton County superior court unsealing order could authorize disclosure. *Alexander* Doc. 4-1 at 11.

In all events, Judge McBurney's December 22 Order made clear that Fulton County could not be compelled to produce the records unless the SEB paid for production, and that records access would continue to be subject to judicial oversight. *See* Doc. 71-4 at 5; *see also* Order Staying *Allen* Case (Doc. 71-5) at 2 (noting that the seizure deprived the court of the ability to set "measured and thoughtful parameters governing the handling and copying of these materials"). But

the SEB and DOJ did not want to deal with these potential delays, costs, and—most importantly—judicial guardrails. Of note, the record confirms that there was no law enforcement exigency here. Respondent admitted in an email to Judge Salinas that the warrant was "not an emergency matter." Resp. Ex. 3-A at 1.

It is no coincidence that within weeks of the December 22 Order, DOJ opened this "criminal" investigation.[9] Notably, Respondent concedes that it opened this investigation not in response to any new allegation of wrongdoing whatsoever, but at the urging of Kurt Olsen, who serves at the pleasure of the President.[10] Doc. 101 at 1–2. And, for reasons that Respondent has declined to articulate, the FBI acted almost immediately after Mr. Olsen snapped his fingers.

Of course, Respondent's artful denials of direct coordination between the DOJ Civil Rights Division and the FBI[11] are in no way a denial of the fact that Kurt Olsen, who works for the President, made a criminal referral only <u>after</u> Judge McBurney's

---

[9] That timeline is even shorter if one considers that the December 22, 2025, order was issued during the week of the Christmas holiday, and Mr. Olsen made the referral the Monday after the New Year's Day holiday.

[10] The admission that Mr. Olsen's referral triggered an immediate investigation raises disturbing questions about whether non-DOJ employees, who serve at the pleasure of the President, have the unilateral authority to force the FBI to investigate a criminal matter.

[11] *See* Transcript of Mar. 27 Hearing at 73 ("MR. WEISBUCH: That hypothetical, <u>especially as you're</u> [referencing the Court] <u>phrasing it</u>, 100 percent did not happen.") (emphasis added).

December 22 Order indicated that the state court would supervise the SEB's access to the records and require the SEB to pay for copying.

### 3. The record belies the notion that the search warrant and the *Alexander* case were simply "parallel proceedings."

Respondent appears to place significant weight on the narrow fact that Kurt Olsen "formally referred the criminal investigation to the FBI no later than January 5, 2025, at 9:03AM EST," while Ms. Alexander filed her motion to dismiss "on January 5, 2026, at 8:36 PM EST." Doc. 101 at 1. In Respondent's view, this means that the criminal investigation was an independent, parallel proceeding. That is nonsense. For starters, the argument ignores the fact that DOJ knew of setbacks that preceded the formal filing of the January 5, 2026 motion to dismiss in *Alexander*. In particular: (1) DOJ and Ms. Dhillon knew that the FBRE and Ms. Alexander could not and would not produce any records without an unsealing order issued by Judge McBurney as of November 14, 2025, (2) Ms. Dhillon acknowledged as much by directly writing to Judge McBurney (and demanding records responsive to the SEB's subpoena) on November 21, 2025, (3) Mr. Olsen did not send his referral until after Judge McBurney's December 22 Order, and (4) regardless of when Mr. Olsen made the referral, the FBI did not open either an "assessment" or a "full investigation" until after January 5, 2026, which postdates Ms. Alexander's motion to dismiss.

To the extent Respondent suggests that the date of Mr. Olsen's referral somehow shows that criminal investigation is truly just an independent and

permissible "parallel proceeding," the full timeline speaks for itself. This was no "parallel proceeding" where two entities pursue different relief concerning the same subject matter or same defendant (*i.e.*, civil liability on the one hand, and criminal sanctions, on the other). The SEB's subpoenas, the civil relief that DOJ sought in *Alexander*, and the search warrant all sought *the same relief*: Fulton County's 2020 election records. *See Alexander* Doc. 1 at 7 (requesting that the Court "[o]rder Defendant to provide the Attorney General the records requested within 5 days of a Court order.") (emphasis added); *id*. at 5 (describing the records requested as "records responsive to the recent subpoena issued . . . by the State Election Board."). To that end, DOJ sought to stay the case in *Alexander* following the execution of the search warrant because "the records at issue appear to have been removed from Defendant's possession pursuant to a criminal search warrant." *See Alexander* Doc. 27-1 at 1 (emphasis added). DOJ affirmatively argued that the "criminal proceedings and the civil case appear to almost completely overlap." *Id*. at 4 (emphasis added).

Put differently, in January 2026, Respondent opted for an under seal, *ex parte* proceeding—where Respondent would not have any of its allegations subject to adversarial scrutiny—instead of a civil proceeding where, as already was occurring, lawyers could point out the total lack of legal support for DOJ's position and the need for the appropriate safeguarding of sensitive election-related materials. And in the absence of such adversarial scrutiny, DOJ proceeded to submit a warrant

8

affidavit that materially omitted critical information from the reviewing judge, including basic disclosures concerning Judge McBurney's jurisdiction over the *Allen* case and his December 22 Order; the existence of the federal *Alexander* case; and the fact that the investigation had been open for less than two weeks before agents sought a warrant. There was no legitimate reason to sidestep Judge McBurney and Judge Thrash's jurisdiction as Respondent did here.

In essence, Respondent asks this Court to credit the coincidence that Olsen's referral preceded the *Alexander* motion to dismiss by mere hours, and to ignore the clear evidence of impropriety emanating from the remaining disclosures, as well as facts showing that DOJ was notified of the legal basis for the January 5, 2026 motion on both November 14 and December 16, 2025. But considering the full timeline, as well as Ms. Dhillon's public statements, one would need to wear blinders to conclude that these were "parallel proceedings" conducted for independent purposes. Each "proceeding" sought nearly identical relief.

4. **The Court should grant Petitioners' Motion.**

To prevent Respondent from benefitting from its abuse of the warrant power to trample over Petitioners' constitutional rights, this Court should enter an order directing Respondent to return Fulton County's original records and any digital copies to Petitioners. Rather than allow Judge McBurney to conduct an orderly process for the copy, review, and oversight of sensitive election-related material,

Respondent's pretextual use of a criminal warrant—for hypothetical crimes that cannot be prosecuted—has laid waste to a pending state court proceeding over the exact same records, jeopardized the integrity of the records, and resulted in an unprecedented exercise of federal power over state and local government. *See* Doc. 71-5 at 2. And all of this is based on a specious affidavit that purports to establish "possible cause," as opposed to the probable cause that the law demands.[12] Respondent's conduct constituted a callous disregard of the rights and interests of Fulton County.

Respectfully submitted, this 5th day of May, 2026.

[SIGNATURES ON FOLLOWING PAGE]

---

[12] Even the Magistrate Judge rejected the notion that the facts in the affidavit compelled any conclusion that there was "an intentional violation of law" and insisted that the affidavit be revised to reflect a conditional statement. *See* Resp. Ex. 4-A at 3 ("If these deficiencies were intentional . . ."). Though a Magistrate Judge's factual findings may be entitled to deference, those fact-findings as reflected in Resp. Ex. 4-A, do not support Respondent's claim that the affidavit adequately alleged evidence of intentional misconduct. Respondent has cited no authority suggesting that the Court must defer to a Magistrate Judge's error of law as to whether an "if-then" warrant is legally permissible.

/s/ Y. Soo Jo
Y. Soo Jo
Georgia Bar No. 385817
OFFICE OF THE FULTON
COUNTY ATTORNEY
141 Pryor St. SW, Suite 4038
Atlanta, Georgia 30309
Tel.: (404) 612-0246
soo.jo@fultoncountyga.gov

/s/ Abbe David Lowell
Abbe David Lowell*
John Bolen*
LOWELL & ASSOCIATES, PLLC
1250 H Street NW
Washington, D.C. 20005
Tel.: (202)-964-6110
jbolen@lowellandassociates.com
alowellpublicoutreach@
lowellandassociates.com

/s/ Kamal Ghali
Kamal Ghali
Georgia Bar No. 805055
Michael C. Duffey
Georgia Bar No. 710738
CHAIKEN GHALI LLP
One Atlantic Center
1201 W. Peachtree St. NW, Suite 2300
Atlanta, Georgia 30309
Tel.: (404) 795-5005
kghali@chaikenghali.com
mduffey@chaikenghali.com

/s/ Stephen Jonas
Stephen Jonas*
Norman Eisen*
DEMOCRACY DEFENDERS FUND
600 Pennsylvania Avenue SE
Suite 1580, Washington, D.C. 20003
Tel.: (202) 594-9958
steve@democracydefenders.org
norman@democracydefenders.org

*Counsel for Petitioners Robert L. Pitts, Chairman, Fulton County Board of Commissioners; Fulton County Board of Registration and Elections; Fulton County, Georgia; and Che Alexander, Clerk of Court*

*Admitted pro hac vice*

11

**CERTIFICATE OF SERVICE**

I hereby certify that on this day, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will automatically serve all counsel of record.

This 5th day of May, 2026.

/s/ *Michael C. Duffey*
Michael C. Duffey