**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| Robert L. Pitts, Chairman, Fulton County Board of Commissioners, Fulton County Board of Registration and Elections, Fulton County, Georgia, and Che Alexander, Clerk of Fulton County Superior Court, | Case No. 1:26-CV-00809-JPB |
| *Petitioners*, | |
| v. | |
| United States of America, | |
| *Respondent*. | |

**UNITED STATES OF AMERICA'S**
**SUPPLEMENTAL BRIEF**

**INTRODUCTION**

Petitioners' inquiries about timing are categorically irrelevant under binding Eleventh Circuit caselaw. Unsurprisingly, Petitioners have never cited a single case suggesting otherwise. Nor is this a "unique" case, except in the sense that Petitioners have managed to waste an extraordinary amount of time and resources on an exceedingly premature (and otherwise defective) Rule 41(g) motion. By any measure, this case is not "extraordinary . . . in a way that affects [the] legal analysis." *Trump v. United States*, 54 F.4th 689, 701 (11th Cir. 2022). If the raid of a former President's personal residence by the agents of his political adversaries—who sought to imprison him and to prevent him from winning the 2024 presidential election—did not receive heightened scrutiny, the seizure of records sitting in a warehouse, pursuant to a judicial warrant, from a clerk who previously sought to divest or destroy those records, certainly cannot.

The Court should deny the Rule 41(g) motion and dismiss this case.

**ARGUMENT**

I. **PETITIONERS' EVER-SHIFTING CONSPIRACY THEORIES ARE FACIALLY ILLOGICAL AND IRRELEVANT UNDER BINDING PRECEDENT**

Every week, Petitioners offer a new conspiracy theory. Every week, the facts don't support it. And every week, the Eleventh Circuit's binding precedent still holds that these theories are categorically irrelevant.

At first, Petitioners thought it was suspicious that the search warrant in this case was "executed only eight days after [the United States] filed its opposition to a motion to dismiss in the *Alexander* case." Doc. #71 at 1. Alternatively, Petitioners argued there had been a "rapid switch to a search warrant when the *Alexander* civil suit was challenged." *Id.* at 9.

When the timeline of the criminal investigation revealed those theories to be unsupported by the facts, Petitioners shifted to arguing that the United States had viewed the civil proceedings as not moving "quickly" enough, entirely apart from any motion to dismiss or opposition thereto. Doc. # 89 at 1. Never mind that Petitioners themselves suggested (in the same brief) that the FBI had been separately investigating these issues by "late 2025." *Id.* at 12.

With each new filing, Petitioners spin yet another theory about how they think this case and the civil case came together or interact. They will presumably do so again in their filing today.

It is all irrelevant. The Eleventh Circuit has said in a binding, published opinion that civil and criminal investigations often "proceed at roughly the same time and share[] information" — "[t]hose facts are typical of parallel governmental investigations, which are common and generally proper." *United States v. Goldstein*, 989 F.3d 1178, 1202 (11th Cir. 2021). Petitioners have never cited contrary authority — and even if they could, it still would not control over a recent, binding

Eleventh Circuit opinion. The Supreme Court itself has long said that "[]it would stultify enforcement of federal law to require a governmental agency . . . to choose either to forgo recommendation of a criminal prosecution once it seeks civil relief, or to defer civil proceedings pending the ultimate outcome of a criminal trial." *United States v. Kordel*, 397 U.S. 1, 11 (1970).

The only possible exception is a "due process problem" based on "bad faith collusion," which "generally involves affirmative misrepresentations or trickery or deceit by the investigating authority to get the defendant to voluntarily turn over documentary or physical evidence relevant to the criminal investigation." *Goldstein*, 989 F.3d at 1202.

But Petitioners never turned over anything voluntarily, let alone by trickery. And even though Respondent keeps pointing out this fatal defect, Petitioners have never once offered even a colorable response.

Further, it would be unprecedented to suggest that pursuing criminal process to get the records—a *higher* burden than obtaining them through civil process—is somehow suspicious. Petitioners may be the first parties in history to complain that the government obtained a warrant from a neutral magistrate, rather than using civil process. So even if there were some smoke-filled room where a decision was made to seek criminal process rather than civil process, that would be lawful.

Looking at the facts confirms nothing suspicious here anyway. Kurt Olsen formally referred the criminal investigation no later than January 5, 2026, at 9:03 AM EST. Doc. # 101 at 1. The motion to dismiss in the civil litigation was filed on January 5, 2026, at 8:36 PM EST. *Id.* So the referral could not have come in response to that motion (let alone in connection with the United States's filing of an opposition to that motion more than two weeks later). The timeline that followed is hardly nefarious (or even notable). Agent Evans's supervisor opened an assessment (the first formal trigger authorizing investigative activities pursuant to an authorized purpose) on January 6, 2026. *Id.* The investigation proceeded from there, with approval for the full investigation (authorizing a broader set of activities) coming on January 14, 2026. *Id.* Agent Evans drafted an investigative summary on January 19, 2026, which he converted into search warrant affidavit format beginning January 22, 2026. *Id.* The search warrant was executed on January 28, 2026. None of this supports Petitioners' irrelevant argument that the search warrant was somehow a pretext that served some vague improper purpose. Petitioners will surely contrive a new theory along those lines based on speculation, logical leaps, vague or out-of-context quotes, and hyperbolic rhetoric. But rather than guess what Petitioners will gin up next, the United States is content to let the record speak for itself.

In short, Petitioners' ever-shifting theories are facially illogical, categorically barred by binding precedent, and factually unsupportable. There is no plausible violation of law by Respondent here, let alone a constitutional violation, let alone "callous disregard" of constitutional rights. *Trump*, 54 F.4th at 698.

## II. THIS CASE IS NOT "UNIQUE"—AND ELEVENTH CIRCUIT CASELAW PROHIBITS ANY CONTRARY VIEW

The United States strongly disagrees with the Court's recent conclusion that this case is "unique" because of the nature of the seizure and the identity of Petitioners. Doc. #100 at 13. In truth, what makes this case unique is Petitioners' relentless efforts to provoke "needless judicial intrusion into the course of criminal investigations—a sphere of power committed to the executive branch." *Trump*, 54 F.4th at 698.

In any event, the Eleventh Circuit has flatly rejected the premise that unique circumstances may warrant such intrusions. There are no special rules here. To the contrary, the same test applies "no matter who the government is investigating." *Trump* , 54 F.4th at 701. Even in the "extraordinary" circumstance where a "warrant [was] executed at the home of a former president" (who would become the current President after defeating the political adversaries who were investigating and prosecuting him), the Eleventh Circuit refused to alter its "legal analysis or otherwise . . . interfere in an ongoing investigation." *Id*.

5

Relatedly, it was not arbitrary and capricious for Respondent to consider the cumulative effect of these types of requests. Responding to these speculative, ever-shifting, and legally irrelevant theories comes at a serious cost in diverted resources. Attorneys, agents, and supervisors have been repeatedly pulled away from their real work. Now imagine that occurring across numerous cases. The United States is conducting hundreds of extraordinarily sensitive and important criminal investigations at any moment. The United States has already seen an influx of these strategic Rule 41(g) motions and requests for irrelevant discovery as to the inner workings of Executive Branch enforcement decisions in cases across the country.

This Court should swiftly rule against Petitioners and dismiss their Rule 41(g) motion. Otherwise, more and more parties will use Rule 41(g) as a vehicle to conduct mini-trials at the earliest stages of investigations.

## CONCLUSION

For the foregoing reasons, the Court should deny Petitioners' Rule 41(g) motion and dismiss this case.

Respectfully submitted,

R. TRENT MCCOTTER
*Principal Associate Deputy Attorney General*

STANLEY E. WOODWARD, JR.
*Associate Attorney General*

/s/ MICHAEL WEISBUCH
MICHAEL WEISBUCH
*Senior Counsel to the Associate Attorney General*

THOMAS C. ALBUS
*Special Attorney to the Attorney General and United States Attorney for the Eastern District of Missouri*
Missouri Bar No. 46224
Thomas Eagleton U.S. Courthouse
111 S. 10th Street, 20th Floor
St. Louis, MO 63102
(314) 539-2200

**Certificate of Compliance**

I hereby certify, pursuant to Local Rules 5.1 and 7.1D, that the foregoing brief has been prepared using Book Antiqua, 13 point font.

<u>/s/ MICHAEL WEISBUCH</u>
MICHAEL WEISBUCH
*Senior Counsel to the Associate Attorney General*